**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE EASTERN DISTRICT OF TEXAS**

**SHERMAN DIVISION**

| | | |
|---|---|---|
| In Re: | § | |
| MID WEST HOTEL LODGING, LLC, | § | Case No.: 11-40629 |
| | § | |
| Debtor. | § | |
| | § | |

**OBJECTION OF HOLIDAY HOSPITALITY FRANCHISING, INC.
TO DEBTOR'S DISCLOSURE STATEMENT FOR
CHAPTER 11 PLAN OF REORGANIZATION**

Holiday Hospitality Franchising, Inc. ("HHFI"), by and through its undersigned counsel, hereby files this Objection (the "Objection") to the Disclosure Statement [Docket No. 37] (the "Disclosure Statement") for the Plan of Reorganization [Docket No. 36] (the "Plan") filed by Mid West Hotel Lodging, LLC (the "Debtor"), as follows:

**I.    SUMMARY OF OBJECTION**

1.    HHFI is the licensor pursuant to a Holiday Inn Express® Hotel & Suites Hotel Change of Ownership License Agreement dated September 8, 2006 (the "License Agreement") that permits the Debtor to operate a Holiday Inn Express® Hotel & Suites Hotel (the "Hotel"). The Disclosure Statement fails to meet the required disclosure standards under Section 1125(b) of the Bankruptcy Code.  Specifically, the Disclosure Statement fails to (i) explicitly state that the Debtor will assume the License Agreement that is required to continue operating the Hotel; if that is in fact the case; (ii) disclose all necessary monetary and non-monetary defaults that must be cured by the Debtor upon assumption of the License Agreement, and remove HHFI as a

separate Class 8 claimant; (iii) explain that the License Agreement may not be assigned by a new equity owner absent HHFI's express consent; to which HHFI does not consent under any circumstances, (iv) require any purchaser to apply for a new license, which is subject to approval in HHFI's absolute and sole discretion and which may or may not be approved, and (v) explicitly state that the personal guarantees (the "Guaranty") of Gurpeet Dhaliwal, Harsimirat Dhaliwal, Jagmohan Dhillon and Mrs. Singh Dhillon (the "Guarantors"), executed on September 8, 2006, shall remain unaffected by the Plan.

2. Because of the stated omissions listed above, the Disclosure Statement should not be approved or, in the alternative, the Debtor should be required to amend the Disclosure Statement to provide complete and accurate information. HHFI further requests that the Plan also be amended to reflect the concerns contained herein.

## II. THE DISCLOSURE STATEMENT MUST CONTAIN ADEQUATE INFORMATION

3. Section 1125(b) of the Bankruptcy Code prohibits the post-petition solicitation of the acceptance or rejection of a plan from the holder of a claim or interest, unless there is transmitted to such holder a written disclosure statement approved by the Court as containing "adequate information." Adequate information is defined as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable…that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan….

11 U.S.C. § 1125(a)(1).

4. Disclosure is the means that Congress has chosen to ensure that confirmation is achieved fairly in a manner that protects the parties in interest. The disclosure statement hearing is intended to be "one of, if not the major procedural hearing in a reorganization case" because "[i]f adequate disclosure is provided to all creditors and stockholders whose rights are to be

affected, then they should be able to make an informed judgment of their own, rather than having the court or the Securities and Exchange Commission inform them in advance of whether the proposed plan is a good plan." H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 226-227 (1977). Therefore, the disclosure statement must set forth "all those factors presently known to the plan proponent that bear upon the success or failure of the proposals contained in the plan." *In re Jeppson*, 66 B.R. 269, 292 (Bankr. D. Utah 1986).

### a. The Disclosure Statement Fails To Specifically Assume The License Agreement

5. The Disclosure Statement and Plan generally provide that the Debtor will continue operating the Hotel as a Holiday Inn Express® Hotel & Suites Hotel and that the Debtor's "profitability to fund its Plan is based on the amount of money that it will earn from the continued operation of its business." Plan, at 1. However, Article VII of the Disclosure Statement, which addresses the treatment of executory contracts, contains no express assumption of the License Agreement. Nor does the corresponding Section VII of the Plan. The Disclosure Statement and Plan must be amended to explicitly state that the License Agreement is being assumed, conditioned upon the Debtor's cure of all monetary and non-monetary defaults. Likewise, if an assumption is not contemplated, creditors should be informed that the License Agreement is to be rejected.

6. In addition, if an auction is held under the Plan, the License Agreement cannot be assumed, as discussed more fully below. The Disclosure Statement should explicitly describe which contracts would be assumed and assigned in the event an auction is held.

### b. The Disclosure Statement Should State All The Necessary Cure Obligations That Must Be Met By The Debtor Upon Plan Confirmation

7. Article IV and Article V of the Disclosure Statement place HHFI into a separate Class 8, corresponding to section 4.08 of the Plan which provides for HHFI to be placed in a

separate class.  This class 8 should be deleted and the Disclosure Statement modified.  HHFI's claims should be no different than Class 9 general unsecured claims, and should be placed in that class.  If the License Agreement is ultimately assumed and all defaults cured, HHFI will have no claim.

8. Section 5.08 of the Plan, as explained in Section V of the Disclosure Statement, contemplates the payment of pre-petition franchise fees and contractual obligations due under an assumption of the License Agreement in the amount of $17,133.69. *See* Plan, § 5.08; Disclosure Statement, § 5.08.  Both the Disclosure Statement and Plan are entirely silent, however, regarding non-monetary cure claims and attorney's fees that are due under the License Agreement.  The Disclosure Statement must therefore be amended to provide that, absent cure of any non-monetary defaults and payment of attorney's fees and costs, the License Agreement may not be assumed by the Debtor.

9. Where executory contracts provide for attorney's fees, debtors are required to pay those fees as a condition of assumption and cure. *See, In re Travelers Casualty & Surety Co. of America*, 127 S. Ct. 1199, 1206 (2007) ("[W]e generally presume that claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed."); *In re Crown Books Corp.*, 269 B.R. 12 (Bankr. D. Del. 2001) (awarding attorney's fees as part of cost to cure defaults); *see also LTC Corp. v. Boyle*, 768 F.2d 1489, 1494-6 (D.C. Cir. 1985); *Andrew v. KMIR Corp.*, 17 B.R. 438, 439 (Bankr. 9th Cir. 1982); *In re BAB Enterprises, Inc.*, 100 B.R. 982 (Bankr. W.D. Tenn. 1989); *In re Westview 74th St. Drug Corp.*, 59 B.R. 747, 752-4 (Bankr. S.D.N.Y. 1986) (payment of attorney's fees required as condition to lease assumption).

10. Section 14.J. of the License Agreement provides:

> **J. Reimbursement of Expenses:**
> Licensee agrees to pay Licensor all expenses, including reasonable

attorney's fees and court costs, incurred by Licensor, its parents, subsidiaries, affiliates, and their successors and assigns, to remedy any defaults of or enforce any rights under the License, effect termination of the License or collect any amounts due under the License.

11. HHFI and the Debtor have discussed this provision of the License Agreement, and have agreed that $7,500 is a reasonable amount to HHFI to compensate HHFI for its actual and expected attorneys' fees and costs relating to the enforcement of the License Agreement through Plan confirmation. The Disclosure Statement and Plan should be modified to reflect this additional cure requirement.

12. Absent full disclosure of all monetary and non-monetary cure obligations owed to HHFI if the Plan is confirmed and the License Agreement assumed, the Disclosure Statement will not contain adequate information as required by Section 1125(b) as no class of creditor will be able to accurately assess the Debtor's ability to fulfill its obligations under the Plan.

    **c. The Disclosure Statement Must Be Amended To Provide That The License Agreement May Not Be Assigned Absent HHFI's Consent, Which is Not Granted**

13. Section 5.10 of the Plan, as described in section V of the Disclosure Statement, contemplates the termination of all equity interests upon confirmation of the Plan, new distributions of equity, as well as a possible auction sale of equity interests. See Plan, § 5.10; Disclosure Statement, § 5.10. The Disclosure Statement fails to disclose, however, that the License Agreement is non-assignable to new equity owners under the Bankruptcy Code and applicable law.

14. Section 365(c)(1) of the Bankruptcy Code states that the Debtor may not assume or assign an executory contract of the Debtor if:

    (A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance

  to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

  (B) such party does not consent to such assumption or assignment.

11 U.S.C. § 365(c)(1).

  15. One type of executory contract that cannot be assumed or assigned under Section 365(c)(1) is a personal services contract. *See In re Tonry*, 724 F.2d 467, 468 (5th Cir. 1984) (acknowledging that personal service contracts are non-assumable under 11 U.S.C. § 365(c)); *see also Breeden v. Catron (In re Catron)*, 158 B.R. 624, 627 (Bankr. E.D. Va. 1992) ("[A] debtor's prepetition personal services contract cannot be assumed by or assigned to an entity other than the debtor.") (citing Restatement (Second) of Contracts §§ 318(2), 319(2) (1981)). Franchise agreements, such as the License Agreement held by the Debtor, are personal services contracts. *See, e.g., North Am. Financial Group, Ltd v. S.M.R. Enterprises, Inc.*, 583 F.Supp. 691, 699 (N.D. Ill. 1984) ("A franchise agreement of the type contemplated here is at least partially a contract for personal services."); *Burger Chef Sys., Inc. v. Burger Chef of Fla., Inc.*, 317 So.2d 795, 797-98 (Fla. Dist. Ct. App. 1975) (recognizing the "individual characteristics of a franchise; the personal efforts and commitment on the part of a Franchisee to market the Franchisor's products, the consideration given by Franchisee for the exclusive right to market Franchisor's product and the singular personal service performed by a Franchisee in establishing the product of a Franchisor.").

  16. For almost fifty years, HHFI, its predecessors and/or affiliates (collectively, "InterContinental Hotels Group" or "IHG") have been in the business of operating, both self-owned and through management/license agreements, a worldwide network of hotels utilizing the service marks "Holiday Inn®," "Holiday Inn Express®" and other associated trademarks and

service marks. In conducting this business, HHFI owns and licenses a system of operations (the "System") designed to provide distinctive, high quality hotel service to the public under the trade name and service marks "Holiday Inn®," "Holiday Inn Express ®," "Holiday Inn Express ® Hotel & Suites," "Holiday Inn® Hotel & Suites," "Holiday Inn ® Resorts," and other marks (collectively, the "Marks").

17. Here, the License Agreement grants the Debtor a nonexclusive trademark license to use the System and Marks and therefore affords HHFI the trademark protections of the Lanham Act. *See* 15 U.S.C. § 1114(1) and 1125(a). The Lanham Act allows trademark owners to sue unauthorized trademark users and thus trademark licenses are "personal and unassignable without the consent of the licensor." *N.C.P. Mktg. Group, Inc. v. Billy Blanks (In re N.C.P. Mktg. Group, Inc.)*, 337 B.R. 230 (D. Nev. 2005). Because of their personal nature, courts have found that pursuant to section 365(c), trademark law protects trademark licenses from being assumed and assigned by a debtor without the consent of the trademark owner, including franchise agreements that include trademark licenses. *See In re The Travelot Co.*, 286 B.R. 447, 455 (Bankr. S.D. Ga. 2002) (trademark law is "applicable law" under Section 365(c)); *In re Wellington Vision, Inc.*, 364 B.R. 129 (S.D. Fla. 2007) (same).

18. The express terms and conditions of the License Agreement provide that the contract is not transferable. *See* License Agreement, § 10.H (1). Any transfer of an equity interest to a new owner who desires to continue to operate the hotel as a Holiday Inn Express® Hotel & Suites hotel shall constitute a change of ownership requiring submittal of an application for a new license. *See* License Agreement, § 10.H (2). Such application may or may not be approved, and is subject to HHFI's current procedures, criteria and requirements. *See* License Agreement, § 10.H (3).

19. In order to comport with requirements of the Bankruptcy Code and the provisions of the License Agreement, the Disclosure Statement should therefore be amended to provide that the License Agreement may not be assigned to any new owner, and that any new owner will be required to apply for a new license with HHFI, which may or may not be approved at HHFI's sole discretion. In addition, the Disclosure Statement should disclose the potential outcome to the Debtor, the Plan and the reorganization prospects if a new license is not approved.

### d. The Disclosure Statement Should Unambiguously State That The Guaranty Will Be Unaffected By The Plan

20. As an inducement to HHFI to enter into the License Agreement, Gurpeet Dhaliwal, Harsimirat Dhaliwal, Jagmohan Dhillon and Mrs. Singh Dhillon executed a guaranty (the "Guaranty"), guaranteeing that all of the Debtor's obligations under the License Agreement would be paid and performed. The Disclosure Statement and Plan must clarify that the Guaranty shall not be affected by the Plan.

21. Article IX of the Disclosure Statement and its corresponding Plan provisions include several provisions regarding the Debtor's discharge and release, including a broadly worded injunction against the "commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against the Debtor." *See* Disclosure Statement, §§ 9.01 & 9.04; Plan, §§ 9.01 & 9.04. No provision of the Plan, however, may impinge on HHFI's right to enforce the Guaranty. The Plan, as well as the Disclosure Statement describing the Plan, must be amended to explicitly state that the discharge provisions in Section IX of the Plan (or any other language that might be read as an exculpation or injunction in the Debtor's favor) does not prevent recovery by HHFI on the Guaranty. To make this clear, HHFI requests that the following language be inserted:

Notwithstanding the foregoing and for the avoidance of doubt, nothing in this

provision or any provision of the Debtors' Plan, Confirmation Order or Section 1141 of the Bankruptcy Code shall be construed as modifying or amending that Guaranty dated September 8, 2006 by Gurpeet Dhaliwal, Harsimirat Dhaliwal, Jagmohan Dhillon and Mrs. Singh Dhillon that guarantees the Debtor's obligations under the License Agreement.

22. Absent an unambiguous disclosure of the scope of the discharge embodied in the Plan, the Disclosure Statement will not contain adequate information as required by section 1125(b), because no class of creditor will be able to determine what releases, exculpations or injunctions are being provided by the Plan.

### III. CONCLUSION

For the above reasons, HHFI objects to the Disclosure Statement on the basis that it lacks adequate information for a creditor to reasonably evaluate the Plan, and HHFI respectfully requests that the Court either (i) deny approval of the Disclosure Statement, or (ii) require the Debtor to amend the Disclosure Statement and the Plan to address HHFI's concerns.

Respectfully submitted,

DATED: July 1, 2011        **ALSTON & BIRD LLP**

/s/ Joshua P. Martin
Joshua P. Martin
State Bar No. 24037030
2200 Ross Avenue, Ste. 3601
Dallas, TX 75206
Telephone: 214-922-3400
Facsimile: 214-922-3489
Email: josh.martin@alston.com

*Attorneys for Holiday Hospitality Franchising, Inc.*

## CERTIFICATE OF SERIVCE

      I certify that I served true copies of the foregoing objection by mailing same to all person whole names and addresses are set forth in the creditor matrix mailing matrix attached hereto, on July 1, 2011.

                                                      /s/ Joshua P. Martin_____
                                                      Joshua P. Martin

| | | |
|---|---|---|
| Label Matrix for local noticing<br>0540-4<br>Case 11-40629<br>Eastern District of Texas<br>Sherman<br>Thu Jun 30 09:50:37 CDT 2011 | % AT&T Services Inc.<br>James Grudus, Esq.<br>One AT&T Way, Room 3A218<br>Bedminster, NJ 07921-2693 | AT&T<br>250 South Clinton St.<br>4th Floor<br>Syracuse, NY 13202-1866 |
| AT&T<br>P. O. Box 5001<br>Carol Stream, IL 60197-5001 | AT&T<br>P. O. Box 5019<br>Carol Stream, IL 60197-5019 | AT&T<br>PO Box 5091<br>Carol Stream, IL 60197-5091 |
| AT&T Services Inc.<br>James Grudus, Esq<br>One AT&T Way, Room 3A218<br>Bedminster, NJ 07921-2693 | Airco Services Inc.<br>c/o E3 Solutions LLC<br>6510 Abrams Rd.<br>Suite 320<br>Dallas, TX 75231-7250 | All Seasons Landscapes, LP<br>110-F W. Main St.<br>Gainesville, TX 76240 |
| American Hotel Register<br>c/o RMS Bankruptcy Recovery Services<br>P.O. Box 5126<br>Timonium, Maryland 21094-5126 | American Hotel Register Co.<br>16458 Collections Ctr. Dr.<br>Chicago, IL 60693-0164 | Atmos Energy<br>P. O. Box 790311<br>St. Louis, MO 63179-0311 |
| Attorney General of Texas<br>Bankruptcy Division<br>PO Box 12548<br>Austin, TX 78711-2548 | BWS Fire<br>PO Box 1897<br>Lake Dallas, TX 75065-1897 | Andrew F. Baka<br>Special Assistant US Atty<br>US Small Business Administration<br>4300 Amon Carter Blvd. Ste. 114<br>Ft. Worth, TX 76155-2652 |
| Balwinder Malhi<br>901 Plumas St.<br>Yuba City, CA 95991-4012 | Brown Outdoor Advertising, LLC<br>2124 Grayson Rd.<br>McKinney, TX 75070-3980 | COOKE CO,LAT RD,G'VIL CITY & HOS,NCTC D<br>C/O PERDUE BRANDON FIELDER COLLINS & MOT<br>PO BOX 8188<br>WICHITA FALLS TX 76307-8188 |
| COOKE CO,LAT RD,G'VIL HOS&CITY,NCTC,<br>C/O PERDUE BRANDON FIELDER COLLINS & MOT<br>PO BOX 8188<br>WICHITA FALLS, TX 76307-8188 | City of Gainesville<br>200 S. Rusk<br>Gainesville, TX 76240-4866 | City of Gainesville Utilities<br>PO Box 1399<br>Gainesville, TX 76241-1399 |
| Comptroller of Public Accounts<br>c/o Office of the Attorney General<br>Bankruptcy - Collections Division<br>PO Box 12548<br>Austin TX  78711-2548 | (p)TEXAS COMPTROLLER OF PUBLIC ACCOUNTS<br>REVENUE ACCOUNTING DIV - BANKRUPTCY SECTION<br>PO BOX 13528<br>AUSTIN TX 78711-3528 | Cooke County Appraisal District<br>201 N. Dixon<br>Gainesville, TX 76240-3974 |
| Estes and Gandhi<br>1700 Pacific Ave., Suite 4610<br>Dallas, TX 75201-4604 | Estes and Gandhi<br>1700 Pacific Ave.<br>Suite 4610<br>Dallas, TX 75201-4604 | Fashion Seal Uniform<br>PO Box 636822<br>Cincinnati, OH 45263-6822 |
| Franchising, Inc.<br>c/o Nimesh Patel<br>Holiday Hospitality Franchising, Inc.<br>3 Ravinia Drive, Ste 100<br>Atlanta, GA 30346-2121 | William A. Frazell<br>300 West 15th St., 8th Floor<br>Austin, TX 78701-1649 | Gainesville ISD<br>c/o Laurie Spindler Huffman<br>Linebarger Goggan Blair & Sampson, llp<br>2323 Bryan St., Ste. 1600<br>Dallas, Tx 75201-2644 |

| | | |
|---|---|---|
| Gainesville ISD<br>Linebarger Goggan Blair & Sampson, LLP<br>c/o Laurie Spindler Huffman<br>2323 Bryan Street Ste 1600<br>Dallas, TX 75201-2644 | Golden Triangle Fire Prot., LLC<br>1516 Masch Branch Rd.<br>Suite B<br>Denton, TX 76207-3650 | Harminder Singh<br>820 S. MacArthur Blvd.<br>Suite 105<br>Coppell, TX 75019-4220 |
| Holiday Hospitality Franchising, Inc.<br>c/o Joshua P. Martin at Alston & Bird LL<br>2200 Ross Avenue<br>Suite 3601<br>Dallas, TX 75201-7979 | Laurie Spindler Huffman<br>Linebarger, Goggan, Blair & Sampson<br>2323 Bryan St., Suite 1600<br>Dallas, TX 75201-2644 | InterContinental Hotel Group<br>3 Ravinia Dr.<br>Suite 100<br>Atlanta, GA 30346-2121 |
| Internal Revenue Service<br>Department of the Treasury<br>P.O. Box 7346<br>Philadelphia, PA 19101-7346 | Internal Revenue Service<br>PO Box 7346<br>Philadelphia, PA 19101-7346 | Janpak DFW<br>3101 High River Rd. Ste. 101<br>PO Box 155339<br>Ft. Worth, TX 76155-0339 |
| Janpak DFW<br>3101 High River Rd.<br>Suite 101<br>Fort Worth, TX 76155-1906 | Harold Lerew<br>Perdue Brandon Fielder Collins<br>P.O. Box 8188<br>Wichita Falls, TX 76307-8188 | Linebarger Goggan Blair & Sampson<br>University Center, Ste. 1720<br>2323 Bryan Street<br>Dallas, TX 75201-2603 |
| Joshua Martin<br>2200 Ross Avenue, Suite 3601<br>Dallas, TX 75201-7979 | John Mayer<br>Ross Banks May Cron & Cavin P.C.<br>2 Riverway, Suite 700<br>Houston, TX 77056-1918 | Mid West Hotel Lodging, LLC<br>2716 Palazzo Ct.<br>Modesto, CA 95356-9336 |
| Narinder Dhaliwal<br>1245 Jacob Lane<br>Carmichael, CA 95608-6023 | New Global Inc.<br>207 Hillside Lane<br>Lindsay, TX 76250-2721 | North Texas CDC/SBA<br>1101 East Plano Pkwy.<br>Suite A<br>Plano, TX 75074-8586 |
| Playnetwork, Inc.<br>PO Box 809198<br>Chicago, IL 60680-9198 | Professional Audio Studios<br>37 Putters Way<br>Middletown, NY 10940-2663 | Quick Badge & Sign Inc.<br>PO Box 468<br>Gresham, OR 97030-0101 |
| Raj Patel<br>207 Hillside Lane<br>Lindsay, TX 76250-2721 | Reliable Electric<br>1953 FM 371<br>Gainesville, TX 76240-7384 | SSD Systems<br>1740 N. Lemon Street<br>Anaheim, CA 92801-1007 |
| ScentAir<br>14301-G South Lakes Dr.<br>Charlotte, NC 28273-0023 | Sterling Bank<br>2900 North Loop West, 7th Floor<br>Houston, TX 77092-8841 | Sterling Bank<br>PO Box 40333<br>Houston, TX 77240-0333 |
| SuddenLink Business<br>PO Box 660365<br>Dallas, TX 75266-0365 | Sysco Guest Supply<br>PO Box 910<br>Monmouth Junction, NJ 08852-0910 | Terminex Commercial<br>4601 Langland Rd.<br>Suite 101<br>Dallas, TX 75244-3953 |

| | | |
|---|---|---|
| Texas Comptroller of Public Accounts<br>William A. Frazell<br>c/o Sherri K. Simpson, Paralegal<br>P.O. Box 12548<br>Austin, TX 78711-2548 | Texas Workforce Commission<br>101 East 15th Street<br>Austin, TX 78778-0001 | Thyssen Elevator<br>2591 Dallas Pklwy., Suite 600<br>Frisco, TX 75034-8564 |
| Thyssen Elevator<br>2591 Dallas Pkwy.<br>Suite 600<br>Frisco, TX 75034-8564 | Thyssen Krupp Elevator<br>Janet Britton<br>2801 Network Blvd., ste 700<br>Frisco, TX 75034-1885 | Tom R. McElvain Pool Service<br>1306 College View<br>Gainesville, TX 76240-4600 |
| U. S. Attorney<br>700 Nations Bank Tower<br>110 N. College Ave.<br>Tyler, TX 75702-7226 | U. S. Trustee<br>110 N. College Street<br>Suite 300<br>Tyler, TX 75702-7231 | U.S. Attorney General<br>Department of Justice<br>Main Justice Building<br>10th & Constitution Ave., NW<br>Washington, DC 20530-0001 |
| US Trustee<br>Office of the U.S. Trustee<br>110 N. College Ave.<br>Suite 300<br>Tyler, TX 75702-7231 | USA Today<br>304 Seaboard Lane<br>Suite 301<br>Franklin, TN 37067 | Ultra Chem<br>PO Box 3717<br>Shawnee Mission, KS 66203-0717 |
| Arthur I. Ungerman<br>Arthur I. Ungerman, Attorney at Law<br>8140 Walnut Hill Lane<br>Suite 301<br>Dallas, TX 75231-4328 | United States Small Business Administration<br>4300 Amon Carter Blvd., Suite 114<br>Fort Worth, TX 76155-2652 | United States Small Business Administration<br>4300 Amon Carter Blvd., Suite 114<br>Fort Worth, Texas 76155-2652 |
| John M. Vardeman<br>UST Office<br>110 N. College St., Suite 300<br>Tyler, TX 75702-7231 | | |

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Comptroller of Public Accts
Rev Acctg Div Bankruptcy Dept
PO Box 13528
Austin, TX 78711

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | | |
|---|---|---|
| (d)AT&T<br>250 South Clinton St.<br>4th Floor<br>Syracuse, NY 13202-1866 | (d)AT&T<br>PO Box 5001<br>Carol Stream, IL 60197-5001 | (d)AT&T<br>PO Box 5019<br>Carol Stream, IL 60197-5019 |

| | | |
|---|---|---|
| (d)Airco Services Inc.<br>c/o E3 Solutions, LLC<br>6510 Abrams Rd.<br>Suite 320<br>Dallas, TX 75231-7250 | (d)American Hotel Register Co.<br>16458 Collections Ctr. Dr.<br>Chicago, IL 60693-0164 | (d)Atmos Energy<br>PO Box 790311<br>St. Louis, MO 63179-0311 |
| (d)BWS Fire<br>PO Box 1897<br>Lake Dallas, TX 75065-1897 | (d)Brown Outdoor Advertising, LLC<br>2124 Grayson Rd.<br>McKinney, TX 75070-3980 | (d)New Global Inc.<br>207 Hillside Lane<br>Lindsay, TX 76250-2721 |
| (d)North Texas CDC/SBA<br>1101 East Plano Pkwy.<br>Suite A<br>Plano, TX 75074-8586 | (d)Reliable Electric<br>1953 FM 371<br>Gainesville, TX 76240-7384 | (d)Sterling Bank<br>2900 North Loop West<br>7th Floor<br>Houston, TX 77092-8841 |
| (d)Suddenlink Business<br>PO Box 660365<br>Dallas, TX 75266-0365 | (d)Sysco Guest Supply<br>PO Box 910<br>Monmouth Junction, NJ 08852-0910 | (d)Terminex Commercial<br>4601 Langland Rd.<br>Suite 101<br>Dallas, TX 75244-3953 |
| (d)USA Today<br>304 Seaboard Lane<br>Suite 301<br>Franklin, TN 37067 | End of Label Matrix<br>Mailable recipients   75<br>Bypassed recipients   16<br>Total                 91 | |