**ARTHUR I. UNGERMAN**
**JOYCE W. LINDAUER**
**Attorneys at Law**
**8140 Walnut Hill Lane, Suite 301**
**Dallas, Texas 75231**
**(972) 239-9055 Telephone**
**(972) 239-9886 Facsimile**
arthur@arthurungerman.com
**WITHDRAWING ATTORNEYS FOR THE DEBTOR IN POSSESSION**

**GEORGE A. KURISKY, JR.**
**BRANCH M. SHEPPARD**
**JOHNSON DELUCA KURISKY & GOULD, P.C.**
**4 Houston Center**
**1221 Lamar, Suite 1000**
**Houston, Texas 77010**
**(713) 652-2525 Telephone**
**(713) 652-5130 Facsimile**
gkurisky@jdkglaw.com
**PROPOSED ATTORNEYS FOR DEBTOR IN POSSESSION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| **MID WEST HOTEL LODGING, LLC,** | § | **CASE NO: 11-40629-BTR-11** |
| **Debtor in Possession** | § | **CHAPTER 11** |
| | § | |

## FIRST AMENDED DISCLOSURE STATMENT
## <u>DATED AUGUST 19, 2011</u>

# TABLE OF CONTENTS

ARTICLE I - INTRODUCTION .................................................................................. 3

ARTICLE II - REPRESENTATIONS...................................................................... 10

ARTICLE III - FINANCIAL PICTURE OF THE DEBTOR ..................................................... 11

ARTICLE IV - ANALYSIS AND VALUATION OF PROPERTY.......................................... 13

ARTICLE V- SUMMARY OF THE PLAN ............................................................. 14

ARTICLE VI - FEASIBILITY OF PLAN ............................................................. 19

ARTICLE VII - ALTERNATIVES TO DEBTOR'S PLAN ..................................................... 19

ARTICLE VIII - RISKS TO CREDITORS UNDER DEBTOR'S PLAN................................. 19

ARTICLE IX - TAX CONSEQUENCES TO THE DEBTOR ................................................. 20

ARTICLE X - PENDING LITIGATION .................................................................... 23

ARTICLE XI - SUMMARY OF SIGNIFICANT

ORDERS ENTERED DURING THE CASE ........................................................... 23

EXHIBITS ............................................................................................................

AMENDED Plan ......................................................................... 1

AMENDED Income and Expense Statement ................................................. 2

AMENDED Cash-flow Budget ...................................................... 3

AMENDED Claims Summary and Plan Payment Schedule .......................................………4

# ARTICLE I

## Identity of the Debtor

**1.01**    Debtor filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. Section 101, et seq. ("**Code**") on February 28, 2011 in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division ("**Court**"), initiating the above-styled and referenced bankruptcy proceeding. The **Debtor** is operating its business as a **Debtor-in-Possession** pursuant to Sections 1107 and 1108 of the **Code**.

## Purpose of This Disclosure; Source of Information

**1.02**.    **Debtor** submits this Disclosure pursuant to Section 1125 of the **Code** to all known **Claimants** of **Debtor** for the purpose of disclosing that information which the **Court** has determined is material, important, and necessary for **Creditors** of, and the Members of, **Debtor** in order to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of the **Debtor's Plan**.  A copy of the Plan is attached hereto as ***Exhibit "1"*** and incorporated herein by this reference. The Plan sets forth in detail the repayment arrangement between the Debtor and its creditors. This Disclosure describes the operations of the **Debtor** contemplated under the **Plan**.  Any accounting information contained herein has been provided by the **Debtor** and has been prepared using the cash method of accounting.

## Explanation of Chapter 11

**1.03**    Chapter 11 is the principal reorganization chapter of the **Code**.  Pursuant to Chapter 11, a debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders.  Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case.  A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor.  After a plan of reorganization has been filed, it must be accepted by holders of claims against, or interests in, the debtor.  Section 1125 of the **Code** requires full disclosure before solicitation of acceptances of a plan of reorganization.  This Disclosure is presented to **Claimants** to satisfy the requirements of Section 1125 of the **Code**.

## Explanation of the Process of Confirmation

**1.04**    Even if all **Classes** of **Claims** accept the plan, its confirmation may be refused by the **Court**.  Section 1129 of the **Code** sets forth the requirements for confirmation and, among other things, requires that a plan of reorganization be in the best interests of **Claimants**.  It generally requires that the value to be distributed to **Claimants** and **Equity Interest Holders** may not be less than such parties would receive if the debtor were liquidated under Chapter 7 of the **Code**.

**1.05**    Acceptance of the plan by the **Creditors** and **Equity Interest Holders** is important.  In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders

that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. Chapter 11 of the **Code** does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the **Court**. The plan, however, must be accepted by: (i) at least the holder of one (1) class of claims by a majority in number and two-thirds (2/3) in amount of those claims of such class actually voting; or (ii) at least the holders of one (1) class of allowed interests by two-thirds (2/3) in amount of the allowed interests of such class actually voting.

     **1.06** The **Court** may confirm the plan even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the **Code**.

     **1.07** **Confirmation** of the plan discharges the debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the **Code**. **Confirmation** makes the plan binding upon the debtor and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

### Voting Procedures

     **1.08** <u>Unimpaired Class</u>. **Claimants** in Class 1 are not impaired under the **Plan**. Such Class, therefore, is deemed to have accepted the **Plan**.

     **1.09** <u>Impaired Classes</u>. The Classes 2, 3, 4, 5, 6, 7, and 8 **Claimants** are impaired as defined by Section 1124 of the **Code**. The **Debtor** is seeking the acceptance of the **Plan** by **Claimants** in **Classes** 2, 3, 4, 5, 6, 7, and 8. Each holder of an **Allowed Claim** in **Classes** 2, 3, 4, 5, 6, 7, and 8 may vote on the **Plan** by completing, dating, and signing the ballot sent to each holder and filing the ballot as set forth below. One ballot will be sent to each **Claimant** eligible to vote on the **Plan**. For all **Classes**, the ballot must be returned to **Debtor**'s attorney, George A. Kurisky, Jr. and Branch M. Sheppard, Johnson DeLuca Kurisky & Gould, P.C., 4 Houston Center, 1221 Lamar, Suite 1000, Houston, Texas 77010 by mail, <u>bsheppard@jdkglaw.com</u>, by e-mail, or (713) 652-5130 by facsimile. In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

     **1.10** <u>Acceptances</u>. Ballots that are signed and returned but fail to indicate either an acceptance or rejection will not be counted.

### Best Interests of Creditors Test

     **1.11** Section 1129(a)(7) of the **Code** requires that each impaired class of claims or interests accept the **Plan** or receive or retain under the **Plan** on account of such claim or interest, property of a value as of the **Effective Date** of the **Plan**, that is not less than the amount that such holder would so receive or retain if the **Debtor** were liquidated under Chapter 7 of the Bankruptcy **Code**. If Section 1111(b)(2) of the **Code** applies to the claims of such class, each holder of a claim of such class will receive or retain under the **Plan**, on account of such claim, property of a value, as of the **Effective Date** of the **Plan**, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In order for the **Plan** to be confirmed, the **Court** must determine that the **Plan** is in the best interests of the **Debtor**'s creditors. Accordingly, the proposed plan must provide the **Debtor**'s creditors with

more than they would receive in a Chapter 7 liquidation. Accordingly, since the **Plan** proposes to pay all secured creditors in full and the unsecured creditors a substantial dividend, Debtor believes that the creditors are receiving more than they would receive in Chapter 7 liquidation. Accordingly, the **Plan** satisfies the requirements of Section 1129(a)(7).

## Cramdown

1.12    The **Court** may confirm the **Plan** even though less than all of the classes of claims and interests accept it.  The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the **Code**. Accordingly, **Debtor**, as the plan proponent, requests the **Court** to determine that the **Plan** does not discriminate unfairly, and is fair and equitable with respect to any objecting creditor. A discussion of the specific requirements for Cramdown of a Plan are set forth starting below.

## Definition of Impairment

1.13    As set forth in section 1124 of the Bankruptcy Code, a class of claims or equity interests is impaired under a plan of reorganization unless, with respect to each claim or equity interest of such class, the plan:

(a)    leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or equity interest; or

(b)    notwithstanding any contractual provision or applicable law that entitles the holder or a claim or equity interest to demand or receive accelerated payment of such claim or equity interest after the occurrence of a default:

(i)    cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code;

(ii)    reinstates the maturity of such claim or interest as it existed before such default;

(iii)    compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance on such contractual provision or such applicable law; and

(iv)    does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest.

## Classification and Treatment of Claims and Interests

1.14    The Plan classifies Claims separately in accordance with the Bankruptcy Code and provides different treatment for different classes of Claims.

1.15    Only holders of Allowed Claims are entitled to receive distributions under the Plan.  Allowed Claims are Claims that are not in dispute, are not contingent, are liquidated in amount, and are not subject to objection or estimation.  Initial distributions or other transfers of Cash or other consideration specified in the Plan otherwise available to the holders of Allowed

Claims will be made on the Effective Date, or (b) the date on which such Claim becomes an Allowed Claim), as otherwise provided in the Plan, or as may be ordered by the Bankruptcy Court.

**1.16** In accordance with the Plan, unless otherwise provided in the Plan or the Confirmation Order, the treatment of any Claim under the Plan will be in full satisfaction, settlement, release, and discharge of and in exchange for each and every Claim.

## Requirements for Confirmation of the Plan

**1.17** At the confirmation hearing, the Bankruptcy Court must determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. As set forth in section 1129 of the Bankruptcy Code, these requirements are as follows:

The plan complies with the applicable provisions of the Bankruptcy Code.

The proponents of the plan comply with the applicable provisions of the Bankruptcy Code.

The plan has been proposed in good faith and not by any means forbidden by law.

Any payment made or promised by the Debtor, by the plan proponents, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in, or in connection with, the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of the Bankruptcy Court as reasonable.

(A) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a joint plan with the Debtor, or a successor to the Debtor under the plan; and (B) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized Debtor, and the nature of any compensation for such insider.

Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the Debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

With respect to each impaired class of claims or interests:

(i) each holder of a claim or interest of such class has (A) accepted the plan or (B) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated on such date under chapter 7 of the Bankruptcy Code on such date; or (ii) if section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, the holder of a claim of such

class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.
With respect to each class of claims or interests:

(i)      such class has accepted the plan; or

(ii)     such class is not impaired under the plan.

Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that:

(i)      with respect to a claim of a kind specified in section 507(a)(1) or

507(a)(2) of the Bankruptcy Code, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(ii)     with respect to a class of claims of a kind specified in section 507(a)(3), 507(a)(4), 507(a)(5) or 507(a)(6) of the Bankruptcy Code, each holder of a claim of such class will receive: (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and

(iii)    with respect to a claim of a kind specified in section 507(a)(7) of the Bankruptcy Code, the holder of a claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

If a class of claims is impaired under the plan, at least one class of claims that is impaired has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class.

If the debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the debtor has paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition.

Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the plan, unless such liquidation or reorganization is proposed in the plan.
All fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on confirmation of the plan, have been paid or the plan provides for the payments of all such fees on the effective date of the plan.

The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114, at any time prior to confirmation of the plan, for the duration of the period the Debtor has obligated itself to provide such benefits.

The Debtor believes that the Plan satisfies all the statutory requirements of chapter 11 of the Bankruptcy Code, that the Debtor has complied with or will have complied with all the requirements of chapter 11, and that the Plan is proposed in good faith. At the Confirmation Hearing, the Bankruptcy Court will determine whether holders of Allowed Claims or Allowed Equity Interests would receive greater distributions under the Plan than they would receive in a liquidation under chapter 7.

The Debtor believes that the feasibility requirement for confirmation of the Plan is satisfied by the fact that the future operating revenues will be sufficient to satisfy the obligations under the Plan in addition to supporting sustainable growth of the enterprise. These facts and others demonstrating the confirmability of the Plan will be shown at the Confirmation Hearing.

## <u>Cramdown</u>

**1.18**   The bankruptcy court may confirm a plan of reorganization even though fewer than all the classes of impaired claims and interests accept it. For a plan of reorganization to be confirmed despite its rejection by a class of impaired claims or interests, the proponents of the plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or interests that has not accepted the plan.

**1.19**   "Fair and equitable" has different meanings with respect to the treatment of secured and unsecured claims. As set forth in section 1129(b)(2) of the Bankruptcy Code, those meanings are as follows:

With respect to a class of **secured claims**, the plan provides:

(a)   (i) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the Debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(ii)    that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(b)   for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (a) and (b) of this subparagraph; or

(c)   the realization by such holders of the "indubitable equivalent" of such claims.

With respect to a class of **unsecured claims**, the plan provides:

(a)   that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(b)   the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115 subject to the requirements that a) the value, as of effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or (b) the value of property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

With respect to a class of **interests**, the plan provides:

(a)   that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled or the value of such interest; or

(b)   that the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

**1.20**      In the event that one or more classes of impaired Claims reject the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejecting impaired class of Claims. SO LONG AS THE CLASSES OF UNSECURED CREDITORS VOTE FOR THE PLAN THEN THE PLAN WILL NOT VIOLATE THE ABSOLUTE PRIORITY RULE.  The absolute priority rule requires that prior to the Debtor retaining or receiving any property the senior classes of claims must be paid in full or vote to accept the Plan.

The Debtor believes the Plan does not discriminate unfairly against, and is fair and equitable with respect to, each impaired class of Claims.

## ARTICLE II

## REPRESENTATIONS

2.01     This Disclosure is provided pursuant to Section 1125 of the **Code** to all of the **Debtor**'s known **Creditors** and other parties in interest in connection with the solicitation of acceptance of its **Plan** of reorganization, as amended or modified.  The purpose of this Disclosure is to provide such information as will enable a hypothetical, reasonable investor, typical of the holders of **Claims**, to make an informed judgment in exercising its rights either to accept or reject the **Plan**.

2.02     The information contained in this Disclosure has been derived from information submitted by the **Debtor**, unless specifically stated to be from other sources.

2.03     No representations concerning the **Debtor** are authorized by the **Debtor** other than those set forth in this Disclosure.  The **Debtor** recommends that any representation or inducement made to secure your acceptance or rejection of the **Plan** which is not contained in this Disclosure should not be relied upon by you in reaching your decision on how to vote on the **Plan**.  Any representation or inducement made to you not contained herein should be reported to the attorneys for **Debtor** who shall deliver such information to the **Court** for such action as may be appropriate.

2.04     ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES.   IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE OR UPON THE MERITS OF THE PLAN.  ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

2.05     THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.  FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE.  THE APPROVAL BY THE COURT OF THIS DISCLOSURE DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

2.06     THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS, AND SHOULD BE

ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

2.07 DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS DISCLOSURE ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

## ARTICLE III

## FINANCIAL PICTURE OF THE DEBTOR

### Financial History and Background of the Debtor

3.01. The Debtor and its principals, Gurpreet Dhaliwal and Jagmohan Dhillon, bought the hotel in September 2006, the total cost of which was $ 6,750,000.00. The current principal due on the mortgage loan to Sterling Bank is $3,192,655.00, North Texas CDC/SBA $1,810,093.00, and New Global Inc $350,000.00. One of the principals, Jagmohan Dhillon, has been in the hotel business since 2000.

From the very beginning, the hotel has been managed directly by the Debtor and its principals, Gurpreet Dhaliwal and Jagmohan Dhillon, who have over 10 years experience in the lodging industry.

Gurpreet Dhaliwal and Jagmohan Dhillon are directly responsible for managing the assets, which include setting financial goals, budget, policies, franchise relations, major renovations and marketing. They also provide and oversee the day to day operations of the hotel, which include front desk operations, sales reservations, housekeeping, maintenance and employee relations with the help of a General Manager who is paid salary from the hotel.

There is no third party management of the hotel and no other fees or charges are paid to anyone for managing the hotel.

Recession:

Between the recession and the financial crisis, the Debtor has been left struggling with financial difficulties.

1. Revenue

Room revenue has been trending down since January 2009, and as of July 2009, took a large downward turn due to the drastic downturn in the economy and the shift in travel patterns of many companies compared to the past. Also in the area, Holiday Inn Express was the only main hotel in 2006. In 2007, Hampton Inn and Comfort Suites opened. In 2008, La Quinta Inn opened. In 2009, the nearby Casino opened its own 400 room hotel. With all these new rooms

available in Gainesville, occupancy decreased and overall city revenue was divided among the above hotels. Also, increase in gas prices has affected road travel which has directly affected overall occupancy. Some companies have closed down or moved out due to the economy. The partners have cut down a significant amount of the operating expenses without sacrificing the quality of service to the hotel guests. Therefore even though the revenue is increasing compared to the previous year, the average daily rate has been declining due to brand new hotels in the area slashing their rates drastically to stay competitive. This inability to achieve a satisfactory occupancy and ARD erodes the profitability and income available to pay the current mortgage obligation.

2. Expense

The Debtor's expenses, as benchmarked to the most recent hospitality industry trends report for Debtor's property specifications are well within the industry trends.

Next Step:

The Debtor has identified that the key problems with the hotel are all directly related to the drastic downturn in the economy, and many companies looking for better rates and building of more rooms in the town. The Debtor has started a very aggressive program to get new business and the businesses lost due to the economy downturn. Some companies are again bringing guests out of town. As the companies are slowly coming back, the Debtor makes sure it gets its share of the pie. The Debtor is closing in on the businesses which are in the pipe line in the area, but it will take time to recover what the Debtor lost. The Debtor feels that with a smaller payment, it should be able to meet the mortgage obligation.

## Current Operations

3.02. An Income and Expenses statement showing actual operation of the Debtor is attached hereto as **_Exhibit "2"_** and incorporated herein by this reference as if set forth in full for all purposes.

## Future Income and Expenses Under the Plan

3.03. The **Debtor**'s projections of plan payments is set forth on **_Exhibit "3"_** attached hereto. The **Debtor's** Claims Summary and Plan Payment Schedule is attached hereto as **_Exhibit "4"_.** Dollars to fund the **Plan** will come from the **Debtor's** continued business operations and the Equity Interest Holders' contributions called for by the Plan.

## Future Management of the Debtor

3.04. The **Plan** contemplates Gurpreet Dhaliwal and Jagmohan Dhillon will continue management and operation of the **Debtor's** business. They have been in this position since 2006, and have over ten (10) years of managerial and operational experience. **Debtor** will keep current its payments for post-petition payables.

# ARTICLE IV

## ANALYSIS AND VALUATION OF PROPERTY

### Real Property

4.01.    The **Debtor** owns the real property described below.  The total as-is value of such property is $3,557,463.33 based upon an appraisal by the Debtor in the amount of $3,250,000.00 effective June 30, 2011, and an appraisal by Sterling Bank in the amount of $4,800,000.00 effective June 28, 2011.  Debtor does not agree with Sterling Bank's appraised value.

### Personal Property

4.02.    **Debtor** owns the personal property described as follows:

| Property | Value |
|---|---|
| Office Furniture and Equipment | $6,000.00 |
| Furniture and Fixtures in Hotel Rooms and Exercise Equipment | $120,000.00 |
| Inventory | $28,000.00 |
| Bank Accounts | $89,618.06 |
| Accounts Receivable | $16,749.98 |
| 2007 Hyundai Van | $10,000.00 |

Because the Debtor's assets consist or both real and personal property that work together to create a hotel normally the value of the personal property assets is absorbed into the value of the real property and considered as one unit.   The total as-is value of such property is $3,557,463.33 based upon an appraisal by the Debtor in the amount of $3,250,000.00 effective June 30, 2011, and an appraisal by Sterling Bank in the amount of $4,800,000.00 effective June 28, 2011.  Debtor does not agree with Sterling Bank's appraised value.

### Liquidation Value of Assets

| Property | Value | Secured Debt | Equity |
|---|---|---|---|
| Real and Personal Property[1] | $3,557,463.33 | $5,717,556.21 | $0.00 |

---

[1] Included in the total value of the hotel.

The projected amount of unsecured debt is $2,204,736.88 and the Plan proposes to pay the unsecured debt 5% of their claims over five (5) years. The Debtor has prepared this Liquidation Analysis based on its opinion of the value of the assets. It has not included costs of sale which would be approximately 8%. The major source of new funding for the Plan will come from the investment of $150,000.00 by Gurpreet Dhaliwal ($76,500.00 or 51.00%), Navdeep Dhaliwal ($60,000.00 or 40.00%), and Jagmohan Dhillon ($13,500.00 or 9.00%), at Jagmohan Dhillon's sole option before or at the time of confirmation, the Debtor's business operations and income, and cash on hand. If Jagmohan Dhillon does not exercise his option at or before the time of confirmation, the remaining $13,500.00 will be paid by Gurpreet Dhaliwal and/or Navdeep Dhaliwal. The Debtor's property is subject to the liens of Sterling Bank, North Texas CDC/SBA, and New Global, Inc.

In the event that any additional sums are required to avoid default under the terms of this Chapter 11 Plan, all members agree to provide up to an additional $150,000.00 to be paid *pro rata* by the members based upon their individual equity interests. If a member does not contribute his *pro rata* share, the remaining members will be obligated to contribute the additional sums, and any defaulting member will lose his equity interest proportionate to the amount that the member failed to contribute.

## ARTICLE V

## SUMMARY OF THE PLAN

5.01. **Class 1** consists of any Allowed Administrative Claims.

**Class 2** consists of any Allowed Secured Tax Claims.

**Class 3** consists of any Allowed Priority Tax Claims.

**Class 4** consists of any Allowed Secured Claim of Sterling Bank.

**Class 5** consists of any Allowed Secured Claims of Narinder Dhaliwal, Harminder Singh, and Balwinder Mahli.

**Class 6** consists of the Assumed Executory Contract of Holiday Inn.

**Class 7** consists of the Allowed Unsecured Claims.

**Class 8** consists of the Shareholders' Interests.

**Class 1 Claims.** The Class 1 Claims will be paid, once Allowed, in full by the Debtor and on or before the Effective Date. These claims are priority claims pursuant to Section 507(a)(1) of the Bankruptcy Code. These claims include claims for Debtor's attorney's fees and U.S. Trustee's fees. U.S. Trustee's fees must be paid until the case is closed. The Debtor must file quarterly reports following confirmation and until the case is closed. The Class 1 Claims may agree to a different treatment.

**Class 2 Claims (Secured Tax Creditor Claims)**. The Class 2 Claims are secured claims with liens that will follow the collateral securing such claims and to the extent that such collateral is surrendered either prior to or as part of this Plan such secured liens and claims shall follow the collateral and shall not be paid by the Debtor as part of this Plan.

The Class 2 Allowed Claims that relate to collateral or property being retained by the Debtor as part of the Plan shall be paid once Allowed over five (5) years from the Petition Date with interest on such amounts at the rate of 12% per annum until paid in full. The payments shall be made to the extent of the tax escrow on hand and then monthly payments on the unpaid balance shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full.

These claims are secured claims. These creditors shall retain their liens to secure their claims until paid in full under this Plan. The Class 2 Claims shall accrue interest from the Petition Date at the rate of 1% per month from the Petition Date through the Effective Date of the Plan and 12% per annum following the Effective Date until paid in full. These creditors shall retain their senior liens to secure their claims until paid in full under this Plan. In the event that the Debtor disputes such claim, the payments will be applied to the undisputed amount of the claim as ultimately allowed. While resolution of any such objection is pending, payments pursuant to the Plan shall be applied to the undisputed portion of the claim as ultimately allowed. In the event of a default under the plan, counsel for holder of a claim in this class shall provide notice of the default via facsimile to counsel for the debtor. Such default shall be cured within 15 business days of the date of transmission of such notice of default. In the event the default is not cured, the Claimant shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court. The Claimant shall only be required to provide two notices of default. Upon a third event of default, the Claimant shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. Failure to pay post-petition taxes prior to delinquency shall constitute an event of default.

The Class 2 Claims are Impaired and the holders of the Class 2 Claims are entitled to vote to accept or reject the Plan.

**Class 3 Claim**. The Class 3 Claims will be paid once Allowed over three (3) years with interest on such amounts at the rate of 4.25% per annum until paid in full. The payments shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full. These claims are priority claims. A failure by the reorganized Debtor to make a payment to the priority tax creditors pursuant to the terms of the Plan shall be an Event of Default. If the reorganized Debtor fails to cure and Event of Default as to such payments within ten (10) days after receipt of written notice of default from the priority tax creditors, then the priority tax creditors may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the priority tax creditors may have under applicable state law; and/or (c) seek such relief as may be appropriate in the Court.

The occurrence of any of the following shall constitute an event of default under the Plan:

1) **Failure to Make Payments.** Failure on the part of Debtor to pay fully when due any payment required to be made in respect of the Plan Debt. However, due to the size and ongoing nature of the IRS's claim, upon a default under the plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal (or state) tax lien and the powers of levy, seizure, and as provided under the Internal Revenue Code. As to the IRS:

(A) If the Debtor or its successor in interest fails to make any plan payment, or deposits of any currently accruing employment or sales tax liability; or fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the Debtor or its successor in interest failed to file any required federal or state tax return by the due date of such return, then the United States may declare that the Debtor is in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtor is in default.

(B) If the United States declares the Debtor or the successor in interest to be in default of the Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, may become due and payable immediately upon written demand to the Debtor or the successor in interest.

(C) If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to send two notices of default, and upon the third event of Default the IRS may proceed to collect on all amounts owed without recourse to the Bankruptcy Court and without further notice to the Debtor. The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan. All payments will be sent to: /IRS, 1100 Commerce Street, Mail Code **5024** DAL, Dallas, Texas 75242 attn Leo Carey.

(D) The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor to the Internal Revenue Service; but the Internal Revenue Service shall not take action to actually collect from such persons unless and until there is a default under the Plan and as set forth above.

The Class 3 Claims are Impaired and the holders of the Class 3 Claims are entitled to vote to accept or reject the Plan.

**Class 4 Claim**.  The Class 4 Claim will be paid as Allowed as follows:

The Class 4 Claim is an Allowed Secured Claim of Sterling Bank in the amount $3,557,463.33 and shall be paid in full over five (5) years with the Allowed Amount of the secured claim of $3,557,463.33 amortized over twenty-five (25) years with interest on such Allowed Amount at prime plus 2.00% per annum and a balloon payment of at the end of the five (5) year term.  The payments shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full.

The Class 4 Claim shall retain all of its liens and security interests as originally provided in its loan documents until paid off.

The Class 4 Claim is Impaired and the holder of the Class 4 Claim is entitled to vote to accept or reject the Plan.

**Class 5 Claim**.  The Class 5 Claim will be paid as Allowed as follows:

The Class 5 Claim is the Allowed Secured Claims of Narinder Dhaliwal in the amount of $4,599.54, Harminder Singh in the amount of $3,500.50, and Balwinder Mahli in the amount of $1,948.42 and shall be paid in full over three (3) years with principal and interest at 6.00% per annum.  The payments shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full.  The Class 5 Claim shall retain its lien to secure its claim.

The Class 5 Claim is Impaired and the holder of the Class 5 Claim is entitled to vote to accept or reject the Plan.

**Class 6 Claim.**  The Class 6 Claim will be paid as Allowed as follows:

The Class 6 Claim is the Pre-Petition franchise fee and contractual obligations due under an assumption of the executory contract with Holiday Inn in the amount of $17,133.69 due on the Effective Date.  $60,000.00 is being escrowed for capital improvements that may be required by the franchisor.

The Class 6 Claim is Impaired and the holder of the Class 8 Claim is entitled to vote to accept or reject the Plan.

**Class 7 Claims.**  The Class 7 Claims will be paid as Allowed as follows:

The Class 7 Claims as Allowed Unsecured Claims shall be paid 5.00% of their claims over five (5) years.  The payments will be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until 5% of their claims are paid.

In the event of a default under the plan, counsel for holder of a claim in this class shall provide notice of the default via facsimile to counsel for the debtor and by mail to the Debtor. Such default shall be cured within fifteen (15) business days of the date of transmission of such notice of default. In the event the default is not cured, the Claimant shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court. The Claimant shall only be required to provide two (2) notices of default. Upon a third event of default, the Claimant shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. The holders of the Class 9 Claims shall not be bound by any release provisions in the Plan that would release any liability of its guarantors to the holders of the Class 7 Claims.

The Class 7 Claims are Impaired and the holder of the Class 7 Claims are entitled to vote to accept or reject the Plan.

**Class 8 Claims**. The Class 8 Claims will be paid as Allowed as follows:

On the Confirmation Date, all equity interests shall be cancelled. The new equity interests in the Debtor shall be issued 51.00% to Gurpreet Dhaliwal who is contributing to the Debtor $76,500.00, 40.00% to Navdeep Dhaliwal who is contributing to the Debtor $60,000.00, and 9.00% to Jagmohan Dhillon, at his sole option, who is contributing to the Debtor $13,500.00 at or before the time of confirmation. If Jagmohan Dhillon does not exercise his option at or before the time of confirmation, the remaining $13,500.00 will be paid by Gurpreet Dhaliwal and/or Navdeep Dhaliwal. The total $150,000.00 shall be deposited into the Debtor's counsel's trust account prior to the Confirmation Date. If the Plan is not Confirmed, the $150,000.00 will be returned to those contributing individuals. In the event that any additional sums are required to avoid default under the terms of this Chapter 11 Plan, all members agree to provide up to an additional $150,000.00 to be paid *pro rata* by the members based upon their individual equity interests. If a member does not contribute his *pro rata* share, the remaining members will be obligated to contribute the additional sums, and any defaulting member will lose his equity interest proportionate to the amount that the member failed to contribute. In the event that the unsecured creditors do not vote for the Plan, the equity interest in the Debtor shall be sold at an auction sale as set forth herein. The Debtor believes that the Plan will not violate the absolute priority rule and will be consensual as to the unsecured creditors. If the classes of the unsecured creditors do not vote for the Plan, then the Debtor's Equity Interest Holders Interests will be cancelled on the Confirmation and new interests in the Reorganized Debtor shall be issued to the successful bidder for the interest in the Debtor. Force buyout if not complete payment or proportionate.

The Equity Interests shall be sold to the highest bidder at an auction sale held at the Confirmation Hearing in this case. If the Plan is not confirmed by the Court at the Confirmation Hearing, then the sale of the equity interests shall not proceed and the sale shall be cancelled. Debtor can take higher cash offers for the purchase of the Equity Interest in the Reorganized Debtor at the time of the Hearing on Confirmation. To the extent that another party acquires the business under the this provision then such party shall assume all of the obligation of the Debtor under the Plan as approved by the Bankruptcy Court and under the original loan agreements with the Debtor's creditors to the extent not modified by the Plan or the Confirmation Order. The

Debtor shall solicit such bids by noticing this Plan out to the creditors in this case. The equity interest holders are impaired under the Plan.

## ARTICLE VI

## **FEASIBILITY OF PLAN**

6.01    Debtor asserts that its plan is feasible based on **Exhibits 2 and 3**.

**Procedure for Filing Proofs of Claims and Proofs of Interests**

6.02.    All proofs of claims and proofs of interests must be filed by those **Claimants** and **Equity Interest Holder** who have not filed such instruments on or before the **Bar Date** fixed by the **Court**.

6.03.    If **Claimants** have already filed a proof of claim with the **Court** or are listed in the **Debtor**'s Schedules as holding non-contingent, liquidated and undisputed claims, a proof of claim need not be filed. The schedules and amendments thereto are on file with the **Court** and are open for inspection during regular **Court** hours. If the equity security interest of an **Equity Interest Holder** is properly reflected in the **Debtor**, a proof of interest need not be filed.

## ARTICLE VII

## **ALTERNATIVES TO DEBTOR'S PLAN**

7.01.    If the **Debtor's Plan** is not confirmed, the **Debtor's** bankruptcy case may be converted to a case under Chapter 7 of the **Code**, in which case a trustee would be appointed to liquidate the assets of the **Debtor** for distribution to its **Creditors** in accordance with the priorities of the **Code**. Since the Debtor's assets are heavily mortgaged, Debtor projects that there would be little or no distribution to creditors in Chapter 7.

## ARTICLE VIII

## **RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN**

8.01.    **Claimants** should be aware that there are a number of substantial risks involved in consummation of the **Plan**. The **Plan** contemplates that the **Debtor's** business will generate revenue sufficient to pay the obligations accruing from its operations. The **Debtor** does not "guarantee" that the expenses will equal those in the projections; however, the **Debtor** believes that the projections are reasonable.

# ARTICLE IX

## TAX CONSEQUENCES TO THE DEBTOR

TO ENSURE COMPLIANCE WITH U.S. TREASURY DEPARTMENT CIRCULAR 230, HOLDERS OF CLAIMS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF UNITED STATES FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED OR RELIED UPON, AND CANNOT BE USED OR RELIED UPON, BY HOLDERS OF CLAIMS OR INTERESTS OR ANY OTHER PERSONS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON HOLDERS OF CLAIMS OR ANY OTHER PERSONS UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS INCLUDED HEREIN IN CONNECTION WITH THE PROMOTION OR MARKETING (WITHIN THE MEANING OF U.S. TREASURY DEPARTMENT CIRCULAR 230) OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS AND INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISER.

A. Introduction

The following discussion summarizes certain material U.S. federal income tax consequences of the Plan to the Debtor and holders of Claims and Interests. The summary is provided for general informational purposes only and is based on the United States Internal Revenue Code of 1986, as amended (the "Tax Code"), the treasury regulations promulgated thereunder, judicial authority and current administrative rulings and practice, all as in effect as of the date hereof (except as otherwise noted below with regard to the American Recovery and Reinvestment Act of 2009), and all of which are subject to change, possibly with retroactive effect. Changes in any of these authorities or in their interpretation could cause the United States federal income tax consequences of the Plan to differ materially from the consequences described below. The United States federal income tax consequences of the Plan are complex and in important respects uncertain. No ruling has been requested from the Internal Revenue Service (the "Service"); no opinion has been requested from Debtor's counsel concerning any tax consequence of the Plan; and no tax opinion is given by this Disclosure Statement.

The following discussion does not address all aspects of federal income taxation that may be relevant to a particular holder of a Claim or Interest in light of its particular facts and circumstances or to particular types of holders of Claims subject to special treatment under the Tax Code. For example, the discussion does not address issues of concern to broker-dealers or other dealers in securities, or foreign (non-U.S.) persons, nor does it address any aspects of state, local, or foreign (non-U.S.) taxation, or the taxation of holders of Interests in a Debtor. In addition, a substantial amount of time may elapse between the Confirmation Date and the receipt of a final distribution under the Plan. Events subsequent to the date of this Disclosure Statement, such as the enactment of additional tax legislation, court decisions or administrative changes, could affect the federal income tax consequences of the Plan and the transactions contemplated hereunder.

On February 13, 2009, the House of Representatives and the Senate passed H.R.1, the American Recovery and Reinvestment Act of 2009 (the Recovery Act), a stimulus bill that includes tax breaks for businesses and individuals. The President signed the Recovery Act on February 17, 2009. The following discussion does not address any aspects of the Recovery Act, some of which may be relevant to a particular holder of a Claim or an Interest.

THE DISCUSSION THAT FOLLOWS IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND PROFESSIONAL TAX ADVICE BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST. EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH ITS TAX ADVISORS REGARDING THE FEDERAL, STATE, LOCAL AND NON-U.S. TAX CONSEQUENCES OF THE PLAN.

B. Certain Definitions

Except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined herein or in the Plan shall have the respective meanings assigned to them in this Article.

"*COD*" shall mean cancellation of indebtedness income.
"*NOL*" shall mean net operating loss.

C. Certain Material Federal Income Tax Consequences to the Debtor

Cancellation of a Debtor's debt is generally taxable income to the Debtor. COD is the amount by which the indebtedness of a Debtor discharged exceeds any consideration given in exchange therefore. Cancellation of a debt may not necessarily be COD, however. To the extent that the Debtor is insolvent, or if the Debtor is in bankruptcy, as is the case here, the Tax Code permits the Debtor to exclude the COD from its gross income. The statutory exclusion for COD in a title 11 case generally excludes COD from gross income if the discharge is granted by a court to a Debtor under its jurisdiction in a title 11 case, as is sought herein.

The price for the bankruptcy COD exclusion (as well as the insolvency exclusion) is reduction of the Debtor's tax attributes to the extent of the COD income, generally in the following order: NOLs for the year of the discharge and NOL carryovers from prior years; general business tax credit carryovers; minimum tax credit available as of the beginning of the year following the year of discharge; net capital loss for the year of discharge and capital loss carryovers from prior years; basis of the Debtor's assets; passive activity loss and credit carryovers from the year of discharge; and foreign tax credit carryovers to or from the year of discharge. The reduction of attributes does not occur until after the end of the Debtor's tax year in which the COD occurred, so they are available to the Debtor in determining the amount of its income, loss and tax liability for the year of discharge.

As a result of the implementation of the Plan, the Debtors will have COD and potential attribute reduction. Because any reduction in tax attributes does not effectively occur until the first day of the taxable year following the taxable year in which the COD is incurred, the

resulting COD, on its own, should not impair the ability of the Debtor to use their tax attributes (to the extent otherwise available) to reduce their tax liability, if any, otherwise resulting from the implementation of the Plan.

Under section 382 of the Tax Code, if a corporation undergoes an "ownership shift," the amount of its Pre-Change Losses that may be utilized to offset future taxable income generally is subject to an annual limitation. Although the Plan allows for an ownership change it is doubtful that one will occur and as such any owner of the Debtor should consult his own tax adviser concerning the effect of the Plan.

The United States federal income tax consequences of payment of Allowed Claims pursuant to the Plan will depend on, among other things, the consideration received, or deemed to have been received, by the holder of the Allowed Claim, whether such holder reports income on the accrual or cash method, whether such holder receives distributions under the Plan in more than one taxable year, whether such holder's Claim is allowed or disputed at the Effective Date, whether such holder has taken a bad debt deduction or worthless security deduction with respect to its Claim.

In general, a holder of a Claim should recognize gain or loss equal to the amount realized under the Plan in respect of its Claim less the amount of such holder's basis in its Claim. Any gain or loss recognized in the exchange may be long-term or short-term capital gain or loss or ordinary income or loss, depending upon the nature of the Claim and the holder, the length of time the holder held the Claim and whether the Claim was acquired at a market discount. If the holder realizes a capital loss, its deduction of the loss may be subject to limitations under the Tax Code. The holder's aggregate tax basis for any property received under the Plan generally will equal the amount realized. The amount realized by a holder generally will equal the sum of the cash and the fair market value of any other property received (or deemed received) by the holder under the Plan on the Effective Date and/or any subsequent distribution date, less the amount (if any) allocable to Claims for interest. All holders of Allowed Claims are urged to consult their tax advisors. A holder of a Claim constituting an installment obligation for tax purposes may be required to recognize currently any gain remaining with respect to the obligation if, pursuant to the Plan, the obligation is considered to be satisfied at other than its face value, distributed, transmitted, sold or otherwise disposed of within the meaning of Section 453B of the Tax Code.

D. Importance of Obtaining Professional Tax Assistance

The foregoing discussion is intended only as a summary of certain U.S. federal income tax consequences of the Plan, and is not a substitute for careful tax planning with a tax professional. The above discussion is for general information purposes only and is not tax advice. The tax consequences are in many cases uncertain and may vary depending on a holder's individual circumstances.

HOLDERS OF CLAIMS ARE URGED TO CONSULT WITH THEIR TAX ADVISORS ABOUT THE FEDERAL, STATE, LOCAL AND NON-U.S. TAX CONSEQUENCES OF THE PLAN.

<center>ARTICLE X</center>

<center>**PENDING LITIGATION**</center>

10.01.    As of the date of the filing of this Disclosure the significant matters pending are as follows:

**None.**

<center>ARTICLE XI</center>

<center>**SUMMARY OF SIGNIFICANT ORDERS ENTERED DURING THE CASE**</center>

11.01.  As of the date of the filing of this Disclosure the following significant orders have been entered in this case:  Order to Use Cash Collateral, Order on Debtor's Application to Employ Counsel, and Order on Debtor's Application to Employ Accountant.

Dated: August 19, 2011

<div style="margin-left: 50%;">

**Respectfully submitted,**

By:   **//s//  Arthur I. Ungerman**
        **Arthur I. Ungerman**
        **Texas Bar No. 20391000**
        **8140 Walnut Hill Lane, Suite 301**
        **Dallas, Texas 75231**
        **(972) 239-9055 Telephone**
        **(972) 239-9886 Facsimile**

**WITHDRAWING ATTORNEY**
**FOR THE DEBTOR IN POSSESSION**


By:   **//s//  Gurpreet S. Dhaliwal, M.D.**
        **Gurpreet S. Dhaliwal, M.D.**
        **Managing Member of the Debtor**
        **Mid West Hotel Lodging, LLC**

</div>

Respectfully submitted,


By:  \_\_//s// George A. Kurisky, Jr.\_\_
      **George A. Kurisky, Jr.**
      **Texas Bar No. 11767700**
      **Branch M. Sheppard**
      **Texas Bar No. 24033057**
      **JOHNSON DELUCA KURISKY**
      **& GOULD, P.C.**
      **4 Houston Center**
      **1221 Lamar, Suite 1000**
      **Houston, Texas 77010**
      **(713) 652-2525 Telephone**
      **(713) 652-5130 Facsimile**


**PROPOSED ATTORNEYS FOR**
**DEBTOR IN POSSESSION**