**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| MID WEST HOTEL LODGING, LLC, | § | Case No.: 11-40629 |
| | § | |
| | § | |
| | § | |
| Debtor. | § | |
| | § | |

**OBJECTION OF HOLIDAY HOSPITALITY FRANCHISING, INC.**
**TO DEBTOR'S FIRST AMENDED DISCLOSURE STATEMENT**
**FOR FIRST AMENDED PLAN OF REORGANIZATION**

Holiday Hospitality Franchising, Inc. ("HHFI"), by and through its undersigned counsel, hereby files this Objection (the "Objection") to the First Amended Disclosure Statement [Docket No. 74] (the "Disclosure Statement") for the First Amended Plan of Reorganization [Docket No. 74, Ex. 1] (the "Plan") filed by Mid West Hotel Lodging, LLC (the "Debtor"), as follows:

### I.  SUMMARY OF OBJECTION

1.     HHFI is the licensor pursuant to a Holiday Inn Express® Hotel & Suites Hotel Change of Ownership License Agreement dated September 8, 2006 (the "License Agreement") that permits the Debtor to operate a Holiday Inn Express® Hotel & Suites Hotel (the "Hotel").  The Disclosure Statement fails to appropriately classify HHFI's claims, address under what conditions the License Agreement could be assumed, the required monetary or nonmonetary cure that would need to be made upon assumption, and that the License Agreement cannot be assumed and assigned if the hotel is sold at auction to anyone other than the current majority equity holder.

2. Because of the stated omissions listed above, the Disclosure Statement should not be approved or, in the alternative, the Debtor should be required to amend the Disclosure Statement to provide complete and accurate information. HHFI further requests that the Plan also be amended to reflect the concerns contained herein.

## II. THE DISCLOSURE STATEMENT MUST CONTAIN ADEQUATE INFORMATION

3. Section 1125(b) of the Bankruptcy Code prohibits the post-petition solicitation of the acceptance or rejection of a plan from the holder of a claim or interest, unless there is transmitted to such holder a written disclosure statement approved by the Court as containing "adequate information." Adequate information is defined as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable…that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan….

11 U.S.C. § 1125(a)(1).

### a. The Disclosure Statement Must Properly Classify HHFI's Claims

4. Article V of the Disclosure Statement places HHFI into a separate Class 6, corresponding to section 4.06 of the Plan. This Class 6 should be deleted and the Disclosure Statement modified. If the License Agreement is ultimately assumed, all defaults must be cured, which would leave HHFI with no claim. If the License Agreement is rejected, then HHFI's claims would be no different than Class 7 general unsecured claims. There is no reason to place HHFI in a separate class.

### b. The Disclosure Statement Should Clarify the Necessary Cure Obligation to Pay HHFI in Full Upon Plan Confirmation if the License is Assumed

5. Section 5.06 of the Plan, as explained in Article V of the Disclosure Statement, contemplates the payment of pre-petition franchise fees and contractual

2

obligations due under an assumption of the License Agreement in the amount of $17,133.69.  *See* Plan, § 5.06; Disclosure Statement, Article V.  Exhibit 4 to the Disclosure Statement, while stating that the Debtor shall "Pay arrearage at confirmation and Escrow $60,000 for Capital Improvement requested by Franchisor" fails to carry that number across to the next column in the chart to show that the amount will be paid at confirmation.

6.      In addition, both the Disclosure Statement and Plan are entirely silent regarding attorney's fees that are due under the License Agreement and that must be paid on confirmation in connection with the Debtor's requirement to promptly cure all defaults.  Where executory contracts provide for attorney's fees, debtors are required to pay those fees as a condition of assumption and cure.  *See, In re Travelers Casualty & Surety Co. of America*, 127 S. Ct. 1199, 1206 (2007) ("[W]e generally presume that claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed."); *In re Crown Books Corp.*, 269 B.R. 12 (Bankr. D. Del. 2001) (awarding attorney's fees as part of cost to cure defaults); *see also LTC Corp. v. Boyle*, 768 F.2d 1489, 1494-6 (D.C. Cir. 1985); *Andrew v. KMIR Corp.*, 17 B.R. 438, 439 (Bankr. 9th Cir. 1982); *In re BAB Enterprises, Inc.*, 100 B.R. 982 (Bankr. W.D. Tenn. 1989); *In re Westview 74th St. Drug Corp.*, 59 B.R. 747, 752-4 (Bankr. S.D.N.Y. 1986) (payment of attorney's fees required as condition to lease assumption).

7.      Section 14.J. of the License Agreement provides:

> **J. Reimbursement of Expenses:**
> Licensee agrees to pay Licensor all expenses, including reasonable attorney's fees and court costs, incurred by Licensor, its parents, subsidiaries, affiliates, and their successors and assigns, to remedy any defaults of or enforce any rights under the License, effect termination of

the License or collect any amounts due under the License.

8.      HHFI has calculated its actual and expected attorneys' fees and costs relating to the enforcement of the License Agreement through Plan confirmation, which equals $12,250.45 if the Plan is confirmed.[1]  The Disclosure Statement and Plan should be modified to reflect this additional cure requirement.

9.      Absent full disclosure of all monetary and non-monetary cure obligations owed to HHFI if the Plan is confirmed and the License Agreement assumed, the Disclosure Statement will not contain adequate information as required by Section 1125(b) as no class of creditor will be able to accurately assess the Debtor's ability to fulfill its obligations under the Plan.

**c.      The Disclosure Statement Must Be Amended To Provide That The License Agreement May Not Be Assumed or Assigned Absent HHFI's Consent**

        i.   <u>If current majority ownership retains the proposed equity will need to execute realignment documents and guarantees</u>

10.     Section 5.08 of the Plan, as described in Article V of the Disclosure Statement, contemplates the termination of all equity interests upon confirmation of the Plan, new distributions of equity, as well as a possible auction sale of equity interests. *See* Plan, § 5.08; Disclosure Statement, Article V.  The Disclosure Statement fails to disclose, however, that the License Agreement is non-assignable to new equity owners under the Bankruptcy Code and applicable law, absent the express consent of HHFI. HHFI has not and will not grant such consent, except with respect to the proposed 51%

---

[1] This amount could change if the Plan is extensively litigated.

retention of the license by the majority shareholder Gurpreet Dhaliwal and the retention or acquisition of the remaining 49% of the equity by Navdeep Dhaliwal and Jagmohan Dhillon.  In addition, if this proposal is approved under the Plan, the parties will need to execute certain documents (the "realignment documents") and personal guarantees, and pay a realignment fee, in connection with the realignment of the License Agreement to the new ownership structure.

11.     HHFI continues to have a problem with the proposed equity retention, because it leaves the division of equity between Navdeep Dhaliwal and Jagmohan Dhillon unresolved.  If information is not provided to HHFI confirming the division, so that realignment documents can be drawn up in advance of confirmation, HHFI may determine that an objection to the Plan is appropriate.

ii.     If new ownership acquires the Hotel, then the License Agreement must be rejected because it cannot be assigned

12.     Section 365(c)(1) of the Bankruptcy Code states that the Debtor may not assume or assign an executory contract of the Debtor if:

(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

(B) such party does not consent to such assumption or assignment.

11 U.S.C. § 365(c)(1).

13.     One type of executory contract that cannot be assumed or assigned under Section 365(c)(1) is a personal services contract.  *See In re Tonry*, 724 F.2d 467, 468 (5th Cir. 1984) (acknowledging that personal service contracts are non-assumable under 11

U.S.C. § 365(c)); *see also Breeden v. Catron (In re Catron)*, 158 B.R. 624, 627 (Bankr. E.D. Va. 1992) ("[A] debtor's prepetition personal services contract cannot be assumed by or assigned to an entity other than the debtor.") (citing Restatement (Second) of Contracts §§ 318(2), 319(2) (1981)). Franchise agreements, such as the License Agreement held by the Debtor, are personal services contracts. *See, e.g., North Am. Financial Group, Ltd v. S.M.R. Enterprises, Inc.*, 583 F.Supp. 691, 699 (N.D. Ill. 1984) ("A franchise agreement of the type contemplated here is at least partially a contract for personal services."); *Burger Chef Sys., Inc. v. Burger Chef of Fla., Inc.*, 317 So.2d 795, 797-98 (Fla. Dist. Ct. App. 1975) (recognizing the "individual characteristics of a franchise; the personal efforts and commitment on the part of a Franchisee to market the Franchisor's products, the consideration given by Franchisee for the exclusive right to market Franchisor's product and the singular personal service performed by a Franchisee in establishing the product of a Franchisor.").

14. In addition, the License Agreement grants the Debtor a nonexclusive trademark license to use the System and Marks and therefore affords HHFI the trademark protections of the Lanham Act. *See* 15 U.S.C. § 1114(1) and 1125(a). The Lanham Act allows trademark owners to sue unauthorized trademark users, as trademark licenses are deemed "personal and unassignable without the consent of the licensor." *N.C.P. Mktg. Group, Inc. v. Billy Blanks (In re N.C.P. Mktg. Group, Inc.)*, 337 B.R. 230 (D. Nev. 2005). Because of their personal nature, courts have routinely held that trademark law protects trademark licenses from being assumed and assigned by a debtor without the consent of the trademark owner. This protection extends to franchise agreements that include trademark licenses. *See In re XMH Corp.*, 2011 U.S. App. LEXIS 15372, *12

(7th Cir. Feb. 11, 2011) ("[T]he universal rule is that trademark licenses are not assignable in the absence of a clause expressly authorizing assignment."); *In re The Travelot Co.*, 286 B.R. 447, 455 (Bankr. S.D. Ga. 2002) (trademark law is "applicable law" under Section 365(c)); *In re Wellington Vision, Inc.*, 364 B.R. 129 (S.D. Fla. 2007) (same).

15.     The express terms and conditions of the License Agreement itself provide that the contract is not transferable. *See* License Agreement, § 10.H (1). Any transfer of an equity interest to a new owner who desires to continue to operate the hotel as a Holiday Inn Express® Hotel & Suites hotel shall constitute a change of ownership requiring submittal of an application for a new license. *See* License Agreement, § 10.H (2). Such application may or may not be approved, and is subject to HHFI's current procedures, criteria and requirements. *See* License Agreement, § 10.H (3).

16.     Thus, in order to comport with requirements of the Bankruptcy Code and the provisions of the License Agreement, the Disclosure Statement must be amended to provide that the License Agreement may not be assigned to any new owner. The Disclosure Statement and Plan should both be amended to explicitly state that, in the event of an auction sale, any new owner will be required to apply for a new license with HHFI, which may or may not be approved at HHFI's sole discretion.

17.     In addition, section 7.01 of the Plan, which states that all executory contracts shall be assumed except for those not specifically assumed or rejected prior to the Confirmation Date, renders the Plan not confirmable. That section should specifically be amended to unequivocally state that the License Agreement may not be assumed or assigned without the express consent of HHFI, in its sole discretion.

### III. CONCLUSION

For the above reasons, HHFI objects to the Disclosure Statement on the basis that it lacks adequate information for a creditor to reasonably evaluate the Plan, and contains misleading or innacurate information regarding the possible assumption, assignment or rejection of the License Agreement. Therefore, HHFI respectfully requests that the Court either (i) deny approval of the Disclosure Statement, or (ii) require the Debtor to amend the Disclosure Statement and the Plan to address HHFI's concerns.

Respectfully submitted,

DATED: August 30, 2011          **ALSTON & BIRD LLP**

/s/ Joshua P. Martin_____
Joshua P. Martin
State Bar No. 24037030
2828 N. Harwood St., 18th floor
Dallas, TX 75201
Telephone: 214-922-3400
Facsimile: 214-922-3489
Email: josh.martin@alston.com

And -

Leib M. Lerner
CA State Bar No. 227323
333 S. Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone: 213-576-1000
Facsimile: 213-576-1100
Email: leib.lerner@alston.com

*Attorneys for Holiday Hospitality Franchising, Inc.*