Jeff D. Carruth
Weycer, Kaplan, Pulaski & Zuber, P.C.
3030 Matlock Rd., Suite 201
Arlington, TX 76015
(817) 795-5046 – Telephone
(866) 666-5322 – Facsimile
jcarruth@wkpz.com

**ATTORNEYS FOR JAGMOHAN DHILLON**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| **MID WEST HOTEL LODGING, LLC,** | § | **CASE NO: 11-40629-BTR-11** |
| Debtor in Possession | § | **CHAPTER 11** |

### COMPETING PLAN OF REORGANIZATION OF JAGMOHAN DHILLON
### DATED SEPTEMBER 2, 2011

---

**NO DISCLOSURE STATEMENT INCIDENT TO THIS PLAN HAS BEEN FILED OR APPROVED BY THE BANKRUPTCY COURT AT THIS TIME; ACCORDINGLY, UNLESS AND UNTIL AUTHORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCES OR REJECTIONS OF THIS PLAN.**

---

"Dhillon" or the "Proponent" proposes the following competing Plan of Reorganization ("Plan") dated September 2, 2011, pursuant to Chapter 11 of the United States Bankruptcy Code on behalf of the Debtor. The Debtor's profitability to fund its Plan is based on the amount of money that it will earn from the continued operation of its business.

# ARTICLE I

## DEFINITIONS AND USE OF TERMS

**1.01    Defined Terms.**  Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this section 1.01.

**1.01.01 Administrative Claim or Expense** means an administrative expense or Claim described in Section 503 of the Bankruptcy Code and entitled to administrative priority pursuant to Section 507(a)(1) of the Bankruptcy Code, including, but not limited to, Claims for compensation of professionals made pursuant to Sections 330 and 331 of the Bankruptcy Code, and all fees and charges assessed against the Debtor and Debtor's property under 28 U.S.C. Section 1930.

**1.01.02 Administrative Tax Claim** means an Unsecured Claim by any governmental unit for taxes (including interest or penalties related to such taxes) for any tax year or period, all or a portion of which occurs or falls within the period from and including the Petition Date through the Effective Date.

**1.01.03   Allowed Claim** means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that (I) a proof of Claim, proof of Interest, or request for payment was timely Filed or, with leave of the Bankruptcy Court, late Filed, and as to which no objection has been timely Filed or, if Filed, is allowed by a Final Order, unless otherwise provided in this Plan or (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and to which no objection has been timely Filed or, if Filed, is allowed by a Final Order.

**1.01.04 Allowed Secured Claim** means any Allowed Claim secured by a lien, security interest, or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof (determined in accordance with Bankruptcy Code Section 506(a)).

**11.01.04.1   Assets** means all property of the Reorganized Debtor.

**1.01.05 Bankruptcy Code or Code** means the United States Bankruptcy Code, Title 11 of the United States Code Section 101 et seq., as amended.

**1.01.06 Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division or such other court that may have jurisdiction with respect to the reorganization of the Debtor pursuant to Chapter 11 of the Bankruptcy Code.

**1.01.07    Bankruptcy Rule** means the Federal Rules of Bankruptcy Procedure.

**1.01.08 Bar Date** means that date subsequent to which a proof of pre-petition Claim may not timely be Filed or the date by which proofs of claims held by governmental agencies must be Filed.

**1.01.09**   **Case** means this Chapter 11 Bankruptcy Case in the Bankruptcy Court.

**1.01.10**   **Claim** shall have the meaning set forth in Bankruptcy Code Section 101(5).

**1.01.11**   **Claimant** means any person or entity having or asserting a Claim in the case.

**1.01.12**   **Class** or **Classes** mean all of the holders of Claims or Interests that the Proponent has designated pursuant to Section 1123(a)(1) of the Bankruptcy Code as having substantially similar characteristics as described in Article IV of this Plan.

**1.01.13**   **Competing Plan** means this Plan.

**1.01.14**   **Confirmation** means the entry by the Bankruptcy Court of a Confirmation Order confirming this Plan.

**1.01.15**   **Confirmation Date** means the date on which the Confirmation Order is entered.

**1.01.16**   **Confirmation Hearing** means the hearing or hearings held before the Bankruptcy Court in which the Proponent will seek Confirmation of this Plan.

**1.01.17**   **Confirmation Order** means the Order of the Court confirming this Plan under Section 1129 of the Bankruptcy Code.

**1.01.18**   **Contested** when used with respect to a Claim, means a Claim against the Debtor **that is l**isted in the Debtor's Schedules of Assets and Liabilities as disput**ed**, contingent, or unliquidated; (b) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

**1.01.18**   **Contested Claim** means any Claim that is Contested or that is otherwise not an Allowed Claim.

**1.01.19**   **Creditor** shall have the meaning specified by Section 101(9) of the Code.

**1.01.20**   **Debtor** means Mid West Hotel Lodging, LLC.  **For any use of the term "Debtor" that refers to an act or event that occurs on or after the Effective Date, the term "Debtor" shall mean and refer to the Reorganized Debtor.**

**1.01.21**        **Disputed Claim** means any Claim that is not an Allowed Claim.

**1.01.22**        **Effective Date** means thirty days after the Confirmation Date.

**1.01.23**        **Estate** means the estate created pursuant to Bankruptcy Code Section 541 with respect to the Debtor.

**1.01.24**        **Fee Claim** means a Claim under Bankruptcy Code Sections 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in the Debtor's Chapter 11 case.

**1.01.24**        **Filed** means delivered to the Clerk of the Bankruptcy Court.

**1.01.25**        **Final Order** means an Order as to which any appeal that has been taken has not been stayed following the expiration of the time for appeal or has been resolved, or as to which the time for appeal has expired.

**1.01.26**        **General Unsecured Claim** means Unsecured Claim that is not entitled to priority under Section 507(a) of the Bankruptcy Code.

**1.01.27**        **Impaired** means the treatment of an Allowed Claim pursuant to the Plan unless, with respect to such Claim, either (I) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim, or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, the Debtor (A) cures any default that occurred before or after the commencement of the Chapter 11 Case on the Petition Date, other than default of the kind specified in Section 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim as such maturity existed before such default; ©) compensates the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim; or (iii) the Plan provides that on the Effective Date, the holder of such Claim receives, on account of such Claim, cash equal to the Allowed Amount of such Claim.

**1.01.28**        **Interest Holder**    means all parties holding any pre-petition or pre-Confirmation equity interest in the Debtor.

**1.01.29**         **Interim Manager** means that person or entity designated by the Proponent in accordance with Article VI of this Plan to manage the business of the Debtor and to take control of Debtor's assets and operations immediately from entry of the Confirmation Order through and including implementation of the Plan, satisfaction of any conditions to the Effective Date, and conclusion of the Effective Date.

**1.01.30** **Petition Date** means February 28, 2011, the date the Debtor's voluntary petition was filed commencing this bankruptcy case.

**1.01.31** **Plan** means this Plan of Reorganization, as it may be amended or modified from time to time as permitted herein and by the Bankruptcy Court, and may also be referred to form time to time as a **Competing Plan**. Plan and Competing Plan shall be interchangeable terms.

**1.01.32** **Pre-petition** means prior to the Petition Date.

**1.01.33** **Priority Tax Claim** means a Claim entitled to priority pursuant to Bankruptcy Code Section 507(a)(8).

**1.01.32** **Pro Rata** means proportionately, based on the percentage that the amount of an Allowed Claim within a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

**1.01.33** **Property of the Estate** means all property in which the Debtor holds a legal or an equitable interest, including all property described in Bankruptcy Code Section 541.

**1.01.34** **Rejection Claim** means any Claim arising pursuant to Bankruptcy Code Section 502(g) by reason of rejection by the Debtor of an executory contract or unexpired lease pursuant to Bankruptcy Code Sections 365 or 1123(b)(2).

**1.01.35** **Secured Claim** means any Claim secured by a lien, security interest, or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof (determined in accordance with Bankruptcy Code Section 506(a)).

**1.01.36** **Secured Tax Claim** means any Tax Claim which is secured by real or personal property.

**1.01.37** **Secured Creditor** or **Secured Claimant** means any Claimant holding an allowed Secured Claim.

**1.01.38** **Unimpaired** means not Impaired.

**1.01.39** **Unsecured Claim** means any Claim not collateralized (or the extent not fully collateralized) by assets of the Debtor.

**1.01.40** **Unsecured Claimants** or **Unsecured Creditors** means any holder of an allowed Unsecured Claim.

**1.01.41** **Voidable Transfer** means all transfers voidable under Sections 544, 545, 547, 548, 549 and/or 550 of the Code or any other state or federal transfer.

**1.02** **Number and Gender of Words**. Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context. Words of any gender shall include each other gender where appropriate.

**1.03** **Terms Defined in the Bankruptcy Code**. Capitalized terms not specifically defined in section 1.01 of the Plan shall have the definitions given those terms, if applicable, in the Bankruptcy Code.

**1.04** **Headings**. The headings and captions used in this Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

**1.05** **Time Computation.** In computing any period of time prescribed herein, the provisions of Federal Rule of Bankruptcy Procedure Rule 9006(a) shall apply.

## ARTICLE II

## CONCEPT OF THE PLAN

**2.01** **Generally.**   The Plan is a plan of reorganization.  The Debtor as reorganized shall continue its business after the Confirmation Date.  The Debtor's primary business has been and as the Reorganized Debtor shall continue to be a hotel doing business as Holiday Inn Express Gainesville located at 320 North Interstate 35, Gainesville, TX 76240.  The Proponent's plan proposes to pay the creditors pursuant to the Claim Summary and Plan Payment Schedule set forth in the exhibits.  It also contemplates that old equity will be cancelled and that for the cash consideration and other value to be provided as set forth herein that Dhillon will emerge as the holder of 100% of the interests of the Reorganized Debtor.

## ARTICLE III

## GENERAL TERMS AND CONDITIONS

**3.01.** **Treatment of Claims**. This Plan is intended to resolve all Claims against the Debtor and/or property of the Debtor of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to Bankruptcy Code Section 502(a). However, only Allowed Claims will receive treatment afforded by the Plan.  The Plan is designed to insure that Claimants shall receive at least as much pursuant to this Plan as they would receive in a liquidation pursuant to Chapter 7 of the Bankruptcy Code.

**3.02.** **Time for Filing Claims**. The holder of any Administrative Claim other than (i) a Fee Claim, (ii) a liability incurred and paid in the ordinary course of business by the Debtor, or (iii) an Allowed Administrative Claim, must file with the Bankruptcy Court and serve on the Debtor and its respective counsel, notice of such Administrative Claim within thirty (30) days after the Effective Date. At a minimum, such notice must identify (i) the name of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

Each Person asserting an Administrative Expense that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on the Debtor's counsel, Proponent's counsel, and the U. S. Trustee, a Fee Application within sixty (60) days after the Effective Date.

A person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

Liabilities incurred from the Petition Date through the Effective Date in the ordinary course of business shall be paid in the ordinary course of business by the Debtor.

**3.03.** **Modification to the Plan**. In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified or amended upon application of the Debtor, or corrected prior to the Confirmation Date, provided that notice and an opportunity for hearing have been given to any affected party. The Plan may be modified at any time after Confirmation and before the Effective Date, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, the circumstances warrant such modification and Debtor consents thereto in writing.

## ARTICLE IV

## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

The Debtor designates the following Classes of Claims and Interests pursuant to Bankruptcy Code Section 1123. The Debtor shall pay all fees assessed by the Office of the United States Trustee until this Case is closed by the Court or the Debtor is otherwise released from such obligations by the Court.

**Class 1** consists of any Allowed Administrative Claims.

**Class 2** consists of any Allowed Secured Tax Claims.

**Class 3** consists of any Allowed Priority Tax Claims.

**Class 4**

   **Class 4.1** consists of any Allowed Secured Claim of Sterling Bank.

   **Class 4.2** consists of any Allowed Secured Claim and any Allowed Unsecured deficiency Claim of the North Texas CDC/SBA (the "SBA").

**Class 4.3** consists of any Allowed Secured Claim and any Allowed Unsecured deficiency Claim of New Global, Inc.

**Class 5** consists of any Allowed Secured Claims of Narinder Dhaliwal, Harminder Singh, and Balwinder Mahli.

**Class 6** consists of the Assumed Executory Contract of Holiday Inn.

**Class 7** consists of the Allowed Unsecured Claims.

   **Class 7.1** consists of Allowed Unsecured Claims in excess of $15,000, which consist of New Global and the SBA.

   **Class 7.2** consists of Allowed Unsecured Claims of $15,000 or less, and further includes the Allowed Unsecured Claims of any holder with Allowed Unsecured Claims which, in the aggregate, exceed $15,000 if such holder elects to reduce all such Allowed Unsecured Claims to $15,000 in toto. Class 7B is further designated as a small claims class or convenience class pursuant to 11 U.S.C. 1122(b).

**Class 8** consists of the any pre-petition or pre-Confirmation equity interests of any Interest Holder.

## ARTICLE V

## PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS

   The Claims and Interests classified in Article IV hereof shall be treated in the manner set forth in this Article V.

   **5.1 — Class 1 Claims – Allowed Administrative Claims**. The Class 1 Claims will be paid, once Allowed, in full by the Debtor and on or before the later of Effective Date and the date each such claim is Allowed by Final Order. These claims are priority claims pursuant to Section 507(a)(1) of the Bankruptcy Code. These claims include claims for Debtor's attorney's fees and U.S. Trustee's fees. U.S. Trustee's fees must be paid until the case is closed. The Debtor must file quarterly reports following confirmation and until the case is closed. The holders of Class 1 Claims may each agree to a different treatment.

**5.2 — Class 2 Claims – Allowed Secured Tax Creditor Claims**. The Class 2 Claims are secured claims with liens that will follow the collateral securing such claims and to the extent that such collateral is surrendered either prior to or as part of this Plan such secured liens and claims shall follow the collateral and shall not be paid by the Debtor as part of this Plan.

The Class 2 Allowed Claims that relate to collateral or property being retained by the Debtor as part of the Plan shall be paid once Allowed over five (5) years from the Petition Date with interest on such amounts at the rate of 12% per annum until paid in full. The payments shall be made to the extent of the tax escrow on hand and then monthly payments on the unpaid balance shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full.

These claims are secured claims. These creditors shall retain their liens to secure their claims until paid in full under this Plan. The Class 2 Claims shall accrue interest from the Petition Date at the rate of 1% per month from the Petition Date through the Effective Date of the Plan and 12% per annum following the Effective Date until paid in full. These creditors shall retain their senior liens to secure their claims until paid in full under this Plan. In the event that the Debtor disputes such claim, the payments will be applied to the undisputed amount of the claim as ultimately allowed. While resolution of any such objection is pending, payments pursuant to the Plan shall be applied to the undisputed portion of the claim as ultimately allowed. In the event of a default under the plan, counsel for holder of a claim in this class shall provide notice of the default via facsimile to counsel for the debtor. Such default shall be cured within 15 business days of the date of transmission of such notice of default. In the event the default is not cured, the Claimant shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court. The Claimant shall only be required to provide two notices of default. Upon a third event of default, the Claimant shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. Failure to pay post-petition taxes prior to delinquency shall constitute an event of default.

The Class 2 Claims are Impaired and the holders of the Class 2 Claims are entitled to vote to accept or reject the Plan.

**5.3 — Class 3 Claims – Allowed Priority Tax Claims**. The Class 3 Claims will be paid once Allowed over three (3) years with interest on such amounts at the rate of 4.25% per annum until paid in full.  The payments shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full.  These claims are priority claims.  A failure by the Reorganized Debtor to make a payment to the priority tax creditors pursuant to the terms of the Plan shall be an Event of Default.  If the Reorganized Debtor fails to cure and Event of Default as to such payments within ten (10) days after receipt of written notice of default from the priority tax creditors, then the priority tax creditors may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the priority tax creditors may have under applicable state law; and/or (c) seek such relief as may be appropriate in the Court.

The occurrence of any of the following shall constitute an event of default under the Plan:

Failure on the part of Debtor to pay fully when due any payment required to be made in respect of the Plan Debt. However, due to the size and ongoing nature of the IRS's claim, upon a default under the plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal (or state) tax lien and the powers of levy, seizure, and as provided under the Internal Revenue Code. As to the IRS:

(A) If the Debtor or its successor in interest fails to make any plan payment, or deposits of any currently accruing employment or sales tax liability; or fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the Debtor or its successor in interest failed to file any required federal or state tax return by the due date of such return, then the United States may declare that the Debtor is in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtor is in default.

(B) If the United States declares the Debtor or the successor in interest to be in default of the Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, may become due and payable immediately upon written demand to the Debtor or the successor in interest.

(C) If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to send two notices of default, and upon the third event of Default the IRS may proceed to collect on all amounts owed without recourse to the Bankruptcy Court and without further notice to the Debtor. The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan. All payments will be sent to: /IRS, 1100 Commerce Street, Mail Code **5024** DAL, Dallas, Texas 75242 attn Leo Carey.

(D) The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the pre-reorganized Debtor to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the pre-reorganized Debtor to the Internal Revenue Service and confirmation of this Plan is not an impediment to any such enforcement by the Internal Revenue Service. However, new equity ownership and management of the Reorganized Debtor does not by this Plan, its Confirmation Order, or implementation assume any personal liability for the tax obligations of the pre-reorganized Debtor or any of the persons theretofore responsible for such obligations of the pre-reorganized Debtor.

The Class 3 Claims are Impaired and the holders of the Class 3 Claims are entitled to vote to accept or reject the Plan.

**5.4.1 — Class 4.1 Claim – Allowed Secured Claim of Sterling Bank**.   The Class 4 Claim will be paid as Allowed as follows:

The Class 4 Claim will be treated as an Allowed Secured Claim of Sterling Bank in the amount $3,557,463.33 and shall be paid in full over five (5) years with the Allowed Amount of the secured claim of $3,557,463.33 amortized over twenty-five (25) years with interest on such Allowed Amount at prime plus 2.00% per annum and a balloon payment of at the end of the five (5) year term. The payments shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full.

The Class 4 Claim shall retain all of its liens and security interests as originally provided in its loan documents until paid off.  The Class 4 Claim is Impaired and the holder of the Class 4 Claim is entitled to vote to accept or reject the Plan.

The Class 4 Claim is Impaired and the holder of the Class 4 Claim is entitled to vote to accept or reject the Plan.

**Class 5 Claim – Allowed Secured Claims of Narinder Dhaliwal, Harminder Singh, and Balwinder Mahli.**   The Class 5 Claim will be paid as Allowed as follows:

The Class 5 Claim is the Allowed Secured Claims of Narinder Dhaliwal in the amount of $4,599.54, Harminder Singh in the amount of $3,500.50, and Balwinder Mahli in the amount of $1,948.42 and shall be paid in full over three (3) years with principal and interest at 6.00% per annum. The payments shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full. The Class 5 Claim shall retain its lien to secure its claim.

The Class 5 Claim is Impaired and the holder of the Class 5 Claim is entitled to vote to accept or reject the Plan.

**Class 6 Claim Assumed Executory Control of Holiday Inn.**  The Class 6 Claim will be paid as Allowed as follows:

The Class 6 Claim is the Pre-Petition franchise fee and contractual obligations due under an assumption of the executory contract with Holiday Inn in the amount of $17,133.69 due on the Effective Date. $60,000.00 is being escrowed for capital improvements that may be required by the franchisor.

The Class 6 Claim is Impaired and the holder of the Class 8 Claim is entitled to vote to accept or reject the Plan.

**Class 7 Claims.**  The Class 7 Claims will be paid as Allowed as follows:

**Class 7.1 Claims – General Unsecured Claims Greater than $15,000 – New Global and SBA.**

The Class 7.1 Claims as Allowed Unsecured Claims shall be paid 10.00% of their claims over five (5) years. The payments will be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until 10% of their claims are paid.

In the event of a default under the plan, counsel for holder of a claim in this class shall provide notice of the default via facsimile to counsel for the debtor and by mail to the Debtor. Such default shall be cured within fifteen (15) business days of the date of transmission of such notice of default. In the event the default is not cured, the Claimant shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court. The Claimant shall only be required to provide two (2) notices of default. Upon a third event of default, the Claimant shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. The holders of the Class 9 Claims shall not be bound by any release provisions in the Plan that would release any liability of its guarantors to the holders of the Class 7 Claims.

The Class 7.1 Claims are Impaired and the holder of the Class 7 Claims are entitled to vote to accept or reject the Plan.

**Class 7.1 Claims – General Unsecured Claims Less Than $15,000.**

The Class 7.2 Claims as Allowed Unsecured Claims shall be paid in full within six (6) months of the Effective Date.  The payments will be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full, without interest.

In the event of a default under the plan, counsel for holder of a claim in this class shall provide notice of the default via facsimile to counsel for the debtor and by mail to the Debtor. Such default shall be cured within fifteen (15) business days of the date of transmission of such notice of default. In the event the default is not cured, the Claimant shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court. The Claimant shall only be required to provide two (2) notices of default. Upon a third event of default, the Claimant shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. The holders of the Class 9 Claims shall not be bound by any release provisions in the Plan that would release any liability of its guarantors to the holders of the Class 7 Claims.

The Class 7.2 Claims are Impaired and the holders of the Class 7.2 Claims are entitled to vote to accept or reject the Plan.

**5.08.** **Class 8 Claims**.  The Class 8 Claims will be treated as follows.

On the Confirmation Date, all equity interests pre-dating the Confirmation Date shall be cancelled conditioned on the subsequent occurrence of the Effective Date, and such holders shall receive and retain nothing on account of such equity interests.

## ARTICLE VI

## MEANS FOR IMPLEMENTATION OF PLAN

**6.01.01.** The total of $150,000.00 shall be deposited into the Proponent's counsel's trust account prior to the Confirmation Date. If the Plan is not Confirmed, the $150,000.00 will be returned to those contributing such funds.

**6.01.02.** Conditioned upon the occurrence of the Effective Date, the Proponent or other persons or parties receiving the new equity in the Reorganized Debtor in accordance with Class 4C shall contribute, if, as and when needed, up to an additional $150,000.00 as required (a) to avoid and/or cure any default under the terms of this Competing Plan, (b) to fund additional capital improvements or repairs as required by the Class 6 holder in accordance with the Holiday Inn franchise agreement, or (c) both.

**6.01.03.** Proponent or other persons or parties receiving the new equity in the Reorganized Debtor in accordance with Class 4C shall additionally provide cash on the Effective Date, if and as required, in order to satisfy any change of control fees, charges or, alternatively, new franchisee fees, or the like, as required by Holiday Inn in connection with approving the Reorganized Debtor as an authorized Holiday Inn franchisee, up to a total of $50,000.

**6.01.04.** Upon entry of the Confirmation Order, the Interim Manager shall take immediate, complete, and sole control of all assets of the Debtor and its Estate, including without limitation the Debtor's premises, cash and cash management systems, payment systems, and intellectual property, and shall operate the businesses of the Debtor and its Estate from entry of the Confirmation Order through and including implementation of the Plan, satisfaction of any conditions to the Effective Date, and conclusion of the Effective Date. Upon the occurrence of the Effective Date, the Interim Manager shall turn over all such assets and operations to the Reorganized Debtor and management designated by the new owner. If the Effective Date does not occur, the Interim Manager shall, upon further order of the Bankruptcy Court, turn over such assets and operations to the persons or parties as the Bankruptcy Court may then direct.

**6.01.05.** Without limitation, on the Confirmation Date, (a) all cash, cash  equivalents, accounts, receivables, contract rights, other current assets, accounting records, checking account ledgers, business records, bills, invoices, and all other operational records wherever situated and however

comprised, (b) all computers, servers, hard drives, back-up drives, hand held electronic devices, other portable electronic devices, other computer hardware, all computer software and associated documentation, all computer software licenses and associated documentation, and all other devices or computerized means used for the entry, storage, processing, restatement, presentation, or rendition of data by or for the Debtor in its operations, finances, management, franchise compliance, litigation (including this Bankruptcy Case), or otherwise beneficial to the implementation of this Plan, whether owned by the Debtor, leased to the Debtor, or used by the Debtor with permission of any third party and wherever situated, shall be turned over by the Debtor, the Class 8 holders, any managers of any of them, or the agents, servants, employees, attorneys, accountants, advisors, or persons controlled by any of the foregoing, to the interim manager designated by the Proponent in the Confirmation Order. All such data and materials shall be used by the Interim Manager in accordance with Section 6.01.03 above. All parties in interest, including without limitation the Debtor, the Class 8 holders, any managers of any of them, or the agents, servants, employees, attorneys, accountants, advisors, or persons controlled by any of the foregoing shall take appropriate steps to preserve and protect the foregoing data and materials at all times prior to the Confirmation Date, and no such party in interest shall be excused by virtue of the Plan from any inappropriate spoliation of any such data or materials. If the Effective Date does not occur and the Confirmation Order is vacated, the interim manager shall then turn over all such date and materials to the persons or parties as may be directed by the Bankruptcy Court.

**6.01.06.** The Interim Manager shall be nominated by the Proponent at or before the Confirmation Hearing and shall be approved by (and subject to approval by) the Bankruptcy Court in the Confirmation Order in accordance with II U.S.C. § 1129(a)(5) and in a separate, stand-alone order which shall survive in the event of any vacatur of the Confirmation Order in the event the Effective Date does not occur. The Confirmation Order and the separate, stand-alone order so approving the Interim Manager shall further provide that the Interim Manager shall be held harmless by the Estate for any claims or liabilities associated with service as Interim Manager, save and except for claims or liabilities which, after Final Order of a Court of competent jurisdiction, are determined to have arisen from the Interim Manager's actual fraud, malfeasance, or self-dealing. The compensation of the Interim Manager shall also be subject to approval by the Bankruptcy Court in the Confirmation and in the separate, stand-alone order.

**6.01.07.** The Interim Manager shall be authorized, in its sole discretion, but not required to designate itself, the Proponent, and any other persons designated to receive new equity in the Reorganized Debtor pursuant to Class 4C of this Plan as coinsureds or additional insureds in and under any insurance policies owned, benefitting, or obtained by the Debtor, Estate, or Reorganized Debtor, at the expense of the Debtor, Estate, and Reorganized Debtor, so as to provide coverage to such persons during the period of service by the Interim Manager.

## ARTICLE VII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01. <u>Rejection of Executory Contracts and Unexpired Leases</u>**.  The Reorganized Debtor subject to the occurrence of the Effective Date shall assume, pursuant to Bankruptcy Code Section 1123(b)(2), all unexpired leases of non-residential real property and executory contracts not specifically assumed or rejected prior to the Confirmation Date.  Specifically, and not by way of limitation, the Reorganized Debtor shall assume the Holiday Inn franchise agreement, subject to any change of ownership approvals required in the franchise agreement and cure defaults as specified herein.

**7.02. <u>Reservation of Rights</u>**.  The Debtor shall have the right to assume or reject, pursuant to Bankruptcy Code Section 365, prior to the Confirmation Date, any executory contract or unexpired lease of real property (to the extent permitted under the Bankruptcy Code) and to the terms of this Plan.

**7.03. <u>Bar Date for Claims Based on Rejection</u>**. If the rejection of an executory contract or an unexpired lease by the Debtor results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtor or their properties or agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtor, by the earlier of (a) the end of the month following the period in which the Effective Date occurs or (b) such other deadline as the Court may set for asserting a Claim for such damages. Any Rejection Claim arising from the rejection of an unexpired lease or executory contract shall be treated as a General Unsecured Claim; *provided, however*, that any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtor of any objections to such Claim if asserted.

## ARTICLE VIII

### RETENTION, ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS BELONGING TO THE DEBTOR, THE REORANIZED DEBTOR AND THE ESTATE INCLUDING PREFERENCES AND CONVEYANCES

**8.01. <u>The Estate's Causes of Action</u>**. Except as otherwise released pursuant to the Plan, all Claims recoverable under Section 550 of the Bankruptcy Code, all Claims against third parties on account of an indebtedness, and all other Claims of any kind or character whatsoever owed to or in favor of the Debtor, the Reorganized Debtor, or the Estate to the extent not specifically compromised and released pursuant to this Plan or any agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by the Reorganized Debtor for the benefit of implementation of the Plan subsequent to the Effective Date.

**8.02. <u>Preservation of Causes of Action against Pre-Confirmation Insiders, Control Persons, Equity Interest Holders, or Professionals, Advisors, Consultants to Any of Them</u>**

**or to the Debtor.** Because of the takeover nature of this Competing Plan and the extent to which Gupreet Dhaliwal has excluded Dhillon from the management of the hotel since 2008, Proponent is not presently aware of any causes of action, whether pre-petition or post-petition in nature against any of Debtor's pre-Confirmation insiders, control persons, equity interest holders, or of any professionals (including without limitation attorneys, accountants, financial advisors and the like) engaged for any or all of them or the Debtor. No such Claims have been scheduled by the Debtor or its professionals. The Proponent and Reorganized Debtor do not represent or warrant the existence of any such claims. The Proponent and Reorganized Debtor do not intend to overstate, concoct, or needlessly pursue non-meritorious or marginal claims of such nature. Claimants should vote for or against this Plan without the expectation that the Reorganized Debtor will ever recover on account of any such claims. Nonetheless, to the full extent permitted by all applicable law, the Reorganized Debtor specifically, expressly, and unequivocally reserves to itself, preserves, and does not forfeit, waive, transfer to another, release, or otherwise intend this Plan to constitute res judicata, or judicial estoppel against or loss of standing by the Reorganized Debtor as successor to and representative of the Estate, to assert, prosecute, and collect on any such claims against any such persons, including without limitation any claims for self-dealing, misfeasance, malfeasance, negligence, professional negligence or malpractice, gross negligence, actual fraud in any form, constructive fraud, preference, concealment, conversion, diversion, wasting, theft of business opportunity, or any other action of similar nature, whether arising in or sounding

    **8.03. Objections to Claims.** Any party authorized by the Bankruptcy Code may object to the allowance of Pre-petition Claims at any time prior to sixty (60) days after the Effective Date and, as to Rejection Claims, at any time prior to sixty (60) days after the filing of any such Rejection Claim. Any proof of Claim filed after the Court sets bar dates shall be of no force and effect and shall be deemed disallowed. All Contested Claims shall be litigated to Final Order; *provided, however,* that the Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court. Notwithstanding the foregoing, a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

    No distributions under this Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim. If a Claim is disputed in whole or in part because the Debtor asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of its Allowed Claim. In addition, any party authorized by the Bankruptcy Code, at anytime, may request that the Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of any prior objections.

## ARTICLE IX
## FRANCHISOR APPROVAL OF CHANGE OF CONTROL.

9.01. Franchisor Approval of Change of Control. If and to the extent required under the Holiday Inn franchise agreement referenced in Class 6, approval by the Class 6 holder of the change of control effected by this Plan or, as appropriate, the consent by Holiday Inn to a new franchise agreement in favor of the Reorganized Debtor, shall be a condition to the occurrence of the Effective Date of the Plan.

## ARTICLE X
## EFFECT OF CONFIRMATION

**10.01. Discharge and Release of Debtor**. Pursuant to Bankruptcy Code Section 1141(d)(2), confirmation of this Plan discharges the Reorganized Debtor from all liabilities save and except those treated in accordance with the Plan and nothing shall release the Reorganized Debtor from the terms of the Plan.

**10.02. Exculpation.**. None of the owners, members, directors, managers, officers, financial advisors, attorneys, or employees of the Proponent (collectively the "Released Entities") shall have any liability for actions taken or omitted to be taken in good faith under or in connection with proposing, seeking and obtaining Confirmation, implementing, preserving, protecting, or carrying out the Plan.

**10.03. Legal Binding Effect**. The provisions of this Plan, pursuant to the Bankruptcy Code Section 1141 shall bind the Debtor, Reorganized Debtor, Proponent, and all Creditors and Interest Holders, whether or not they accept this Plan. The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.

**10.04. Permanent Injunction**. Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against the Debtor and any other entity against whom prosecution of the any Claims could result in a Claim being asserted against the Debtor that could arise directly or indirectly out of a claim against the **Debtor**.

From and after the Confirmation Date, all holders of Claims against the Debtor are restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Assets or the Debtor; (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Assets, or the Debtor; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; *provided, however,* that each holder of a Contested Claim may

continue to prosecute its proof of Claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce their rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan. Such restraint shall continue until the Debtor has been granted a discharge by the Court or such creditor is paid in full as called for by the Plan. The setoff rights of the Texas Comptroller of Public Accounts are hereby preserved, and such rights shall therefore be unaffected by the Plan or confirmation thereof.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

**11.01.  Request for Relief Under Bankruptcy Code Section 1129**. In the event any Impaired Class shall fail to accept this Plan in accordance with Bankruptcy Code Section 1129(a), the Proponent reserves the right to, and does hereby request the Bankruptcy Court to confirm the Plan in accordance with Bankruptcy Code Section 1129(b).

**11.02.  PreDavment of Claims.** The Reorganized Debtor shall have the right, from and after the Effective Date, in its sole cliscretion and option, to prepay without penalty, in the amounts and to the extent otherwise authorized in this Plan, any Allowed Claim or other fees, charges or other assessments.

**11.03.  Reorganized Debtor's Business Form.** Proponent reserves the right to reconstitute the business form of the Reorganized Debtor, from and after the Effective Date, to the extent permitted by applicable non-Bankruptcy law and, likewise, the Reorganized Debtor reserves the right to reconstitute itself in any business form otherwise permitted by applicable non-Bankruptcy law.

**11.04.  Revocation**. The Debtor reserves the right to revoke and withdraw this Plan at any time prior to the Confirmation Date.

**11.05.  Effect of Withdrawal or Revocation**. If the Proponent revokes or withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

**11.06.  Due Authorization by Creditors.** Each and every Claimant who elects to participate in the distributions provided herein warrants that it is authorized to accept in consideration of its Claim against the Debtor the distributions provided in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

**11.07. <u>Entire Agreement</u>.** This Plan, as described herein, the Confirmation Order, and all other documents and instruments to effectuate this Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents.

**11.08. <u>Section 1146 Exemption</u>.** Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange or any security under this Plan or the making or delivery of any instrument or transfer pursuant to, in implementation of or as contemplated by this Plan or the transfer of any property pursuant to this Plan shall not be taxed under any federal, state or local law imposing a stamp, transfer or similar tax or fee.

**11.07. <u>Provisions Governing Distributions</u>.** All payments and distributions under the Plan shall be made by the Debtor as indicated. Any payments or distributions to be made by the Debtor pursuant to the Plan shall be made as soon as reasonably practicable after the Effective Date, except as otherwise provided for in the Plan, or as may be ordered by the Bankruptcy Court. Any payment or distribution by the Debtor pursuant to the Plan, to the extent delivered by the United States Mail, shall be deemed made when deposited into the United States Mail.

Payments of Cash to be made by the Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth in a properly filed proof of claim, amended proof of claim, or supplemental proof of claim, as appropriate filed by such claimant or holder (or at the last known addresses of such claimant or holders as set forth in the Debtor's Schedules, if no proof of Claim or proof of interest is filed). Each claimant and holder shall be solely responsible for stating and updating, from time to time, its own correct (or corrected or updated) name (or name of any successor in interest), address and other contact information in the form of a properly filed proof of claim, amended proof of claim, or supplemental proof of claim, as appropriate, and neither the Debtor, Estate, Reorganized Debtor, Proponent, or any other successor or representative of the Debtor, Estate or Reorganized Debtor shall have any duty whatsoever to determine or update contact information for any such claimant. All Claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date. After such date, all unclaimed property shall be escheated for the benefit of such claimant or holder to the then appropriate agency of the State of Texas for managing escheated funds, in accordance with Section 1l.09.04 herein, and thereupon the Reorganized Debtor shall be forever discharged from any responsibility or liability on account of such Claim. From and after the time that the Bankruptcy Case is closed or it otherwise becomes impossible to file a proof of claim, amended proof of claim, or supplemental proof of claim in the Bankruptcy Court's official Claims Registry, then and only then shall a claimant or holder restate or update, from time to time, its own correct (or corrected or updated) name (or name of any successor in interest), address and other contact information (but still using the official form for a proof of claim, amended proof of claim, or supplemental proof of claim, as appropriate, signed by an authorized person on behalf of such claimant or holder) by

providing such information and executed form to the Reorganized Debtor, Attention, Managing Member, by United States Certified Mail, return receipt requested.

Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof. Requests for reissuance of any check shall be made directly to the Reorganized Debtor by the holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of such a voided check within ninety (90) days after the date of delivery of such check. After such date, all Claims in respect of void checks shall, as against the Reorganized Debtor, shall be discharged and forever barred.

Any and all unclaimed funds resulting from voided checks or other failed attempts to distribute same in accordance with this Plan shall be turned over by the Reorganized Debtor to the appropriate agency for the State of Texas managing escheated funds, and, thereafter, the holder of the Claim giving rise to such escheatment shall have no claim against the Reorganized Debtor, its agents, servants, employees, attorneys, accountants and other advisors, but such holder shall instead be limited, if and to the extent available, solely to the recovery, if any, obtained by such holder from the State of Texas at such holder's sole expense and initiative, on account of such holder's portion of escheated funds, and the Reorganized Debtor, its agents, servants, employees, attorneys, accountants and other advisors shall have no duty or obligation to assist with the recovery of any such escheated funds.

**11.08. <u>Governing Law.</u>** Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

## ARTICLE XII
## MODIFICATION OF THE PLAN

**12.01** The Proponent may propose amendments to or modifications of this Plan under Bankruptcy Code Section 1127 at any time prior to Confirmation upon notice to all parties affected thereby and providing such parties an opportunity to be heard on the proposed amendment. After Confirmation, the Proponent may remedy any defects or omissions or reconcile any inconsistencies in this Plan or in the Final Order in such manner as may be necessary to carry out the purpose and intent of this Plan so long as the interests of Claimants or Interest holders are not materially and adversely affected.

## ARTICLE XIII
## RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan or the Effective Date having occurred, the Court will retain jurisdiction for the following purposes:

**13.01 Allowance of Claims.** To hear and determine the allowability of all Claims upon objections to such Claims.

**13.02 Executory Contracts and Unexpired Leases Proceedings.** To act with respect to proceedings regarding the assumption of any executory contract or unexpired lease of the Debtor pursuant to §§ 365 and 1123 of the Code and Article VII of the Plan.

**13.03 Plan Interpretation.** To resolve controversies and disputes regarding the interpretation of the Plan.

**13.04 Plan Implementation.** To implement and enforce the provisions of the Plan and enter orders in aid of confirmation and implementation of the Plan.

**13.05 Plan Modification.** To modify the Plan pursuant to § 1127 of the Code and applicable Bankruptcy Rules, except that no modification shall be made to the Plan that would impair, diminish or affect in any way the rights of participants of any Classes of the Plan without the consent of such Class.

**13.06 Adjudication of Controversies.** To adjudicate such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court against the Debtor.

**13.07 Injunctive Relief.** To issue any injunction or other relief as appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or in the Confirmation Order.

**13.08 Interpleader Action.** To entertain interpleader actions concerning assets to be distributed or other assets of the Estate.

**13.09 Correct Minor Defects.** To correct any defect, cure any omission or reconcile any inconsistency or ambiguity in the Plan, the Confirmation Order or any document executed or to be executed in connection therewith, as may be necessary to carry out the purposes and intent of the Plan, provided that the rights of any holder or an Allowed Claim are not materially and adversely affected thereby.

**13.10 Authorization of Fees and Expenses.** To review and authorize payment of professional fees incurred prior to the Effective Date.

**13.11**   **Post-Confirmation Orders Regarding Confirmation.**   To enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated.

**13.12.**  Final Decree.   To enter a final decree closing the Case pursuant to Bankruptcy_Rule 3022.

Dated: September 2, 2011

Respectfully submitted,

**/s/ Jagmohan Dhillon**

JAGMOHAN DHILLON

/s/ Jeff Carruth

_____

Jeff D. Carruth
State of Texas Bar No. 24001846
Weycer, Kaplan, Pulaski & Zuber, P.C.
3030 Matlock Rd., Suite 201
Arlington, TX 76015
(817) 795-5046 – Telephone
(866) 666-5322 – Facsimile
jcarruth@wkpz.com

ATTORNEYS FOR
JAGMOHAN DHILLON