
**EOD**
10/11/2011

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| MID WEST HOTEL LODGING, LLC, | § | CASE NO. 11-40629-BTR-11 |
| | § | |
| DEBTOR IN POSSESSION | § | CHAPTER 11 |

**ORDER APPROVING DISCLOSURE STATEMENT IN SUPPORT OF SECOND AMENDED COMPETING PLAN OF REORGANIZATION OF JAGMOHAN DHILLON DATED: OCTOBER 6, 2011**

On October 3, 2011, this Court held a hearing on whether to approve the Disclosure Statement (Docket No. 104, and, as amended, Docket No. 131) (the "Disclosure Statement") filed by Jagmohan Dhillon ("Dhillon"). Having (i) considered the contents of the Disclosure Statement, (ii) reviewed the file herein, (iii) heard arguments and the announcements of counsel, and (iv) determined that Dhillon's Disclosure Statement was properly served, the Court is of the opinion for the reasons stated herein and on the record that Dhillon's Disclosure Statement should be approved. It is therefore

**ORDERED** that Dhillon's Disclosure Statement, as agreed to by the parties and as attached hereto as ***Exhibit A*** and incorporated by reference herein, shall be, and the same hereby is, **APPROVED** with additional changes to be made as agreed and announced on the record, which changes have been approved by the Debtor, Gupreet Dhaliwal, and Holiday Hospitality Franchising, Inc. as evidenced by the signature of their respective counsel appearing below.

**ORDERED** that this Court shall conduct a hearing on confirmation of Dhillon's Chapter 11 Plan of Reorganization on **Monday, November 14, 2011, at 3:00 p.m**.

**ORDERED** that the deadline for creditors to return Ballots Accepting or Rejecting Dhillon's Chapter 11 Plan of Reorganization to Dhillon or to any Ballot Agent appointed by the Court is **November 7, 2011**.

**ORDERED** that Objections to Dhillon's Chapter 11 Plan of Reorganization must be filed no later than **November 9, 2011**.

Signed on 10/11/2011

*Brenda T. Rhoades*          SD

HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE

*{continued on following page]}*

**ORDER PREPARED BY:**

By: _/s/ Jeff Carruth_____

      JEFF CARRUTH
      State Bar No. 24001846
      WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
      3030 Matlock Rd., Suite 201
      Arlington, Texas 76015
      Phone: (817) 795-5046
      Facsimile: (866) 666-5322
      jcarruth@wkpz.com

      **ATTORNEYS FOR JAGMOHAN DHILLON**

**AGREED AS TO MODIFICATIONS TO DISCLOSURE STATEMENT:**

By: _/s/ Branch M. Sheppard*_____

      George A. Kurisky, Jr.
      TBA No. 11767700
      Branch M. Sheppard
      TBA No. 24033057
      JOHNSON DELUCA KURISKY &
      GOULD, P.C.
      4 Houston Center
      1221 Lamar, Suite 1000
      Houston, Texas 77010
      (713) 652-2525 - Telephone
      (713) 652-5130 - Facsimile
      **ATTORNEYS FOR DEBTOR IN POSSESSION**

By: _/s/ John J. Gitlin *_____

      John J. Gitlin, Esq.
      SBN: 07986600
      Spring Valley Office Commons
      5339 Spring Valley Road
      Dallas, Texas 75254
      Telephone: (972) 385-8450
      Facsimile: (972) 385-8460
      **ATTORNEYS FOR GURPREET DHALIWAL**

By: _/s/ Lieb Lerner*_____

      Leib M. Lerner
      Alston & Bird
      333 South Hope St., 16th Floor
      Los Angeles, CA 90071
      leib.lerner@alston.com
      Telephone: (213) 576-1000
      Facsimile: (213) 576-1100

      **ATTORNEYS FOR HOLIDAY HOSPITALITY FRANCHISING, INC.**

*Signature by permission by Jeff Carruth*

**EXHIBIT A**

Jeff D. Carruth
Weycer, Kaplan, Pulaski & Zuber, P.C.
3030 Matlock Rd., Suite 201
Arlington, TX 76015
(817) 795-5046 – Telephone
(866) 666-5322 – Facsimile
jcarruth@wkpz.com

ATTORNEYS FOR JAGMOHAN DHILLON

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| MID WEST HOTEL LODGING, LLC, | § | CASE NO:  11-40629-BTR-11 |
|     Debtor in Possession | § | CHAPTER 11 |
| | § | |

SECOND AMENDED DISCLOSURE STATEMENT IN SUPPORT OF SECOND AMENDED
COMPETING PLAN OF REORGANIZATION OF JAGMOHAN DHILLON
DATED:  October 7, 2011

**EXHIBIT A**

Unless otherwise defined herein, all capitalized terms in the Disclosure Statement shall have the meaning ascribed to such capitalized terms in the Plan, including the list of defined terms contained in the Plan.

Jagmohan Dhillon ("Dhillon") is the proponent of the Competing Plan. As of the Petition Date, Dhillon owned 15% of the membership interests of Mid West Hotel Lodging, LLC (the "Debtor"). At a hearing on August 22, 2011, and by an order entered on August 24, 2011 (Docket No. 86), the Bankruptcy Court declined to extend the Debtor's exclusive right to file, and solicit acceptances of, a plan of reorganization, and, therefore, Dhillon by and through this Disclosure Statement provides information to creditors and parties in interest in support of the Competing Plan filed by Dhillon.

Except where otherwise indicated, the following facts and statements have been supplied by the Debtor or are available through the records of this bankruptcy case or other public records. Dhillon does not warrant or represent the accuracy of the facts and statements contained herein, however, Dhillon believes that this Disclosure Statement contains adequate information as required by 11 U.S.C. § 1125 and with respect to the solicitation of the Competing Plan.

ARTICLE I

### Identity of the Debtor

**1.01**     The Debtor filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. Section 101, et seq. ("Code") on February 28, 2011 in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division ("Court"), initiating the above-styled and referenced bankruptcy proceeding. The Debtor is operating its business as a Debtor-in-Possession pursuant to Sections 1107 and 1108 of the Code.

### Purpose of This Disclosure Statement; Source of Information

**1.02**     Dhillon as the Proponent submits this Disclosure Statement pursuant to Section 1125 of the Code to all known Claimants of Debtor for the purpose of disclosing that information which the Court has determined is material, important, and necessary for Creditors of, and the Members of, the Debtor in order to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of Dhillon's Plan. A copy of the proposed Plan is attached hereto as **Exhibit 1** and incorporated herein by this reference. The Plan sets forth in detail the repayment arrangement between the Debtor and its creditors. This Disclosure Statement describes the operations of the Debtor contemplated under the Plan. Any historical accounting information contained herein that has been provided by the Debtor has been prepared using the cash method of accounting.

### Explanation of Chapter 11

**1.03**     Chapter 11 is the principal reorganization chapter of the Code. Pursuant to Chapter 11, the business of a debtor may be reorganized for its own benefit and that of its creditors and equity interest holders. Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case. A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor. After a plan of reorganization has been filed, it must be accepted by holders of claims against, or with interests in, the debtor. Section 1125 of the Code requires full disclosure before solicitation of acceptances of a plan of reorganization. This Disclosure Statement is presented to Claimants to satisfy the requirements of Section 1125 of the Code.

Page 1 of 26

# EXHIBIT A

## Explanation of the Process of Confirmation

**1.04**    Even if all Classes of Claims accept the plan, its confirmation may be refused by the Court. Section 1129 of the Code sets forth the requirements for confirmation and, among other things, requires that a plan of reorganization be in the best interests of Claimants. It generally requires that the value to be distributed to Claimants and Equity Interest Holders may not be less than such parties would receive if the debtor were liquidated under Chapter 7 of the Code.

**1.05**    Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. Chapter 11 of the Code does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court. The plan, however, must be accepted by: (i) at least the holder of one (1) class of claims by a majority in number and two-thirds (2/3) in amount of those claims of such class actually voting; or (ii) at least the holders of one (1) class of allowed interests by two-thirds (2/3) in amount of the allowed interests of such class actually voting.

**1.06**    The Court may confirm the Plan even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.

**1.07**    Confirmation of the plan discharges the debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the Debtor and all claimants, equity interest holders, and other parties-in-interest, regardless of whether or not they have accepted the plan.

## Voting Procedures

**1.08**    **Unimpaired Class.** Claimants in Class 1 are not impaired under the Plan. Such Class, therefore, is deemed to have accepted the Plan.

**Impaired Classes.** Classes 2, 3, 4, 5, 6, 7, and 8 Claimants are impaired as defined by Section 1124 of the Code. The Proponent is seeking the acceptance of the Plan by Claimants in Classes 2, 3, 4, 5, 6, 7, and 8. Each holder of an Allowed Claim in Classes 2, 3, 4, 5, 6, 7, and 8 may vote on the Plan by completing, dating, and signing the ballot sent to each holder and filing the ballot as set forth below. One ballot will be sent to each Claimant eligible to vote on the Plan.

> **Completion and Return of Ballots.** For all Classes, the ballot must be returned to Proponent's Attorney, Jeff Carruth, Weycer, Kaplan, Pulaski & Zuber, P.C., 3030 Matlock Rd., Suite 201, Arlington, Texas 76015 by mail, jcarruth@wkpz.com, by e-mail, or (866) 666-5322 by facsimile. In order to be counted, ballots must be RECEIVED no later than the Voting Deadline of **5:00 p.m. on November 7, 2011.**

**Acceptances.** Ballots that are signed and returned but fail to indicate either an acceptance or rejection will not be counted. Ballots which are inconclusive whether acceptance or rejection is indicated will be counted at the discretion of the Proponent.

**EXHIBIT A**

### Best Interests of Creditors Test

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In order for the Plan to be confirmed, the Court must determine that the Plan is in the best interests of the Debtor's creditors. The proposed Plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation. Accordingly, since the Plan proposes to pay all secured creditors[1] in full and the unsecured creditors a substantial dividend, the Proponent believes that the creditors are receiving more than they would receive in a Chapter 7 liquidation. Therefore, the Plan satisfies the requirements of Section 1129(a)(7).

### Cramdown

The Court may confirm the Plan even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code. Accordingly, the Proponent, requests the Court determine that the Plan does not discriminate unfairly, and is fair and equitable with respect to any objecting creditor. A discussion of the specific requirements for Cramdown of a Plan are set forth starting below.

### Definition of Impairment

As set forth in Section 1124 of the Bankruptcy Code, a class of claims or equity interests is impaired under a plan of reorganization unless, with respect to each claim or equity interest of such class, the plan:

    (a)    leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or equity interest; or

    (b)    notwithstanding any contractual provision or applicable law that entitles the holder or a claim or equity interest to demand or receive accelerated payment of such claim or equity interest after the occurrence of a default:

        (i)    cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code;

        (ii)    reinstates the maturity of such claim or interest as it existed before such default;

        (iii)    compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance on such contractual provision or such applicable law; and

        (iv)    does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest.

---

[1] Although more than one creditor has asserted a lien against the Property, the Proponent believes that only Sterling Bank's lien has any value.

**EXHIBIT A**

---

**Classification and Treatment of Claims and Interests**

1.9    The Plan classifies Claims separately in accordance with the Bankruptcy Code and provides different treatment for different classes of Claims.

Only holders of Allowed Claims are entitled to receive distributions under the Plan. Allowed Claims are Claims that are not in dispute, are not contingent, are liquidated in amount, and are not subject to objection or estimation. Initial distributions or other transfers of Cash or other consideration specified in the Plan otherwise available to the holders of Allowed Claims will be made (a) on the Effective Date, or (b) the date on which such Claim becomes an Allowed Claim as otherwise provided in the Plan, or as may be ordered by the Bankruptcy Court.

1.10    In accordance with the Plan, unless otherwise provided in the Plan or the Confirmation Order, the treatment of any Claim under the Plan will be in full satisfaction, settlement, release, and discharge of and in exchange for each and every Claim.

**Requirements for Confirmation of the Plan**

1.11    At the confirmation hearing, the Bankruptcy Court must determine whether the Bankruptcy Code's requirements for confirmation of the Plan as set forth in § 1129 of the Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. As set forth in Section 1129 of the Bankruptcy Code, these requirements are as follows:

1.    The plan complies with the applicable provisions of the Bankruptcy Code.
2.    The proponents of the plan comply with the applicable provisions of the Bankruptcy Code.
3.    The plan has been proposed in good faith and not by any means forbidden by law.
4.    Any payment made or promised by the Debtor, by the plan proponents, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in, or in connection with, the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of the Bankruptcy Court as reasonable.
5.    (A) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a joint plan with the Debtor, or a successor to the Debtor under the plan; and (B) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized Debtor, and the nature of any compensation for such insider.
6.    Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the Debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.
7.    With respect to each impaired class of claims or interests: (i) each holder of a claim or interest of such class has (A) accepted the plan or (B) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated on such date under Chapter 7 of the Bankruptcy Code on such date; or (ii) if Section 1111(b)(2) of

Page 4 of 26

**EXHIBIT A**

the Bankruptcy Code applies to the claims of such class, the holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

8.      With respect to each class of claims or interests: (i) such class has accepted the plan; or (ii) such class is not impaired under the plan.

9.      Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that:

   (i)      with respect to a claim of a kind specified in Section 507(a)(1) or 507(a)(2) of the Bankruptcy Code, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

   (ii)      with respect to a class of claims of a kind specified in Section 507(a)(3), 507(a)(4), 507(a)(5) or 507(a)(6) of the Bankruptcy Code, each holder of a claim of such class will receive: (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and

   (iii)      with respect to a claim of a kind specified in Section 507(a)(7) of the Bankruptcy Code, the holder of a claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

10.      If a class of claims is impaired under the plan, and at least one class of claims that is impaired has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class.

11.      If the debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the debtor has paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition.

12.      Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

13.      All fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on confirmation of the plan, have been paid or the plan provides for the payments of all such fees on the effective date of the plan.

14.      The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in Section 1114 of the Bankruptcy Code, at the level established pursuant to Subsection (e)(1)(B) or (g) of Section 1114, at any time prior to confirmation of the plan, for the duration of the period the Debtor has obligated itself to provide such benefits.

The Proponent believes that the Plan satisfies all applicable statutory requirements of Chapter 11 of the Bankruptcy Code, that the Debtor under the Proponent's Plan has complied with or will have complied with all the requirements of Chapter 11, and that the Plan is proposed in good faith. At the Confirmation Hearing, the Bankruptcy Court will determine whether holders of Allowed Claims or

Page 5 of 26

**EXHIBIT A**

Allowed Equity Interests would receive greater distributions under the Plan than they would receive in a liquidation under Chapter 7 of the Bankruptcy Code.

The Proponent believes that the feasibility requirement for confirmation of the Plan is satisfied by the fact that the future operating revenues will be sufficient to satisfy the obligations under the Plan in addition to supporting sustainable growth of the enterprise. The proceeds of the Proponent's cash infusion (see Article VI of the Plan) also will be available to provide any additional cash necessary to sustain the debt service required under the Plan in the event of any operational shortfall. These facts and others demonstrating the confirmability of the Plan will be shown at the Confirmation Hearing.

### Cramdown

1.12    The Bankruptcy Court may confirm a plan of reorganization even though fewer than all the classes of impaired claims and interests accept it. For a plan of reorganization to be confirmed despite its rejection by a class of impaired claims or interests, the proponents of the plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or interests that has not accepted the plan.

1.13    "Fair and equitable" has different meanings with respect to the treatment of secured and unsecured claims. As set forth in Section 1129(b)(2) of the Bankruptcy Code, those meanings are as follows:

With respect to a class of secured claims, the plan provides:

(a)    (i) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the Debtor or transferred to another entity, to the extent of the allowed amount of such claims; and (ii) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(b)    for the sale, subject to Section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (a) and of this subparagraph; or

(c)    the realization by such holders of the "indubitable equivalent" of such claims.

With respect to a class of unsecured claims, the plan provides:

(a)    that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(b)    the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under Section 1115 subject to the requirements that a) the value, as of effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or (b) the value of property to be distributed under the plan is not less than the projected disposable income

Page 6 of 26

## EXHIBIT A

of the debtor (as defined in Section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

With respect to a class of interests, the plan provides:

(a)     that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled or the value of such interest; or

(b)     that the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

In the event that one or more classes of impaired Claims reject the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejecting impaired class of Claims. SO LONG AS THE CLASSES OF UNSECURED CREDITORS VOTE FOR THE PLAN THEN THE PLAN WILL NOT VIOLATE THE ABSOLUTE PRIORITY RULE. The absolute priority rule requires that prior to the interest holder of the Debtor retaining or receiving any property the senior classes of claims must be paid in full or vote to accept the Plan.

The Debtor believes the Plan does not discriminate unfairly against, and is fair and equitable with respect to, each impaired class of Claims.

### ARTICLE II
### REPRESENTATIONS

**2.01**     This Disclosure Statement is provided pursuant to Section 1125 of the Code to all of the Debtor's known Creditors and other parties in interest in connection with the solicitation of acceptance of the Proponent's Plan of reorganization, as may be amended or modified.  The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable investor, typical of the holders of Claims, to make an informed judgment in exercising its rights either to accept or reject the Plan.

**2.02**     The information contained in this Disclosure Statement has been derived from information submitted by the Debtor through its current management by Gupreet Dhaliwal ("Dhaliwal") and/or public sources (*e.g.* the various reporting done through this bankruptcy case) unless specifically stated to be from other sources.  Because Dhillon is not the source of information that is derived from the Debtor, Dhillon does not warrant or represent the accuracy of any such Debtor-derived information.

**2.03**     No representations concerning the Proponent's Plan are authorized by the Proponent other than those set forth in this Disclosure.  The Proponent recommends that any representation or inducement made to secure your acceptance or rejection of the Plan which is not contained in this Disclosure should not be relied upon by you in reaching your decision on how to vote on the Plan.  Any representation or inducement made to you not contained herein should be reported to the attorneys for Proponent who shall deliver such information to the Court for such action as may be appropriate.

**2.04**     ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS

Page 7 of 26

# EXHIBIT A

SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE OR UPON THE MERITS OF THE PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

    **2.05**   THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES, AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS DISCLOSURE DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

    **2.06**   THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS, AND SHOULD BE ACCEPTED. **CONSEQUENTLY, THE PROPONENT URGES THAT CLAIMANTS VOTE FOR THE PLAN.**

    **2.07**   THE PROPONENT DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS DISCLOSURE ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

## ARTICLE III
### FINANCIAL PICTURE OF THE DEBTOR

#### Financial History and Background of the Debtor

    **3.01**   The Debtor owns real property and the improvements thereon on which the Debtor owns and operates a hotel in Gainesville, Texas branded as a Holiday Inn Express. The Debtor and its principals, Gurpreet Dhaliwal and Dhillon, bought the hotel in September 2006, the total cost of which was $ 6,750,000.00. The current principal due on the loans that were originally secured by deed of trust liens against the Property are as follows: Sterling Bank: $3,192,655.00, North Texas CDC/Small Business Administration ("SBA"): $1,810,093.00, and New Global, Inc.: $350,000.00. The Debtor currently asserts that Gurpreet Dhaliwal holds 85% of the outstanding membership interests in the Debtor, and that Dhillon holds 15% of the outstanding membership interests in the Debtor.

    One of the principals of the Debtor, Dhillon, has been in the hotel business since 2000 and at various points in time has owned, operated, and/or managed least 20 properties. Dhillon currently provides hotel management services to twelve hotel properties either individually or through DMC Hotels, the hotel management company operated by Dhillon. A recent curriculum vitae of Dhillon is attached hereto as **Exhibit 2** and is incorporated by reference herein.

    Initially, the hotel was managed directly by the Debtor and its principals, Dhaliwal and Dhillon. Since 2008, Dhaliwal exclusively has been in charge of operations at the hotel.

    Following confirmation of the Plan, Dhillon shall be directly responsible for managing the assets, which include setting financial goals, budget, policies, franchise relations, major renovations and

# EXHIBIT A

marketing. Dhillon shall also provide and oversee the day to day operations of the hotel, which include front desk operations, sales reservations, housekeeping, maintenance and employee relations with the help of a general manager who is paid salary from the hotel. Dhillon and/or the reorganized Debtor also may utilize Dhillon's hotel management company for managing the hotel. In addition, Dhillon shall visit the property 3 to 4 times per week.

By these and other measures, under the direction and control of Dhillon, the Reorganized Debtor anticipates that is shall be able to achieve the Plan and the results shown in the projections.

Recession:

The Debtor indicates that the recession that began in 2008 and increased local competition caused the Debtor's financial difficulties that resulted in this bankruptcy case.

1.   Revenue.   According to the Debtor and/or Dhaliwal, room revenue has been trending down since January 2009, and as of July 2009, took a large downward turn due to the drastic downturn in the economy and the shift in travel patterns of many companies compared to the past. Also in the area of the Property, the Debtor's Holiday Inn Express was the only main hotel in 2006. In 2007, Hampton Inn and Comfort Suites opened, and in 2008, La Quinta Inn opened near the Property. In 2009, a nearby casino opened its own 400-room hotel. With all these new rooms available in Gainesville and nearby, the Debtor under Dhaliwal's control failed to keep pace as occupancy decreased at the Debtor's hotel and overall city revenue was divided among the above hotels. Also, the increase in gas prices has affected road travel which has directly affected overall occupancy. In addition, according to the Debtor, some companies have closed down or moved out of the Gainesville area due to the economy. The Debtor under Dalhiwal's management also reports that though the revenue is increasing compared to the previous year, the average daily rate ("ARD") has been declining due to brand new hotels in the area slashing their rates drastically to stay competitive. The inability to achieve a satisfactory occupancy and ARD eroded the profitability and income of the Debtor available to pay the current mortgage obligation.

2.   Expenses.   The Debtor's expenses, as benchmarked to the most recent hospitality industry trends report for Debtor's property specifications are well within the industry trends.

3.   Management.   Dhillon also believes that the hotel's revenue potential is not maximized under the sole management of Dhaliwal and that by such management the Debtor's hotel has underperformed compared to its peers nationally and in the Gainesville market.

Dhillon anticipates that revenue and ARD may be increased under his management.

## Current Operations

3.02   An Income and Expenses statement and/or relevant portions of the monthly operating reports filed by the Debtor provided by the Debtor showing actual operation of the Debtor, according to the Debtor's accounting and taken from the Debtor's disclosure statement, is/are attached hereto as **Exhibit 3** and incorporated herein by this reference as if set forth in full for all purposes.

## Future Income and Expenses Under the Plan

3.03   The Proponent's projections of Plan payments is set forth on **Exhibit 4** attached hereto. The Proponent's Claims Summary and Plan Payment Schedule is attached hereto as **Exhibit 5.**

Page 9 of 26

**EXHIBIT A**

Dollars to fund the Plan will come from the Debtor's continued business operations and the capital contributions called for by the Plan.

### Future Management of the Debtor

3.04      The Plan contemplates that Dhillon will resume direct management and operation of the Debtor's business.  The Debtor as reorganized will keep current its payments for post-petition obligations.

ARTICLE IV
ANALYSIS AND VALUATION OF PROPERTY

### Real Property

4.01      The Debtor has provided information that it owns the real property described below. The Debtor asserts that the total as-is value of such property is $3,557,463.33 based upon an appraisal by the Debtor in the amount of $3,250,000.00 effective June 30, 2011, and an appraisal by Sterling Bank in the amount of $4,800,000.00 effective June 28, 2011.  Dhillon does not agree with Sterling Bank's appraised value.

### Personal Property

4.02      Debtor owns the personal property described in the following table.  The values listed were supplied by Dhaliwal.

| Property | Value |
|---|---|
| Office Furniture and Equipment | $6,000.00 |
| Furniture and Fixtures in Hotel Rooms and Exercise Equipment | $120,000.00 |
| Inventory | $28,000.00 |
| Bank Accounts | $89,618.06 |
| Accounts Receivable | $16,749.98 |
| 2007 Hyundai Van | $10,000.00 |

Because the Debtor's assets consist or both real and personal property that work together to create a hotel normally the value of the personal property assets is absorbed into the value of the real property and considered as one unit.

### Liquidation Value of Assets

| Property | Value | Secured Debt | Equity |
|---|---|---|---|
| Real and Personal Property[2] | $3,557,463.33 | $5,717,556.21 | $0.00 |

The value of the Property shown above is the maximum possible fair market value of the Property.  The liquidation value of the Property would be much lower than the fair market value of the

---

[2] Included in the total value of the hotel.

Page 10 of 26

Property.  For purposes of the following discussion, it is assumed that a Chapter 7 trustee would seek to maximize the value of the Property.  However, the Debtor believes that the circumstances surrounding a liquidation under Chapter 7 would inevitably lead to selling conditions that would substantially detract from the total value returned to the estate.  Further, there is no assurance that a Chapter 7 trustee will not promptly sell the real property and assets, which would cause a forced liquidation at even more depressed prices.  The following are some, but not all, of the deleterious consequences that the Debtor believes would result from Chapter 7 liquidation.

- Substantial Chapter 7 administrative costs relating to professional fees, broker commissions, trustee payments, and other associated expenses would necessarily be incurred.

- The Chapter 7 Trustee would be forced to operate the Property and incur administrative expense in doing so.

- The sale of the Property under the time pressure and adverse publicity attendant to a Chapter 7 liquidation would create a difficult selling environment and would result in a transaction consummated at a substantial discount to full market value of the Property.

- A Chapter 7 Trustee may be unfamiliar with the Debtor's operations and/or the Property at the time of his/her appointment and is not likely to be in a position to market the Debtor's assets during the liquidation period as effectively as current management.

- The Chapter 7 Trustee's process of winding-down the Debtor's affairs, objections to Claims, and undertaking similar activities could take much longer than contemplated under the Plan.

The projected amount of unsecured debt is $2,204,736.88 and the Plan proposes to pay 10% of the claims of the SBA and New Global over five (5) years and all other unsecured claims in full (without interest) over five (5) years subject to the limitations set forth in Class 7 of the Plan.  Dhillon has included a Liquidation Analysis based on the Debtor's opinion of the value of the assets.  It has not included costs of sale which would be approximately 8% on the low range of what Dhillon believes would be actual and reasonable liquidating expenses.  The major source of new funding for the Plan will be a capital infusion by Dhillon.  Debtor's property as of the Petition Date is subject to the liens asserted by Sterling Bank, North Texas CDC/SBA, and New Global, Inc.

ARTICLE V
SUMMARY OF THE PLAN

5.1.    **Classification of Claims and Interests.**

**Class 1** consists of any Allowed Administrative Claims.

**Class 2** consists of any Allowed Secured Tax Claims.

**Class 3** consists of any Allowed Priority Tax Claims.

**Class 4**

**Class 4.1** consists of any Allowed Secured Claim of Sterling Bank.

**Class 4.2** consists of any Allowed Secured Claim and any Allowed Unsecured deficiency Claim of the North Texas CDC/SBA (the "SBA").

Page 11 of 26

EXHIBIT A

**Class 4.3** consists of any Allowed Secured Claim and any Allowed Unsecured deficiency Claim of New Global, Inc.

**Class 5** consists of any Allowed Secured Claims of Narinder Dhaliwal, Harminder Singh, and Balwinder Mahli.

**Class 6** consists of the Executory Contract of Holiday Inn.

**Class 7** consists of the Allowed Unsecured Claims.

**Class 7.1** consists of Allowed Unsecured Claims in excess of $15,000, which consist of New Global and the SBA.

**Class 7.2** consists of Allowed Unsecured Claims of $15,000 or less, and further includes the Allowed Unsecured Claims of any holder with Allowed Unsecured Claims which, in the aggregate, exceed $15,000 if such holder elects to reduce all such Allowed Unsecured Claims to $15,000 in toto. Class 7.2 is further designated as a small claims class or convenience class pursuant to 11 U.S.C. § 1122(b).

**Class 8** consists of the any pre-petition or pre-Confirmation equity interests of any Interest Holder.

It is possible for purposes of tabulating acceptance and/or rejection of the Plan that Classes 4.2, 4.3, and 7.1 will be combined into a single class.

## ARTICLE VI
## PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS

The Claims and Interests classified in Article IV hereof shall be treated in the manner set forth in this Article V.

In the event of any discrepancy in the description of the treatment of claims between the Disclosure Statement and the Plan, then the contents of the Plan shall control.

**6.01.    Class 1 Claims – Allowed Administrative Claims.** The Class 1 Claims will be paid, once Allowed, in full by the Reorganized Debtor and on the later of the Effective Date and the date each such claim is Allowed by Final Order. These claims are priority claims pursuant to Section 507(a)(1) of the Bankruptcy Code. These claims include claims for Debtor's attorney's fees and U.S. Trustee's fees. U.S. Trustee's fees must be paid until the case is closed. The Debtor must file quarterly reports following confirmation and until the case is closed. The Class 1 Claims may agree to a different treatment.

**6.02.    Class 2 Claims – Allowed Secured Tax Creditor Claims.** The Class 2 Claims are secured claims with liens that will follow the collateral securing such claims to the extent that such collateral is surrendered either prior to or as part of this Plan such secured liens and claims shall follow the collateral and shall not be paid by the Reorganized Debtor as part of this Plan.

The Class 2 Allowed Claims that relate to collateral or property being retained by the Debtor as part of the Plan shall be paid if Allowed over five (5) years from the Petition Date with interest on such amounts at the rate of 12% per annum until paid in full. The payments shall be made to the extent of the tax escrow on hand and then monthly payments on the unpaid balance shall be made in equal monthly

Page 12 of 26

## EXHIBIT A

payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full.

These claims are secured claims. These creditors shall retain their liens to secure their claims until paid in full under this Plan. The Class 2 Claims shall accrue interest from the Petition Date at the rate of 1% per month from the Petition Date through the Effective Date of the Plan and 12% per annum following the Effective Date until paid in full. These creditors shall retain their senior liens to secure their claims until paid in full under this Plan. In the event that the Debtor or Reorganized Debtor disputes such claim, the payments will be applied to the undisputed amount of the claim as ultimately allowed. While resolution of any such objection is pending, payments pursuant to the Plan shall be applied to the undisputed portion of the claim as ultimately allowed. In the event of a default under the Plan, counsel for holder of a claim in this class shall provide notice of the default via facsimile to counsel for the debtor. Such default shall be cured within 15 business days of the date of transmission of such notice of default. In the event the default is not cured, the Claimant shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court. The Claimant shall only be required to provide two notices of default. Upon a third event of default, the Claimant shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. Failure to pay post-petition taxes prior to delinquency shall constitute an event of default.

The Class 2 Claims are Impaired and the holders of the Class 2 Claims are entitled to vote to accept or reject the Plan.

**6.03.    Class 3 Claims – Allowed Priority Tax Claims.** The Class 3 Claims will be paid if Allowed over three (3) years with interest on such amounts at the rate of 4.25% per annum until paid in full. The payments shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full. These claims are priority claims. A failure by the Reorganized Debtor to make a payment to the priority tax creditors pursuant to the terms of the Plan shall be an Event of Default. If the Reorganized Debtor fails to cure an Event of Default as to such payments within ten (10) days after receipt of written notice of default from the priority tax creditors, then the priority tax creditors may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the priority tax creditors may have under applicable state law; and/or (c) seek such relief as may be appropriate in the Court.

The occurrence of any of the following shall constitute an event of default under the Plan:

**Failure to Make Payments.** Failure on the part of the Reorganized Debtor to pay fully when due any payment required to be made in respect of the Plan Debt. However, due to the size and ongoing nature of the IRS's claim, upon a default under the plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal (or state) tax lien and the powers of levy, seizure, and as provided under the Internal Revenue Code. As to the IRS:

(A)    If the Reorganized Debtor or its successor in interest fails to make any Plan payment, or deposits of any currently accruing employment or sales tax liability; or fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the Reorganized Debtor or its successor in interest failed to file any required federal or state tax return by the due date of such return, then the United States may declare that the Reorganized Debtor is in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Reorganized Debtor is in default.

Page 13 of 26

**EXHIBIT A**

(B)      If the United States declares the Reorganized Debtor or the successor in interest to be in default of the Reorganized Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, may become due and payable immediately upon written demand to the Reorganized Debtor or the successor in interest.

(C)      If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to send two notices of default, and upon the third event of Default the IRS may proceed to collect on all amounts owed without recourse to the Bankruptcy Court and without further notice to the Reorganized Debtor.  The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan. All payments will be sent to: /IRS, 1100 Commerce Street, Mail Code 5024 DAL, Dallas, Texas 75242, Attn. Mr. Leo Carey.

(D)      The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the pre-reorganized Debtor to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the pre-reorganized Debtor to the Internal Revenue Service, and confirmation of this Competing Plan is not an impediment to any such enforcement by the IRS.   However, new equity ownership and management of the Reorganized Debtor does not by this Completing Plan, its Confirmation, Effective Date, or implementation assume any personal liability for the tax obligations of the pre-reorganized Debtor or of any  persons theretofore responsible for such obligations of the pre-reorganized Debtor.

The Class 3 Claims are Impaired and the holders of the Class 3 Claims are entitled to vote to accept or reject the Plan.

**6.04      Class 4 Claims.**

**6.04.01 — Class 4.1 Claim – Allowed Secured Claim of Sterling Bank**.  The Class 4 Claim will be paid as Allowed as follows:

The Class 4.1 Claim will be treated as an Allowed Secured Claim of Sterling Bank in the amount $3,557,463.33 and shall be paid in full over five (5) years with the Allowed Amount of the secured claim of $3,557,463.33 amortized over twenty-five (25) years with interest on such Allowed Amount at prime plus 2.00% per annum and a balloon payment of at the end of the five (5) year term. The payments shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full.

The Class 4.1 Claim shall retain all of its liens and security interests as originally provided in its loan documents until paid off.  The Class 4.1 Claim is Impaired and the holder of the Class 4.1 Claim is entitled to vote to accept or reject the Plan.

The Class 4.1 Claim may be prepaid in full at any time without any penalty or addition to such Claim on account of such prepayment.

Page 14 of 26

**EXHIBIT A**

**6.04.02 — Class 4.2 Claim – Allowed Secured Claim and any Allowed Unsecured Deficiency Claim of the SBA.**

The Class 4.2 Claim will be treated as an Allowed Unsecured Claim in the amount of $1,810,092.80 and shall be paid ten percent (10.00%) of the principal amount of such Allowed Unsecured Claim by:

(i)     a payment equal to five percent (5.00%) of such Allowed Unsecured Claim paid to the holder of the Class 4.2 Claim on or before the Effective Date, and

(ii)    the remaining five percent (5.00%) of such Allowed Unsecured Claim to be paid over five (5) years. The payments will be made in equal monthly payments on the last day of the month following the Effective Date and shall continue on the last day of each month thereafter until such remaining 5% of the principal amount of such Allowed Claim is paid.

In the event of a default under the Plan, the holder of a claim in this Class 4.2 or its counsel shall provide notice of the default via facsimile to counsel for the Reorganized Debtor and by mail to the Reorganized Debtor. Such default shall be cured within fifteen (15) business days of the date of transmission of such notice of default. In the event the default is not cured, the Claimant shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court. The Claimant shall only be required to provide two (2) notices of default. Upon a third event of default, the Claimant shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. The holder of the Class 4.2 Claim shall not be bound by any release provisions in the Plan that would release any liability of its guarantors to the holder of the Class 4.2 Claim. The Class 4.2 Claim is Impaired and the holder of the Class 4.2 Claim is entitled to vote to accept or reject the Plan.

**6.04.03 — Class 4.3 Claim – Allowed Secured Claim and any Allowed Unsecured Deficiency Claim of New Global.**

The Class 4.3 Claim will be treated as an Allowed Unsecured Claim in the amount of $350,000 and shall be paid ten percent (10.00%) of the principal amount of such Allowed Unsecured Claim by:

(i)     a payment equal to five percent (5.00%) of such Allowed Unsecured Claim paid to the holder of the Class 4.3 Claim on or before the Effective Date, and

(ii)    the remaining five percent (5.00%) of such Allowed Unsecured Claim to be paid over five (5) years. The payments will be made in equal monthly payments on the last day of the month following the Effective Date and shall continue on the last day of each month thereafter until such remaining 5% of the principal amount of such Allowed Claim is paid.

In the event of a default under the Plan, the holder of a claim in this Class 4.2 or its counsel shall provide notice of the default via facsimile to counsel for the Reorganized Debtor and by mail to the Reorganized Debtor. Such default shall be cured within fifteen (15) business days of the date of transmission of such notice of default. In the event the default is not cured, the Claimant shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court. The Claimant shall only be required to provide two (2) notices of default. Upon a third event of default, the Claimant shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. The holder of the Class 4.2 Claim shall not be bound by any release provisions in the Plan that would release any liability of its guarantors to the holder of the Class 4.2 Claim. The Class 4.2 Claim is Impaired and the holder of the Class 4.2 Claim is entitled to vote to accept or reject the Plan.

**6.05.   Class 5 Claim – Allowed Secured Claims of Narinder Dhaliwal, Harminder Singh, and Balwinder Mahli.**

The Class 5 Claims, if and to the extent Allowed as Secured, will be treated as follows:

The Class 5 Claims consist of the Secured Claims asserted by Narinder Dhaliwal alleged to be in the amount of $4,599.54, Harminder Singh alleged to be in the amount of $3,500.50, and Balwinder Mahli alleged to be in the amount of $1,948.42.  At the sole option and in the sole discretion of the Reorganized Debtor as of the Effective Date and after giving effect to the installation of new equity and new management, such Claims if and to the extent Allowed as Secured Claims shall be treated in one of the following manners:

    (a)  On an item by item basis, receive by surrender of collateral, in whole or in part at the sole option of the Reorganized Debtor, such items of collateral in exchange for the value attributed to such surrendered items of collateral. If the Claimant and the Reorganized Debtor cannot agree on such values, these values will be determined by the Bankruptcy Court following the Effective Date.

    (b)  As to the Allowed Amount of any such Claim remaining after the optional surrender of items referenced in subparagraph (a) above, the balance and shall be paid in full over three (3) years with principal and interest at 6.00% per annum. The payments shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full. The Class 5 Claim shall retain its lien to secure its claim in any collateral not surrendered pursuant to subparagraph (a) above.

The Class 5 Claims are Impaired and each holder of a Class 5 Claim is entitled to vote to accept or reject the Plan. If any Class 5 Claim is Allowed in amount, in whole or in part, as an Unsecured Claim, then such Unsecured portion of such Allowed Claim shall be treated in Class 7A or 7B, according to the definitions applicable to such subclasses, and shall instead vote to such extent as permitted with respect to Class 7A or 7B.

**6.06.   Class 6 Claim: Executory Contract of Holiday Inn.**

The Class 6 Claim will be paid as Allowed as follows:

The executory franchise contract between the Debtor and Holiday Inn shall be rejected.  Because Gupreet Dhaliwal currently owns more than 51% of the Debtor, the acquisition by Dhillon of 100% of the membership interests of the Reorganized Debtor pursuant to the Competing Plan will effectuate a change of ownership of the Debtor which will require Dhillon and/or the Reorganized Debtor to apply for a new Holiday Inn Express license, and Dhillon and/or the Reorganized Debtor intends to apply for such new license.. Dhillon, as of the approval of this Disclosure Statement, has begun the application process by completing the paperwork and identifying the personnel within HHFI to whom the application should be transmitted.

Dhillon anticipates that the application process will take sixty (60) days to complete.

Dhillon believes that he and/or the Reorganized Debtor will be successful in obtaining a new Holiday Inn Express license because the Debtor relied upon Dhillon[3] as an experienced hotel operator to obtain the Debtor's existing license to operate as a Holiday Inn Express, and Dhillon has obtained approval for from IHG and/or HHFI for licenses issued in connection with at least five (5) other Holiday Inn or Holiday Inn Express locations.

Approval or prospective approval will be concurrent with the Effective Date of such new franchise agreement, which may or may not be approved in HHFI's sole and absolute discretion.

In the unlikely event that the HHFI application is not approved, then Dhillon will seek a comparable hotel franchise license for the Property.

From funds contributed by Proponent pursuant to Sections 6.01 or 6.02 (of the Plan), the sum of $80,000.00 shall be escrowed for and dedicated to capital improvements and repairs that may be required by the franchisor, if and to the extent that other and further capital improvements and repairs over and above the referenced $80,000 are required by franchisor for the approval of a new franchise agreement, and in the event the costs thereof exceed the $80,000 referenced above, additional portions of the funds referenced in Sections 6.01 or 6.02 (of the Plan) may also be used, if, as and when needed to enable such further capital improvements and repairs, the Proponent, its principals (as applicable), and the Reorganized Debtor shall apply as soon as possible for approval of the new license.

The Class 6 Claim is Impaired and the holder of the Class 6 Claim is entitled to vote to accept or reject the Plan.

6.07.    **Class 7 Claims**.  The Class 7 Claims will be paid as Allowed and as follows:

**Class 7.1 Claims — Certain Claims in Excess of $15,000**

The Class 7.1 Claims that are not otherwise assigned to one of the Class 1 through 6 above that are Allowed Unsecured Claims shall be paid 10.00% of their claims over five (5) years.  The payments will be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until such 10% of their claims are paid.

The Proponent is not aware of the existence of any Class 7.1 Claims in light of the treatment of the Class 4.1 and 4.2 Claims and the cure of defaults and assumption of the franchise agreement in Class 6.  Otherwise, the holders of Class 4.1 and 4.2 claims shall be treated in accordance with Class 7.1.

In the event of a default under the Plan, the holder of a claim in this Class 7.1 or such holder's counsel shall provide notice of the default via facsimile to counsel for the Reorganized Debtor and by mail to the Reorganized Debtor.  Such default shall be cured within fifteen (15) business days of the date of transmission of such notice of default. In the event the default is not cured, the Claimant shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court. The Claimant shall only be required to provide two (2) notices of default. Upon a third event of default, the Claimant shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. The holders of the Class 7.1 Claims shall not be bound by any release provisions in the Plan that would release any liability of its guarantors to the holders of the Class 7.1 Claims.

---

[3] Gupreet Dhaliwal is a physician whose primary occupation is health care, whereas Dhillon is a full time owner and/or operator of hotels.

Page 17 of 26

**EXHIBIT A**

The Class 7.1 Claims are Impaired and the holders of any Class 7.1 Claims are entitled to vote to accept or reject the Plan.

**Class 7.2 Claims — Certain Claims of $15,000 or Under.**

The Class 7.2 Claims that are Allowed Unsecured Claims shall be paid (a) in full the Allowed Amount of their Unsecured Claims, but without post-petition interest, if all Allowed Class 7.2 Claims in the aggregate total $40,000 or less or (b) the Pro Rata share due on account of such Allowed Claim applied against an available base of $40,000, where the Allowed Amount of the principal of each such Class 7.2 (without post-petition interest) is the numerator and the aggregate amount of all Allowed Class 7.2 Claims, in the aggregate, is the denominator.

Allowed Class 7.2 Claims that are not Contested Claims shall be paid in full and without interest in six (6) equal monthly installments beginning with the 30th day after the Effective Date and continuing on the 30th day of each month thereafter for five more months (for a total of six (6) payments).

Class 7.2 Claims that become Allowed Claims after first being Contested Claims shall be paid on the later of (a) the dates specified in the foregoing subparagraph and (b) the first Business Day following the thirtieth (30th) day after such Claim becomes an Allowed Claim by Final Order.

The Reorganized Debtor shall make reservation on account of payments which may, within reason, be due on account of Disputed Class 7.2 Claims. If the ratable payment provisions applicable to Class 7.2 are in effect, the Reorganized Debtor may make reasonable partial or anticipatory distributions on account of Class 7.2 Claims that are already then Allowed Claims.

In either case, if there is any dispute as to the reasonableness of any reserve, any partial or anticipatory payment, refusal to make any reserve, or refusal to make any partial or anticipatory payment, such determination shall be made by the Bankruptcy Court, giving due deference to the business judgment of the Reorganized Debtor.

The Class 7.2 Claims are Impaired and the holder of the Class 7 Claims are entitled to vote to accept or reject the Plan.

**6.08.   Class 8 Claims**.   The Class 8 Claims will be treated as follows.

On the Confirmation Date, all equity interests pre-dating the Confirmation Date shall be cancelled conditioned on the subsequent occurrence of the Effective Date, and such holders shall receive and retain nothing on account of such equity interests.   (However, as provided below, Dhillon will reemerge as the holder of 100% of the member interests in the Reorganized Debtor, as set forth in Article VI below).

**ARTICLE VII**
**MEANS OF IMPLEMENTATION OF PLAN**

This Plan will be implemented, pursuant to § 1123(a)(5) of the Code, by the commencement of payments as called for above. In order to implement the Plan, the following shall occur:

**7.01**   The total of $200,000.00 shall be deposited into Proponent's Counsel's Trust Account prior to the Confirmation Date. If the Plan is not Confirmed, the $200,000.00 will be returned to those contributing such funds.

Page 18 of 26

**EXHIBIT A**

Dhillon and/or other entities or individuals may be the source of the funds for implementation of the Plan, and the source(s) of funds will be disclosed at confirmation, but as of October 3, 2011 Dhillon anticipates that he will be the sole source of funds.

7.02    Conditioned upon the occurrence of the Effective Date, the Proponent or other persons or parties receiving the new equity in the Reorganized Debtor in accordance with Class 4C shall contribute, if, as and when needed, up to an additional $150,000.00 as required (a) to avoid and/or cure any default under the terms of this Competing Plan, (b) to fund additional capital improvements or repairs as required by the new franchise agreement, or (c) both.

7.03    Proponent or other persons or parties receiving the new equity in the Reorganized Debtor in accordance with Class 4C shall additionally provide cash on the Effective Date, if and as required, in order to satisfy any new franchisee fees, Property Improvement Plan, or the like, as required by Holiday Inn in connection with approving the Reorganized Debtor as an authorized Holiday Inn franchisee, up to a total of $80,000.

7.04    Upon entry of the Confirmation Order: the Interim Manager shall take immediate, complete, and sole control of all assets of the Debtor and its Estate, including without limitation the Debtor's premises, cash and cash management systems, payment systems, and intellectual property, and shall operate the businesses of the Debtor and its Estate from entry of the Confirmation Order through and including implementation of the Plan, satisfaction of any conditions to the Effective Date, and conclusion of the Effective Date. Upon the occurrence of the Effective Date, the Interim Manager shall turn over all such assets and operations to the Reorganized Debtor and management designated by the new owner. If the Effective Date does not occur, the Interim Manager shall, upon further order of the Bankruptcy Court, turn over such assets and operations to the persons or parties as the Bankruptcy Court may then direct. The Interim Manager will be Jag Dhillon or Jay Karatokin, the latter of whom is an employee of DMC Hotels, the hotel management company operated by Dhillon, or someone who is acceptable to HHFI. HHFI under the existing license has the right to approve the Interim Manager in its sole discretion.  The management agreement must be acceptable to HHFI and comply with HHFI's requirements.

7.05    Upon entry of the Confirmation Order, the Debtor, the Class 8 holders, any managers of any of them, or the agents, servants, employees, attorneys, accountants, advisors, or persons controlled by any of the foregoing shall abstain from withdrawing, transferring, otherwise utilizing or taking any other steps affecting the possession, use of, or control over any cash, cash equivalents, accounts, receivables, or other funds belonging to the Debtor, except insofar as such other steps are to facilitate the transfer of such assets to the control of the Interim Manager.  Also upon entry of the Confirmation Order, all banks or other financial institutions holding accounts of the Debtor shall immediately allow the Interim Manager to take any and all steps necessary to obtain and sign replacement or new signature cards for each of the Debtor's accounts and to remove any and all prior signatories or authorized users from the Debtor's accounts.

The Proponent and/or Reorganized may petition the Court at any time for additional relief with respect to the Debtor's assets in order to fully transition control of the Property and all related assets.

7.06    Without limitation, on the Confirmation Date, (a) all cash, cash  equivalents, accounts, receivables, contract rights, other current assets, accounting records, checking account ledgers, business records, bills, invoices, and all other operational records wherever situated and however comprised, (b) all computers, servers, hard drives, back-up drives, hand held electronic devices, other portable electronic devices, other computer hardware, all computer software and associated documentation, all computer software licenses and associated documentation, and all other devices or computerized means used for the entry, storage, processing, restatement, presentation, or rendition of data by or for the Debtor in its

Page 19 of 26

operations, finances, management, franchise compliance, litigation (including this Bankruptcy Case), or otherwise beneficial to the implementation of this Plan, whether owned by the Debtor, leased to the Debtor, or used by the Debtor with permission of any third party and wherever situated, shall be turned over by the Debtor, the Class 8 holders, any managers of any of them, or the agents, servants, employees, attorneys, accountants, advisors, or persons controlled by any of the foregoing, to the interim manager designated by the Proponent in the Confirmation Order. All such data and materials shall be used by the Interim Manager in accordance with Section 6.03 above. All parties in interest, including without limitation the Debtor, the Class 8 holders, any managers of any of them, or the agents, servants, employees, attorneys, accountants, advisors, or persons controlled by any of the foregoing shall take appropriate steps to preserve and protect the foregoing data and materials at all times prior to the Confirmation Date, and no such party in interest shall be excused by virtue of the Plan from any inappropriate spoliation of any such data or materials. If the Effective Date does not occur and the Confirmation Order is vacated, the interim manager shall then turn over all such date and materials to the persons or parties as may be directed by the Bankruptcy Court.

**7.07**    The Interim Manager shall be nominated by the Proponent at or before the Confirmation Hearing and shall be approved by (and subject to approval by) the Bankruptcy Court in the Confirmation Order in accordance with 11 U.S.C. § 1129(a)(5) and in a separate, stand-alone order which shall survive in the event of any vacatur of the Confirmation Order in the event the Effective Date does not occur. The Confirmation Order and the separate, stand-alone order so approving the Interim Manager shall further provide that the Interim Manager shall be held harmless by the Estate for any claims or liabilities associated with service as Interim Manager, save and except for claims or liabilities which, after Final Order of a Court of competent jurisdiction, are determined to have arisen from the Interim Manager's actual fraud, malfeasance, or self-dealing. The compensation of the Interim Manager shall also be subject to approval by the Bankruptcy Court in the Confirmation and in the separate, stand-alone order.

**7.08**    The Interim Manager shall be authorized, in its sole discretion, but not required to designate itself, the Proponent, and any other persons designated to receive new equity in the Reorganized Debtor pursuant to Class 4C of this Plan as coinsureds or additional insureds in and under any insurance policies owned, benefitting, or obtained by the Debtor, Estate, or Reorganized Debtor, at the expense of the Debtor, Estate, and Reorganized Debtor, so as to provide coverage to such persons during the period of service by the Interim Manager.

**7.09.**    If, prior to the Effective Date, Proponent determines, in its sole discretion, that circumstances exist which render it disadvantageous to Proponent to acquire the Debtor as an entity, then Proponent may instead elect to close this Competing Plan as an asset acquisition and, in such event, (a) all assets of the Debtor that would otherwise be obtained by and transferred to the Reorganized Debtor by virtue of this Competing Plan shall instead be transferred to the acquiring entity designated by the Proponent; (b) all rights and privileges of the Reorganized Debtor to obtain immediate management of the Debtor's property and control of Debtor's cash, accounts, current assets, and the like shall instead pass upon entry of the Confirmation Order to the acquiring entity designated by the Proponent; (c) all scheduled payments to each class contemplated in the Plan will instead become, conditioned upon the occurrence of the Effective Date, the obligation of and shall be performed by the acquiring entity designated by Proponent just as if the Debtor's entity had been acquired; (d) all cash and other consideration which is designated to be contributed to or transferred to the capital of the Reorganized Debtor shall instead be contributed to or transferred to the capital of the acquisition entity designated by the Proponent; (e) all executory contracts and unexpired leases assumed by the Debtor or to be assumed by the Reorganized Debtor shall instead be assumed and assigned to the acquisition entity designated by the Proponent; (f) all discharge and injunctive provisions otherwise benefitting the Debtor, Reorganized Debtor, or both shall also inure to the benefit of the acquisition entity designated by the Proponent as successor to the Debtor and Reorganized Debtor; and (g) as appropriate, all references in this Competing

Page 20 of 26

Plan to Reorganized Debtor shall mean or shall include, as the case may be, the acquisition entity designated by the Proponent. Circumstances leading to such and election by the Proponent may include, without limitation, discovery that the Debtor has previously opted or taken other actions causing it to be taxed as a corporation rather than as a partnership.

## ARTICLE VIII
## FEASIBILITY OF PLAN

**8.01**    The Proponent asserts that its plan is feasible based on **Exhibits 4 and 5.**

**Procedure for Filing Proofs of Claims and Proofs of Interests.**

**8.02**    All Proofs of Claims and Proofs of Interests must be filed by those Claimants and Equity Interest Holders who have not filed such instruments on or before the Bar Date fixed by the Court.

**8.03**    If Claimants have already filed a Proof of Claim with the Court or are listed in the Debtor's Schedules as holding non-contingent, liquidated and undisputed claims, a Proof of Claim need not be filed. The schedules and amendments thereto are on file with the Court and are open for inspection during regular Court hours. If the equity security interest of an Equity Interest Holder is properly reflected in the Debtor, a Proof of Interest need not be filed.

## ARTICLE IX
## ALTERNATIVES TO THE PROPONENT'S PLAN

**9.01**    If the Debtor's Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a Trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. Since the Debtor's assets are heavily mortgaged, the Proponent projects that there would be little or no distribution to creditors in Chapter 7.

## ARTICLE X
## RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

**10.01**    Claimants should be aware that there are a number of substantial risks involved in consummation of the Plan.

The Plan contemplates that the Debtor's reorganized business will generate revenue sufficient to pay the obligations accruing from its operations. The Proponent does not "guarantee" that the expenses will equal those in the projections; however, the Proponent believes that the projections are reasonable.

It is possible that HHFI will not grant a new license to Dhillon. In such event, Dhillon would seek to obtain a license under a different "flag" such as, for example and without limitation, a Best Western, Fairfield Inn, or similar brand, and this may delay implementation of the Plan and possibly prevent implementation of the Plan. Dhillon believes that each application process requires approximately sixty (60) days from start to completion, and it is possible to pursue one or more applications simultaneously. In any event, the Effective Date is contingent upon obtaining a new HHFI license or other major hotel franchise agreement. The Proponent believes that the projections of revenues attached hereto (and the Reorganized Debtor's ability to satisfy claims as described in the Plan) would not be materially different in the event that the Proponent obtains a hotel franchise other than Holiday Inn Express. In any event, the Effective Date, and the Proponent's ability to implement the Plan may occur more than thirty (30) days after the Confirmation Date.

Page 21 of 26

## EXHIBIT A

Proponent and this Disclosure Statement necessarily rely on financial reporting and forward looking projections prepared by the Debtor's pre-confirmation management. Proponent cannot warrant the accuracy of these materials especially since Gupreet Dhaliwal has excluded the Proponent from the management of the hotel since 2008. If material errors in such information are discovered between the entry of the Confirmation Order and the Effective Date, such errors might, in theory or in reality, result in the Competing Plan not being implemented and the Order Confirming the Competing Plan being vacated. Further, if material errors in such information are discovered after the Effective Date, such errors might, in theory or in reality, result in a failure of the Competing Plan or any other plan of reorganization. A failure of the Competing Plan or of any other plan of reorganization after confirmation might, in theory or conceivably in reality, possibly lead to the liquidation of the Debtor or Reorganized Debtor. Furthermore, even when forward looking projections in any case are prepared based on the most accurate available information, using the best techniques, relying on otherwise sound judgment and the best intentions, there is never a guarantee that results presented in forward looking projections will be realized in actual performance.

ARTICLE XI

TAX CONSEQUENCES TO THE DEBTOR

TO ENSURE COMPLIANCE WITH U.S. TREASURY DEPARTMENT CIRCULAR 230, HOLDERS OF CLAIMS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF UNITED STATES FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED OR RELIED UPON, AND CANNOT BE USED OR RELIED UPON, BY HOLDERS OF CLAIMS OR INTERESTS OR ANY OTHER PERSONS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON HOLDERS OF CLAIMS OR ANY OTHER PERSONS UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS INCLUDED HEREIN IN CONNECTION WITH THE PROMOTION OR MARKETING (WITHIN THE MEANING OF U.S. TREASURY DEPARTMENT CIRCULAR 230) OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS AND INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISER.

    A.    Introduction

The following discussion summarizes certain material U.S. Federal Income Tax consequences of the Plan to the Debtor and holders of Claims and Interests. The summary is provided for general informational purposes only and is based on the United States Internal Revenue Code of 1986, as amended (the "Tax Code"), the treasury regulations promulgated thereunder, judicial authority and current administrative rulings and practice, all as in effect as of the date hereof (except as otherwise noted below with regard to the American Recovery and Reinvestment Act of 2009), and all of which are subject to change, possibly with retroactive effect. Changes in any of these authorities or in their interpretation could cause the United States Federal Income Tax consequences of the Plan to differ materially from the consequences described below. The United States Federal Income Tax consequences of the Plan are complex and in important respects uncertain. No ruling has been requested from the Internal Revenue Service (the "Service"); no opinion has been requested from the Debtor's counsel or the Proponent's counsel concerning any tax consequence of the Plan; and no tax opinion is given by this Disclosure Statement.

The following discussion does not address all aspects of federal income taxation that may be relevant to a particular holder of a Claim or Interest in light of its particular facts and circumstances or to particular types of holders of Claims subject to special treatment under the Tax Code. For example, the discussion does not address issues of concern to broker-dealers or other dealers in securities, or foreign

Page 22 of 26

(non-U.S.) persons, nor does it address any aspects of state, local, or foreign (non-U.S.) taxation, or the taxation of holders of Interests in a Debtor. In addition, a substantial amount of time may elapse between the Confirmation Date and the receipt of a final distribution under the Plan. Events subsequent to the date of this Disclosure Statement, such as the enactment of additional tax legislation, court decisions or administrative changes, could affect the federal income tax consequences of the Plan and the transactions contemplated hereunder.

**On February 13, 2009, the House of Representatives and the Senate passed H.R.1, the American Recovery and Reinvestment Act of 2009 (the Recovery Act), a stimulus bill that includes tax breaks for businesses and individuals. The President signed the Recovery Act on February 17, 2009. The following discussion does not address any aspects of the Recovery Act, some of which may be relevant to a particular holder of a Claim or an Interest.**

**THE DISCUSSION THAT FOLLOWS IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND PROFESSIONAL TAX ADVICE BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST. EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH ITS TAX ADVISORS REGARDING THE FEDERAL, STATE, LOCAL AND NON-U.S. TAX CONSEQUENCES OF THE PLAN.**

B.      Certain Definitions

Except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined herein or in the Plan shall have the respective meanings assigned to them in this Article.

"*COD*" shall mean cancellation of indebtedness income.

"*NOL*" shall mean net operating loss.

C.      Certain Material Federal Income Tax Consequences to the Debtor

The effect of the Plan on Debtor will be different depending upon how Debtor is taxed, whether taxed as a partnership or as a corporation for federal income tax purposes. Unless Debtor elected to be taxed as a corporation, it will be taxed as a partnership for federal income tax purposes.

The Proponent believes that the Debtor has _not_ elected to be taxed as a corporation, but the Proponent cannot verify the absence of such election due to the lack of access the Proponent has had to the Debtor's books and records.  The Proponent provides the following discussion in light of the uncertainty raised by some creditors as to the tax status of the Debtor.

Election to be Taxed as a Corporation. If Debtor elected to be taxed as a corporation for federal income tax purposes, then the cancellation of a Debtor's debt is generally taxable income to the Debtor. COD is the amount by which the indebtedness of a Debtor discharged exceeds any consideration given in exchange therefore.  However, cancellation of a debt may not necessarily be COD.  To the extent that the Debtor is insolvent, or if the Debtor is in bankruptcy, as is the case here, Section 108 of the Tax Code permits the Debtor to exclude the COD from its gross income.  The statutory exclusion for COD in a Title 11 case generally excludes COD from gross income if the discharge is granted by a court to a Debtor under its jurisdiction in a Title 11 case, as is sought herein.

Section 108 of the Tax Code provides that the price for the bankruptcy COD exclusion (as well as the insolvency exclusion) is reduction of the Debtor's tax attributes to the extent of the COD income,

**EXHIBIT A**

generally in the following order: (1) NOLs for the year of the discharge and any net NOL carryovers from prior years; (2) general business tax credit carryovers; (3) minimum tax credit available as of the beginning of the year following the year of discharge; (4) net capital loss for the year of discharge and capital loss carryovers from prior years; (5) basis of the Debtor's assets; (6) passive activity loss and credit carryovers from the year of discharge; and (7) foreign tax credit carryovers to or from the year of discharge. The reduction of attributes does not occur until after the end of the Debtor's tax year in which the COD occurred, so they are available to the Debtor in determining the amount of its income, loss and tax liability for the year of discharge. Debtor may, however, elect under Section 108 of the Tax Code to reduce the basis of depreciable property by the amount of the COD income, in lieu of the above attribute reduction.

As a result of the implementation of the Plan, the Debtor will have COD and potential attribute reduction or may elect to reduce the basis of its tangible personal property. Because any reduction in tax attributes does not effectively occur until the first day of the taxable year following the taxable year in which the COD is incurred, the resulting COD, on its own, should not impair the ability of the Debtor to use their tax attributes (to the extent otherwise available) to reduce their tax liability, if any, otherwise resulting from the implementation of the Plan.

Under Section 382 of the Tax Code, if a corporation undergoes an "ownership shift," the amount of its Pre-Change Losses that may be utilized to offset future taxable income generally is subject to an annual limitation. The Plan provides for an ownership change which likely will limit the ability of Debtor to claim any Pre-Change Losses to offset future taxable income.

<u>Taxed as a Partnership.</u> Section 108 of the Tax Code applies to Debtor if it is taxed as a corporation, but does not apply to the owners of Debtor if Debtor is taxed as a partnership, since partnerships for tax purposes are generally not subject to tax, and any income therefrom flows through to the partnership's partners, in this case, its members. Thus, cancellation of indebtedness will have no income tax effect on Debtor, nor require any attribute reduction by Debtor, if Debtor is taxed as a partnership for federal income tax purposes.

Section 708 of the Tax Code provides that a partnership will be considered terminated for tax purposes if there is a sale or exchange of fifty percent (50%) or more of the capital and profits interest of the partnership. Since the Plan provides for a transfer of all of the capital and profits interest in the Debtor, a taxable termination will occur. Such termination should have no tax effect on the Debtor, other than to terminate its tax year and begin a new one with the new owner, although in certain circumstances it can trigger a tax to the owners of the partnership. Since the Plan contemplates a transfer of the entire ownership interest by the owners of Debtor, the tax effect of the transfer would also include the same tax effect as the termination.

<u>Tax Effect to Holders of Claims.</u> If New Global determines that it is disadvantageous to acquire the ownership interest in Debtor and instead elects to purchase the assets of Debtor, such a transfer will be treated as a sale of Debtor's assets and a termination of the partnership. There should be no tax effect to Debtor as a result of such sale and the tax effect to the owners of Debtor would likely be the same as a sale of such owners' interest in Debtor.

The United States Federal Income Tax consequences of payment of Allowed Claims pursuant to the Plan will depend on, among other things, the consideration received, or deemed to have been received, by the holder of the Allowed Claim, whether such holder reports income on the accrual or cash method, whether such holder receives distributions under the Plan in more than one taxable year, whether such holder's Claim is allowed or disputed at the Effective Date, whether such holder has taken a bad debt deduction or worthless security deduction with respect to its Claim.

Page 24 of 26

In general, a holder of a Claim should recognize gain or loss equal to the amount realized under the Plan in respect of its Claim less the amount of such holder's basis in its Claim. Any gain or loss recognized in the exchange may be long-term or short-term capital gain or loss, or ordinary income or loss, depending upon the nature of the Claim and the holder, the length of time the holder held the Claim and whether the Claim was acquired at a market discount. If the holder realizes a capital loss, its deduction of the loss may be subject to limitations under the Tax Code. The holder's aggregate tax basis for any property received under the Plan generally will equal the amount realized. The amount realized by a holder generally will equal the sum of the cash and the fair market value of any other property received (or deemed received) by the holder under the Plan on the Effective Date and/or any subsequent distribution date, less the amount (if any) allocable to Claims for interest. All holders of Allowed Claims are urged to consult their tax advisors. A holder of a Claim constituting an installment obligation for tax purposes may be required to recognize currently any gain remaining with respect to the obligation if, pursuant to the Plan, the obligation is considered to be satisfied at other than its face value, distributed, transmitted, sold or otherwise disposed of within the meaning of Section 453B of the Tax Code.

D.    Importance of Obtaining Professional Tax Assistance

The foregoing discussion is intended only as a summary of certain U.S. Federal Income Tax consequences of the Plan, and is not a substitute for careful tax planning with a tax professional. The above discussion is for general information purposes only and is not tax advice. The tax consequences are in many cases uncertain and may vary depending on a holder's individual circumstances.

HOLDERS OF CLAIMS ARE URGED TO CONSULT WITH THEIR TAX ADVISORS ABOUT THE FEDERAL, STATE, LOCAL AND NON-U.S. TAX CONSEQUENCES OF THE PLAN.

ARTICLE XII
PENDING LITIGATION

**12.01**    As of the date of the filing of this Disclosure Statement the significant matters pending affecting the Debtor are as follows: **None.**

Dhillon currently is one of several defendant in two civil actions pending in the United States District Court for the Central District of California, Case No. #: 2:11-cv-03724-RGK –VBK and Case No. #: 2:11-cv-06970-RGK –VBK. This litigation involves former business partners and erupted after the recession in the United States that commenced in 2008. In Case No. 2:11-cv-06970-rgk-vbk, the Plaintiff(s) assert against Dhillon and other defendants the following causes of action: rescission based on fraud, common-law fraud, fraudulent concealment, unfair business practice and violation of California Business and Professions Code § 17200 et. seq. In Case No. 2:11-cv-03724-rgk-vbk, the Plaintiff(s) assert against Dhillon and other defendants the following causes of action: breach of fiduciary duty, fraud, fraudulent concealment, false promise, violation of 18 U.S.C. § 1962(c); unfair business practice and violation of California Business and Professions Code § 17200 et. seq. No judgments have been entered, and Dhillon is vigorously defending the litigation. Such litigation is pending and is in the early stages of motion practice. As of October 3, 2011 a motion to dismiss filed by Dhillon is pending in each action.

Dhillon is also an owner and/or manager and/or managing member of other single asset entity hotels which have been involved in other Chapter 11 bankruptcy proceedings. The table below shows those cases and the current procedural status of each.

| Debtor | Case # | Bankruptcy Court | Current Status as of Oct. 3, 2011 |
|--------|--------|------------------|-----------------------------------|

Page 25 of 26

**EXHIBIT A**

| Debtor | Case # | Bankruptcy Court | Current Status as of Oct. 3, 2011 |
|---|---|---|---|
| Elko Gold Mine, Llc, | 11-50084 | District of Nevada | Disclosure statement approved. Plan voting underway. |
| Guru Properties LLC | 11-10101 | Western District of Oklahoma | Plan confirmed August 23, 2011 |
| Shawnee Hospitality, LLC | 10-43828 | Eastern District of Texas | Plan confirmed July 18, 2011 |
| Parkwood Hospitality, LLC | 11-14863 | Western District of Oklahoma | Case filed September, 2, 2011 |

ARTICLE XIII
SUMMARY OF SIGNIFICANT ORDERS ENTERED DURING THE CASE

13.01   As of the date of the filing of this Disclosure Statement the following significant orders have been entered in this case: Order to Use Cash Collateral (Docket No. 26), Order on Debtor's Application to Employ Counsel (Docket No. 28), and Order on Debtor's Application to Employ Accountant (Docket No. 29), Order Denying Debtor's Request to Extend Exclusivity (Docket No. 86).

Debtor's First Amended Disclosure Statement was approved by this Court on September 6, 2011, and this Court set a hearing on confirmation of Debtor's Chapter 11 plan for November 14, 2011.

Dated: October 7, 2011

Respectfully submitted,

_/s/ Jagmohan Dhillon_
JAGMOHAN DHILLON

_/s/ Jeff Carruth_
Jeff D. Carruth
State of Texas Bar No. 24001846
Weycer, Kaplan, Pulaski & Zuber, P.C.
3030 Matlock Rd., Suite 201
Arlington, TX 76015
(817) 795-5046 – Telephone
(866) 666-5322 – Facsimile
jcarruth@wkpz.com

ATTORNEYS FOR JAGMOHAN DHILLON

Page 26 of 26

**EXHIBIT A**

---

**EXHIBIT 1**

---

Jeff D. Carruth
WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
3030 Matlock Rd., Suite 201
Arlington, TX 76015
(817) 795-5046 – Telephone
(866) 666-5322 – Facsimile
jcarruth@wkpz.com

**ATTORNEYS FOR JAGMOHAN DHILLON**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| MID WEST HOTEL LODGING, LLC, | § | CASE NO: 11-40629-BTR-11 |
|     Debtor in Possession | § | CHAPTER 11 |

**SECOND AMENDED COMPETING PLAN OF REORGANIZATION**
**OF JAGMOHAN DHILLON**

**<u>DATED OCTOBER 7, 2011</u>**

"Dhillon" or the "Proponent" proposes the following Second Amended Competing Plan of Reorganization ("Plan") dated October 7, 2011, pursuant to Chapter 11 of the United States Bankruptcy Code on behalf of the Debtor. The Debtor's profitability to fund its Plan is based on the amount of money that it will earn from the continued operation of its business.

Page 1 of 22

**EXHIBIT A**

---

**EXHIBIT 1**

---

## ARTICLE I
## DEFINITIONS AND USE OF TERMS

    **1.01**   **Defined Terms.**  Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this Section 1.01.

    **1.02**   **Administrative Claim or Expense** means an administrative expense or Claim described in Section 503 of the Bankruptcy Code and entitled to administrative priority pursuant to Section 507(a)(1) of the Bankruptcy Code, including, but not limited to, Claims for compensation of professionals made pursuant to Sections 330 and 331 of the Bankruptcy Code, and all fees and charges assessed against the Debtor and Debtor's property under 28 U.S.C. Section 1930.

    **1.03**   **Administrative Tax Claim** means an Unsecured Claim by any governmental unit for taxes (including interest or penalties related to such taxes) for any tax year or period, all or a portion of which occurs or falls within the period from and including the Petition Date through the Effective Date.

    **1.04**   **Allowed Claim** means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that (i) a Proof of Claim, proof of Interest, or request for payment was timely Filed or, with leave of the Bankruptcy Court, late Filed, and as to which no objection has been timely Filed or, if Filed, is allowed by a Final Order, unless otherwise provided in this Plan or (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and to which no objection has been timely Filed or, if Filed, is allowed by a Final Order.

    **1.05**   **Allowed Secured Claim** means any Allowed Claim secured by a lien, security interest, or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof (determined in accordance with Bankruptcy Code Section 506(a)).

    **1.06**   **Assets** means all property of the Reorganized Debtor.

    **1.07**   **Bankruptcy Code or Code** means the United States Bankruptcy Code, Title 11 of the United States Code Section 101 et seq., as amended.

    **1.08**   **Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division or such other court that may have jurisdiction with respect to the reorganization of the Debtor pursuant to Chapter 11 of the Bankruptcy Code.

    **1.09**   **Bankruptcy Rule** means the Federal Rules of Bankruptcy Procedure.

    **1.10**   **Bar Date** means that date subsequent to which a proof of pre-petition Claim may not timely be Filed or the date by which proofs of claims held by governmental agencies must be Filed.

    **1.11**   **Case** means this Chapter 11 Bankruptcy Case in the Bankruptcy Court.

    **1.12**   **Claim** shall have the meaning set forth in Bankruptcy Code Section 101(5).

    **1.13**   **Claimant** means any person or entity having or asserting a Claim in the case.

    **1.14**   **Class** or **Classes** mean all of the holders of Claims or Interests that the Proponent has designated pursuant to Section 1123(a)(1) of the Bankruptcy Code as having substantially similar characteristics as described in Article IV of this Plan.

Page 2 of 22

**EXHIBIT A**

---

**EXHIBIT 1**

---

1.15    **Competing Plan** means this Plan and is used interchangeably with "Plan."

1.16    **Confirmation** means the entry by the Bankruptcy Court of a Confirmation Order confirming this Plan.

1.17    **Confirmation Date** means the date on which the Confirmation Order is entered.

1.18    **Confirmation Hearing** means the hearing or hearings held before the Bankruptcy Court in which the Proponent will seek Confirmation of this Plan.

1.19    **Confirmation Order** means the Order of the Court confirming this Plan under Section 1129 of the Bankruptcy Code.

1.20    **Contested** when used with respect to a Claim, means a Claim against the Debtor (a) that is listed in the Debtor's Schedules of Assets and Liabilities as disputed, contingent, or unliquidated; (b) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

1.21    **Contested Claim** means any Claim that is Contested or that is otherwise not an Allowed Claim.

1.22    **Creditor** shall have the meaning specified by Section 101(9) of the Code.

1.23    **Debtor** means Mid West Hotel Lodging, LLC. For any use of the term "Debtor" that refers to an act or event that occurs on or after the Effective Date, the term "Debtor" shall mean and refer to the Reorganized Debtor.

1.24    **Disputed Claim** means any Claim that is not an Allowed Claim.

1.25    **Effective Date** means the later of thirty days after the Confirmation Date and the first business day following the satisfaction of all conditions to the Effective Date.

1.26    **Estate** means the estate created pursuant to Bankruptcy Code Section 541 with respect to the Debtor.

1.27    **Fee Claim** means a Claim under Bankruptcy Code Sections 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in the Debtor's Chapter 11 case.

1.28    **Filed** means physically and/or electronically delivered to the Clerk of the Bankruptcy Court in accordance with applicable rules.

1.29    **Final Order** means an Order as to which any appeal that has been taken has not been stayed following the expiration of the time for appeal or has been resolved, or as to which the time for appeal has expired.

1.30    **General Unsecured Claim** means Unsecured Claim that is not entitled to priority under Section 507(a) of the Bankruptcy Code.

Page 3 of 22

**EXHIBIT A**

---

**EXHIBIT 1**

**1.31** **Impaired** means the treatment of an Allowed Claim pursuant to the Plan unless, with respect to such Claim, either (i) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim, or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, the Debtor (A) cures any default that occurred before or after the commencement of the Chapter 11 Case on the Petition Date, other than default of the kind specified in Section 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim as such maturity existed before such default; (c) compensates the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim; or (iii) the Plan provides that on the Effective Date, the holder of such Claim receives, on account of such Claim, cash equal to the Allowed Amount of such Claim.

**1.32** **HHFI** means Holiday Hospitality Franchising, Inc.

**1.33** **Interest Holders** means all parties holding any pre-petition or pre-Confirmation equity interest in the Debtor.

**1.34** **Interim Manager** means that person or entity designated by the Proponent in accordance with Article VI of this Plan to manage the business of the Debtor and to take control of Debtor's assets and operations immediately from entry of the Confirmation Order through and including implementation of the Plan, satisfaction of any conditions to the Effective Date, and conclusion of the Effective Date.

**1.35** **Petition Date** means February 28, 2011, the date the Debtor's voluntary petition was filed commencing this bankruptcy case.

**1.36** **Plan** means this Plan of Reorganization, as it may be amended or modified from time to time as permitted herein and by the Bankruptcy Court, and may also be referred to form time to time as a Competing Plan. Plan and **Competing Plan** shall be interchangeable terms.

**1.37** **Pre-petition** means prior to the Petition Date.

**1.38** **Priority Tax Claim** means a Claim entitled to priority pursuant to Bankruptcy Code Section 507(a)(8).

**1.39** **Pro Rata** means proportionately, based on the percentage that the amount of an Allowed Claim within a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

**1.40** **Property of the Estate** means all property in which the Debtor holds a legal or an equitable interest, including all property described in Bankruptcy Code Section 541.

**1.41** **Proponent** shall mean and refer to Jagmohan Dhillon.

**1.42** **Reorganized Debtor** means the Debtor from and after entry of the Confirmation Order confirming this Competing Plan.

**1.43** **Rejection Claim** means any Claim arising pursuant to Bankruptcy Code Section 502(g) by reason of rejection by the Debtor of an executory contract or unexpired lease pursuant to Bankruptcy Code Sections 365 or 1123(b)(2).

Page 4 of 22

**EXHIBIT A**

---

**EXHIBIT 1**

---

1.44     **Secured Claim** means any Claim secured by a lien, security interest, or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof (determined in accordance with Bankruptcy Code Section 506(a)).

1.45     **Secured Tax Claim** means any Tax Claim which is secured by real or personal property.

1.46     **Secured Creditor** or **Secured Claimant** means any Claimant holding an allowed Secured Claim.

1.47     **Unimpaired** means not Impaired.

1.48     **Unsecured Claim** means any Claim not collateralized (or the extent not fully collateralized) by assets of the Debtor.

1.49     **Unsecured Claimants** or **Unsecured Creditors** means any holder of an allowed Unsecured Claim.

1.50     **Voidable Transfer** means all transfers voidable under Sections 544, 545, 547, 548, 549 and/or 550 of the Code or any other state or federal transfer.

1.51     **Number and Gender of Words.** Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context. Words of any gender shall include each other gender where appropriate.

1.52     **Terms Defined in the Bankruptcy Code.** Capitalized terms not specifically defined in Section 1.01 of the Plan shall have the definitions given those terms, if applicable, in the Bankruptcy Code.

1.53     **Headings.** The headings and captions used in this Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

1.54     **Time Computation.** In computing any period of time prescribed herein, the provisions of Federal Rule of Bankruptcy Procedure Rule 9006(a) shall apply.

### ARTICLE II
### CONCEPT OF THE PLAN

2.01     **Generally.** The Plan is a plan of reorganization. The Debtor as reorganized under the Plan shall continue its business after the Confirmation Date. The Debtor's primary business has been, and as the Reorganized Debtor shall continue to be, the ownership and operation of a hotel doing business as Holiday Inn Express Gainesville located at 320 North Interstate 35, Gainesville, Texas 76240.

The Proponent's Plan proposes to pay the creditors pursuant to the Claim Summary and Plan Payment Schedule set forth in the exhibits.

It also contemplates that old equity will be cancelled and that for the cash consideration and other value to be provided as set forth herein that Dhillon will emerge as the holder of 100% of the interests of the Reorganized Debtor. Dhillon intends to apply for a new license with HHFI in order to operate post-confirmation as a Holiday Inn Express. That application, however, may or may not be approved in HHFI's sole and absolute discretion.

Page 5 of 22

---

# EXHIBIT A

---

**EXHIBIT 1**

---

## ARTICLE III
## GENERAL TERMS AND CONDITIONS

**3.01    Treatment of Claims**. This Plan is intended to resolve all Claims against the Bankruptcy Estate, Debtor and/or property of the Debtor of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to Bankruptcy Code Section 502(a). However, only Allowed Claims will receive treatment afforded by the Plan. The Plan is designed to insure that Claimants shall receive at least as much pursuant to this Plan as they would receive in a liquidation pursuant to Chapter 7 of the Bankruptcy Code.

**3.02    Time for Filing Claims**. The holder of any Administrative Claim other than (i) a Fee Claim, (ii) a liability incurred and paid in the ordinary course of business by the Debtor, or (iii) an Allowed Administrative Claim, must file with the Bankruptcy Court and serve on the Debtor and its counsel, Proponent and its counsel, and the Reorganized Debtor and its counsel notice of such Administrative Claim within thirty (30) days after the Effective Date. At a minimum, such notice must identify (i) the name of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

Each Person asserting an Administrative Expense that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on the Debtor's and Debtor's counsel, Proponent's and Proponent's counsel, the Reorganized Debtor and the Reorganized Debtor's counsel, and the U. S. Trustee, a Fee Application within sixty (60) days after the Effective Date.

A person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer, provided, any such claim shall remain subject to disallowance if and to the extent such voidable transfer is not repaid to the Reorganized Debtor.

Liabilities incurred from the Petition Date through the Effective Date in the ordinary course of business shall be paid in the ordinary course of business by the Reorganized Debtor.

**3.03    Modification to the Plan**. In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified or amended upon application of Proponent or the Reorganized Debtor, or corrected prior to the Confirmation Date, provided that notice and an opportunity for hearing have been given to any affected party. The Plan may be modified at any time after Confirmation and before the Effective Date, provided that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under Section 1129 of the Bankruptcy Code, the circumstances warrant such modification and Proponent consents thereto in writing.

## ARTICLE IV
## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

The following Classes of Claims and Interests are designated pursuant to Bankruptcy Code Section 1123. The Debtor and the Reorganized Debtor shall pay all fees assessed by the Office of the United States Trustee until this Case is closed by the Court or the Reorganized Debtor is otherwise released from such obligations by the Court.

Page 6 of 22

**EXHIBIT A**

---

**EXHIBIT 1**

---

**Class 1** consists of any Allowed Administrative Claims.

**Class 2** consists of any Allowed Secured Tax Claims.

**Class 3** consists of any Allowed Priority Tax Claims.

**Class 4** consists of any Allowed Secured Claims.

   **Class 4.1** consists of any Allowed Secured Claim of Sterling Bank.

   **Class 4.2** consists of any Allowed Secured Claim and any Allowed Unsecured deficiency Claim of the North Texas CDC/SBA (the "SBA").

   **Class 4.3** consists of any Allowed Secured Claim and any Allowed Unsecured deficiency Claim of New Global, Inc.

**Class 5** consists of any Allowed Secured Claims of Narinder Dhaliwal, Harminder Singh, and Balwinder Mahli.

**Class 6** consists of the Executory Contract of Holiday Inn.

**Class 7** consists of the Allowed Unsecured Claims.

   **Class 7.1** consists of Allowed Unsecured Claims in excess of $15,000, which consist of New Global and the SBA.

   **Class 7.2** consists of Allowed Unsecured Claims of $15,000 or less, and further includes the Allowed Unsecured Claims of any holder with Allowed Unsecured Claims which, in the aggregate, exceed $15,000 if such holder elects to reduce all such Allowed Unsecured Claims to $15,000 in toto. Class 7.2 is further designated as a small claims class or convenience class pursuant to 11 U.S.C. § 1122(b).

**Class 8** consists of the any pre-petition or pre-Confirmation equity interests of any Interest Holder.

   It is possible for purposes of tabulating acceptance and/or rejection of the Plan that Classes 4.2, 4.3, and 7.1 will be combined into a single class.

ARTICLE V
PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS

   The Claims and Interests classified in Article IV hereof shall be treated in the manner set forth in this Article V.

   **5.01.    Class 1 Claims – Allowed Administrative Claims.** The Class 1 Claims will be paid, once Allowed, in full by the Reorganized Debtor and on the later of the Effective Date and the date each such claim is Allowed by Final Order. These claims are priority claims pursuant to Section 507(a)(1) of the Bankruptcy Code. These claims include claims for Debtor's attorney's fees and U.S. Trustee's fees. U.S. Trustee's fees must be paid until the case is closed. The Debtor must file quarterly reports following confirmation and until the case is closed. The Class 1 Claims may agree to a different treatment.

Page 7 of 22

## EXHIBIT A

---

## EXHIBIT 1

---

**5.02.**   **Class 2 Claims – Allowed Secured Tax Creditor Claims**. The Class 2 Claims are secured claims with liens that will follow the collateral securing such claims to the extent that such collateral is surrendered either prior to or as part of this Plan such secured liens and claims shall follow the collateral and shall not be paid by the Reorganized Debtor as part of this Plan.

The Class 2 Allowed Claims that relate to collateral or property being retained by the Debtor as part of the Plan shall be paid if Allowed over five (5) years from the Petition Date with interest on such amounts at the rate of 12% per annum until paid in full. The payments shall be made to the extent of the tax escrow on hand and then monthly payments on the unpaid balance shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full.

These claims are secured claims. These creditors shall retain their liens to secure their claims until paid in full under this Plan. The Class 2 Claims shall accrue interest from the Petition Date at the rate of 1% per month from the Petition Date through the Effective Date of the Plan and 12% per annum following the Effective Date until paid in full. These creditors shall retain their senior liens to secure their claims until paid in full under this Plan.  In the event that the Debtor or Reorganized Debtor disputes such claim, the payments will be applied to the undisputed amount of the claim as ultimately allowed. While resolution of any such objection is pending, payments pursuant to the Plan shall be applied to the undisputed portion of the claim as ultimately allowed. In the event of a default under the Plan, counsel for holder of a claim in this class shall provide notice of the default via facsimile to counsel for the debtor. Such default shall be cured within 15 business days of the date of transmission of such notice of default. In the event the default is not cured, the Claimant shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court. The Claimant shall only be required to provide two notices of default. Upon a third event of default, the Claimant shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. Failure to pay post-petition taxes prior to delinquency shall constitute an event of default.

The Class 2 Claims are Impaired and the holders of the Class 2 Claims are entitled to accept or reject the Plan.

**5.03.**   **Class 3 Claims – Allowed Priority Tax Claims**. The Class 3 Claims will be paid if Allowed over three (3) years with interest on such amounts at the rate of 4.25% per annum until paid in full.  The payments shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full.  These claims are priority claims. A failure by the Reorganized Debtor to make a payment to the priority tax creditors pursuant to the terms of the Plan shall be an Event of Default. If the Reorganized Debtor fails to cure an Event of Default as to such payments within ten (10) days after receipt of written notice of default from the priority tax creditors, then the priority tax creditors may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the priority tax creditors may have under applicable state law; and/or (c) seek such relief as may be appropriate in the Court.

The occurrence of any of the following shall constitute an event of default under the Plan:

1) **Failure to Make Payments**. Failure on the part of the Reorganized Debtor to pay fully when due any payment required to be made in respect of the Plan Debt. However, due to the size and ongoing nature of the IRS's claim, upon a default under the Plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal (or state) tax lien and the powers of levy, seizure, and as provided under the Internal Revenue Code. As to the IRS:

Page 8 of 22

**EXHIBIT A**

---

**EXHIBIT 1**

---

(A)      If the Reorganized Debtor or its successor in interest fails to make any Plan payment, or deposits of any currently accruing employment or sales tax liability; or fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the Reorganized Debtor or its successor in interest failed to file any required federal or state tax return by the due date of such return, then the United States may declare that the Reorganized Debtor is in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Reorganized Debtor is in default.

(B)      If the United States declares the Reorganized Debtor or the successor in interest to be in default of the Reorganized Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, may become due and payable immediately upon written demand to the Reorganized Debtor or the successor in interest.

(C)      If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to send two notices of default, and upon the third event of Default the IRS may proceed to collect on all amounts owed without recourse to the Bankruptcy Court and without further notice to the Reorganized Debtor.  The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan. All payments will be sent to: IRS, 1100 Commerce Street, Mail Code 5024 DAL, Dallas, Texas 75242, Attn. Mr. Leo Carey.

(D)      The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the pre-reorganized Debtor to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the pre-reorganized Debtor to the Internal Revenue Service, and confirmation of this Competing Plan is not an impediment to any such enforcement by the IRS.  However, new equity ownership and management of the Reorganized Debtor does not by this Completing Plan, its Confirmation, Effective Date, or implementation assume any personal liability for the tax obligations of the pre-reorganized Debtor or of any  persons theretofore responsible for such obligations of the pre-reorganized Debtor.

The Class 3 Claims are Impaired and the holders of the Class 3 Claims are entitled to vote to accept or reject the Plan.

**5.04      Class 4 Claims.**

**5.04.01 — Class 4.1 Claim – Allowed Secured Claim of Sterling Bank**.

The Class 4 Claim will be paid as Allowed as follows:

The Class 4.1 Claim will be treated as an Allowed Secured Claim of Sterling Bank in the amount $3,557,463.33 and shall be paid in full over five (5) years with the Allowed Amount of the secured claim of $3,557,463.33 amortized over twenty-five (25) years with interest on such Allowed Amount at prime plus 2.00% per annum and a balloon payment of at the end of the five (5) year term. The payments shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full.

Page 9 of 22

**EXHIBIT A**

---

**EXHIBIT 1**

---

The Class 4.1 Claim shall retain all of its liens and security interests as originally provided in its loan documents until paid off. The Class 4.1 Claim is Impaired and the holder of the Class 4.1 Claim is entitled to vote to accept or reject the Plan.

The Class 4.1 Claim may be prepaid in full at any time without any penalty or addition to such Claim on account of such prepayment.

**5.04.02 — Class 4.2 Claim – Allowed Secured Claim and any Allowed Unsecured deficiency Claim of the SBA.**

The Class 4.2 Claim will be treated as an Allowed Unsecured Claim in the amount of $1,810,092.80 and shall be paid ten percent (10.00%) of the principal amount of such Allowed Unsecured Claim by:

(i)     a payment equal to five percent (5.00%) of such Allowed Unsecured Claim paid to the holder of the Class 4.2 Claim on or before the Effective Date, and

(ii)    the remaining five percent (5.00%) of such Allowed Unsecured Claim to be paid over five (5) years. The payments will be made in equal monthly payments on the last day of the month following the Effective Date and shall continue on the last day of each month thereafter until such remaining 5% of the principal amount of such Allowed Claim is paid.

In the event of a default under the plan, the holder of a claim in this Class 4.2 or its counsel shall provide notice of the default via facsimile to counsel for the Reorganized Debtor and by mail to the Reorganized Debtor. Such default shall be cured within fifteen (15) business days of the date of transmission of such notice of default. In the event the default is not cured, the Claimant shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court. The Claimant shall only be required to provide two (2) notices of default. Upon a third event of default, the Claimant shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. The holder of the Class 4.2 Claim shall not be bound by any release provisions in the Plan that would release any liability of its guarantors to the holder of the Class 4.2 Claim. The Class 4.2 Claim is Impaired and the holder of the Class 4.2 Claim is entitled to vote to accept or reject the Plan.

**5.04.03 — Class 4.3 Claim – Allowed Secured Claim and any Allowed Unsecured Deficiency Claim of New Global.**

The Class 4.3 Claim will be treated as an Allowed Unsecured Claim in the amount of $350,000 and shall be paid ten percent (10.00%) of the principal amount of such Allowed Unsecured Claim by:

(i)     a payment equal to five percent (5.00%) of such Allowed Unsecured Claim paid to the holder of the Class 4.3 Claim on or before the Effective Date, and

(ii)    the remaining five percent (5.00%) of such Allowed Unsecured Claim to be paid over five (5) years. The payments will be made in equal monthly payments on the last day of the month following the Effective Date and shall continue on the last day of each month thereafter until such remaining 5% of the principal amount of such Allowed Claim is paid.

In the event of a default under the Plan, the holder of a claim in this Class 4.2 or its counsel shall provide notice of the default via facsimile to counsel for the Reorganized Debtor and by mail to the Reorganized Debtor. Such default shall be cured within fifteen (15) business days of the date of transmission of such notice of default. In the event the default is not cured, the Claimant shall be entitled

Page 10 of 22

---

EXHIBIT 1

---

to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court. The Claimant shall only be required to provide two (2) notices of default. Upon a third event of default, the Claimant shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. The holder of the Class 4.2 Claim shall not be bound by any release provisions in the Plan that would release any liability of its guarantors to the holder of the Class 4.2 Claim. The Class 4.2 Claim is Impaired and the holder of the Class 4.2 Claim is entitled to vote to accept or reject the Plan.

   5.05.   **Class 5 Claim – Allowed Secured Claims of Narinder Dhaliwal, Harminder Singh, and Balwinder Mahli.**

   The Class 5 Claims, if and to the extent Allowed as Secured, will be treated as follows:

   The Class 5 Claims consist of the Secured Claims asserted by Narinder Dhaliwal alleged to be in the amount of $4,599.54, Harminder Singh alleged to be in the amount of $3,500.50, and Balwinder Mahli alleged to be in the amount of $1,948.42. At the sole option and in the sole discretion of the Reorganized Debtor as of the Effective Date and after giving effect to the installation of new equity and new management, such Claims if and to the extent Allowed as Secured Claims shall be treated in one of the following manners:

   (a) On an item by item basis, receive by surrender of collateral, in whole or in part at the sole option of the Reorganized Debtor, such items of collateral in exchange for the value attributed to such surrendered items of collateral. If the Claimant and the Reorganized Debtor cannot agree on such values, these values will be determined by the Bankruptcy Court following the Effective Date.

   (b) As to the Allowed Amount of any such Claim remaining after the optional surrender of items referenced in subparagraph (a) above, the balance and shall be paid in full over three (3) years with principal and interest at 6.00% per annum. The payments shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full. The Class 5 Claim shall retain its lien to secure its claim in any collateral not surrendered pursuant to subparagraph (a) above.

The Class 5 Claims are Impaired and each holder of a Class 5 Claim is entitled to vote to accept or reject the Plan. If any Class 5 Claim is Allowed in amount, in whole or in part, as an Unsecured Claim, then such Unsecured portion of such Allowed Claim shall be treated in Class 7A or 7B, according to the definitions applicable to such subclasses, and shall instead vote to such extent as permitted with respect to Class 7A or 7B.

   5.06.   **Class 6 Claim: Executory Contract of Holiday Inn.**

   The Class 6 Claim will be paid as Allowed as follows:

   The executory franchise contract between the Debtor and Holiday Inn shall be rejected. Because Gupreet Dhaliwal currently owns more than 51% of the Debtor, the acquisition by Dhillon of 100% of the membership interests of the Reorganized Debtor pursuant to the Competing Plan will effectuate a change of ownership of the Debtor which will require Dhillon and/or the Reorganized Debtor to apply for a new Holiday Inn Express license. Dhillon, as of the approval of this Disclosure Statement, has begun the application process. Dhillon believes that he and/or the Reorganized Debtor will be successful in

Page 11 of 22

# EXHIBIT A

---

### EXHIBIT 1

obtaining a new Holiday Inn Express license because the Debtor relied upon Dhillon[4] as an experienced hotel operator to obtain the Debtor's existing license to operate as a Holiday Inn Express, and Dhillon has obtained approval for from IHG and/or HHFI for licenses issued in connection with at least five (5) other Holiday Inn or Holiday Inn Express locations.

Dhillon and/or the Reorganized Debtor intends to obtain a new franchise agreement with Holiday Inn. Proponent shall, as soon as practicable, apply on behalf of the Reorganized Debtor for approval or prospective approval concurrent with the Effective Date of such new franchise agreement, which may or may not be approved in HHFI's sole and absolute discretion.

In the unlikely event that the HHFI application is not approved, then Dhillon will seek a comparable hotel franchise license for the Property.

From funds contributed by Proponent pursuant to Sections 6.01 or 6.02, the sum of $80,000.00 shall be escrowed for and dedicated to capital improvements and repairs that may be required by the franchisor, if and to the extent that other and further capital improvements and repairs over and above the referenced $80,000 are required by franchisor for the approval of a new franchise agreement, and in the event the costs thereof exceed the $80,000 referenced above, additional portions of the funds referenced in Sections 6.01 or 6.02 may also be used, if, as and when needed to enable such further capital improvements and repairs, the Proponent, its principals (as applicable), and the Reorganized Debtor shall apply as soon as possible for approval of the new license.

The Class 6 Claim is Impaired and the holder of the Class 6 Claim is entitled to vote to accept or reject the Plan.

**5.07.** <u>Class 7 Claims</u>. The Class 7 Claims will be paid as Allowed and as follows:

**Class 7.1 Claims — Certain Claims in Excess of $15,000**

The Class 7.1 Claims that are not otherwise assigned to one of the Class 1 through 6 above that are Allowed Unsecured Claims shall be paid 10.00% of their claims over five (5) years. The payments will be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until such 10% of their claims are paid.

The Proponent is not aware of the existence of any Class 7.1 Claims in light of the treatment of the Class 4.1 and 4.2 Claims and the cure of defaults and assumption of the franchise agreement in Class 6. Otherwise, the holders of Class 4.1 and 4.2 claims shall be treated in accordance with Class 7.1.

In the event of a default under the Plan, the holder of a claim in this Class 7.1 or such holder's counsel shall provide notice of the default via facsimile to counsel for the Reorganized Debtor and by mail to the Reorganized Debtor. Such default shall be cured within fifteen (15) business days of the date of transmission of such notice of default. In the event the default is not cured, the Claimant shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court. The Claimant shall only be required to provide two (2) notices of default. Upon a third event of default, the Claimant shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. The holders of the Class 7.1 Claims shall not be bound by any release provisions in the Plan that would release any liability of its guarantors to the holders of the Class 7.1 Claims.

---

[4] Gupreet Dhaliwal is a physician whose primary occupation is health care, whereas Dhillon is a full time owner and/or operator of hotels.

Page 12 of 22

**EXHIBIT A**

---

**EXHIBIT 1**

---

The Class 7.1 Claims are Impaired and the holders of any Class 7.1 Claims are entitled to vote to accept or reject the Plan.

**Class 7.2 Claims — Certain Claims of $15,000 or Under.**

The Class 7.2 Claims that are Allowed Unsecured Claims shall be paid (a) in full the Allowed Amount of their Unsecured Claims, but without post-petition interest, if all Allowed Class 7.2 Claims in the aggregate total $40,000 or less or (b) the Pro Rata share due on account of such Allowed Claim applied against an available base of $40,000, where the Allowed Amount of the principal of each such Class 7.2 (without post-petition interest) is the numerator and the aggregate amount of all Allowed Class 7.2 Claims, in the aggregate, is the denominator.

Allowed Class 7.2 Claims that are not Contested Claims shall be paid in full and without interest in six (6) equal monthly installments beginning with the 30th day after the Effective Date and continuing on the 30th day of each month thereafter for five more months (for a total of six (6) payments).

Class 7.2 Claims that become Allowed Claims after first being Contested Claims shall be paid on the later of (a) the dates specified in the foregoing subparagraph and (b) the first Business Day following the thirtieth (30th) day after such Claim becomes an Allowed Claim by Final Order.

The Reorganized Debtor shall make reservation on account of payments which may, within reason, be due on account of Disputed Class 7.2 Claims. If the ratable payment provisions applicable to Class 7.2 are in effect, the Reorganized Debtor may make reasonable partial or anticipatory distributions on account of Class 7.2 Claims that are already then Allowed Claims.

In either case, if there is any dispute as to the reasonableness of any reserve, any partial or anticipatory payment, refusal to make any reserve, or refusal to make any partial or anticipatory payment, such determination shall be made by the Bankruptcy Court, giving due deference to the business judgment of the Reorganized Debtor.

The Class 7.2 Claims are Impaired and the holder of the Class 7 Claims are entitled to vote to accept or reject the Plan.

**5.08.**    **Class 8 Claims**.    The Class 8 Claims will be treated as follows.

On the Confirmation Date, all equity interests pre-dating the Confirmation Date shall be cancelled conditioned on the subsequent occurrence of the Effective Date, and such holders shall receive and retain nothing on account of such equity interests.    (However, as provided below, Dhillon will reemerge as the holder of 100% of the member interests in the Reorganized Debtor, as set forth in Article VI below).

**ARTICLE VI**
**MEANS FOR IMPLEMENTATION OF PLAN**

This Plan will be implemented, pursuant to § 1123(a)(5) of the Code, by the commencement of payments as called for above. In order to implement the Plan, the following shall occur:

**6.01**    The total of $200,000.00 shall be deposited into Proponent's Counsel's Trust Account prior to the Confirmation Date. If the Plan is not Confirmed, the $200,000.00 will be returned to those contributing such funds.

Page 13 of 22

# EXHIBIT A

## EXHIBIT 1

Dhillon and/or other entities or individuals may be the source of the funds for implementation of the Plan, and the source(s) of funds will be disclosed at confirmation, but as of October 3, 2011 Dhillon anticipates that he will be the sole source of funds.

6.02    Conditioned upon the occurrence of the Effective Date, the Proponent or other persons or parties receiving the new equity in the Reorganized Debtor in accordance with Class 4C shall contribute, if, as and when needed, up to an additional $150,000.00 as required (a) to avoid and/or cure any default under the terms of this Competing Plan, (b) to fund additional capital improvements or repairs as required by the new franchise agreement, or (c) both.

6.03    Proponent or other persons or parties receiving the new equity in the Reorganized Debtor in accordance with Class 4C shall additionally provide cash on the Effective Date, if and as required, in order to satisfy any new franchisee fees, Property Improvement Plan, or the like, as required by Holiday Inn in connection with approving the Reorganized Debtor as an authorized Holiday Inn franchisee, up to a total of $80,000.

6.04    Upon entry of the Confirmation Order: the Interim Manager shall take immediate, complete, and sole control of all assets of the Debtor and its Estate, including without limitation the Debtor's premises, cash and cash management systems, payment systems, and intellectual property, and shall operate the businesses of the Debtor and its Estate from entry of the Confirmation Order through and including implementation of the Plan, satisfaction of any conditions to the Effective Date, and conclusion of the Effective Date. Upon the occurrence of the Effective Date, the Interim Manager shall turn over all such assets and operations to the Reorganized Debtor and management designated by the new owner. If the Effective Date does not occur, the Interim Manager shall, upon further order of the Bankruptcy Court, turn over such assets and operations to the persons or parties as the Bankruptcy Court may then direct. The Interim Manager will be Jag Dhillon or Jay Karatokin, the latter of whom is an employee of DMC Hotels, the hotel management company operated by Dhillon, or someone who is acceptable to HHFI. HHFI under the existing license has the right to approve the Interim Manager in its sole discretion.  The management agreement must be acceptable to HHFI and comply with HHFI's requirements.

6.05    Upon entry of the Confirmation Order, the Debtor, the Class 8 holders, any managers of any of them, or the agents, servants, employees, attorneys, accountants, advisors, or persons controlled by any of the foregoing shall abstain from withdrawing, transferring, otherwise utilizing or taking any other steps affecting the possession, use of, or control over any cash, cash equivalents, accounts, receivables, or other funds belonging to the Debtor, except insofar as such other steps are to facilitate the transfer of such assets to the control of the Interim Manager.  Also upon entry of the Confirmation Order, all banks or other financial institutions holding accounts of the Debtor shall immediately allow the Interim Manager to take any and all steps necessary to obtain and sign replacement or new signature cards for each of the Debtor's accounts and to remove any and all prior signatories or authorized users from the Debtor's accounts.

The Proponent and/or Reorganized may petition the Court at any time for additional relief with respect to the Debtor's assets in order to fully transition control of the Property and all related assets.

6.06    Without limitation, on the Confirmation Date, (a) all cash, cash  equivalents, accounts, receivables, contract rights, other current assets, accounting records, checking account ledgers, business records, bills, invoices, and all other operational records wherever situated and however comprised, (b) all computers, servers, hard drives, back-up drives, hand held electronic devices, other portable electronic devices, other computer hardware, all computer software and associated documentation, all computer software licenses and associated documentation, and all other devices or computerized means used for the entry, storage, processing, restatement, presentation, or rendition of data by or for the Debtor in its

Page 14 of 22

# EXHIBIT A

---

### EXHIBIT 1

---

operations, finances, management, franchise compliance, litigation (including this Bankruptcy Case), or otherwise beneficial to the implementation of this Plan, whether owned by the Debtor, leased to the Debtor, or used by the Debtor with permission of any third party and wherever situated, shall be turned over by the Debtor, the Class 8 holders, any managers of any of them, or the agents, servants, employees, attorneys, accountants, advisors, or persons controlled by any of the foregoing, to the interim manager designated by the Proponent in the Confirmation Order. All such data and materials shall be used by the Interim Manager in accordance with Section 6.03 above. All parties in interest, including without limitation the Debtor, the Class 8 holders, any managers of any of them, or the agents, servants, employees, attorneys, accountants, advisors, or persons controlled by any of the foregoing shall take appropriate steps to preserve and protect the foregoing data and materials at all times prior to the Confirmation Date, and no such party in interest shall be excused by virtue of the Plan from any inappropriate spoliation of any such data or materials. If the Effective Date does not occur and the Confirmation Order is vacated, the interim manager shall then turn over all such date and materials to the persons or parties as may be directed by the Bankruptcy Court.

      **6.07**    The Interim Manager shall be nominated by the Proponent at or before the Confirmation Hearing and shall be approved by (and subject to approval by) the Bankruptcy Court in the Confirmation Order in accordance with 11 U.S.C. § 1129(a)(5) and in a separate, stand-alone order which shall survive in the event of any vacatur of the Confirmation Order in the event the Effective Date does not occur. The Confirmation Order and the separate, stand-alone order so approving the Interim Manager shall further provide that the Interim Manager shall be held harmless by the Estate for any claims or liabilities associated with service as Interim Manager, save and except for claims or liabilities which, after Final Order of a Court of competent jurisdiction, are determined to have arisen from the Interim Manager's actual fraud, malfeasance, or self-dealing. The compensation of the Interim Manager shall also be subject to approval by the Bankruptcy Court in the Confirmation and in the separate, stand-alone order.

      **6.08**    The Interim Manager shall be authorized, in its sole discretion, but not required to designate itself, the Proponent, and any other persons designated to receive new equity in the Reorganized Debtor pursuant to Class 4C of this Plan as coinsureds or additional insureds in and under any insurance policies owned, benefitting, or obtained by the Debtor, Estate, or Reorganized Debtor, at the expense of the Debtor, Estate, and Reorganized Debtor, so as to provide coverage to such persons during the period of service by the Interim Manager.

      **6.09.**    If, prior to the Effective Date, Proponent determines, in its sole discretion, that circumstances exist which render it disadvantageous to Proponent to acquire the Debtor as an entity, then Proponent may instead elect to close this Competing Plan as an asset acquisition and, in such event, (a) all assets of the Debtor that would otherwise be obtained by and transferred to the Reorganized Debtor by virtue of this Competing Plan shall instead be transferred to the acquiring entity designated by the Proponent; (b) all rights and privileges of the Reorganized Debtor to obtain immediate management of the Debtor's property and control of Debtor's cash, accounts, current assets, and the like shall instead pass upon entry of the Confirmation Order to the acquiring entity designated by the Proponent; (c) all scheduled payments to each class contemplated in the Plan will instead become, conditioned upon the occurrence of the Effective Date, the obligation of and shall be performed by the acquiring entity designated by Proponent just as if the Debtor's entity had been acquired; (d) all cash and other consideration which is designated to be contributed to or transferred to the capital of the Reorganized Debtor shall instead be contributed to or transferred to the capital of the acquisition entity designated by the Proponent; (e) all executory contracts and unexpired leases assumed by the Debtor or to be assumed by the Reorganized Debtor shall instead be assumed and assigned to the acquisition entity designated by the Proponent; (f) all discharge and injunctive provisions otherwise benefitting the Debtor, Reorganized Debtor, or both shall also inure to the benefit of the acquisition entity designated by the Proponent as successor to the Debtor and Reorganized Debtor; and (g) as appropriate, all references in this Competing

Page 15 of 22

**EXHIBIT A**

**EXHIBIT 1**

Plan to Reorganized Debtor shall mean or shall include, as the case may be, the acquisition entity designated by the Proponent. Circumstances leading to such and election by the Proponent may include, without limitation, discovery that the Debtor has previously opted or taken other actions causing it to be taxed as a corporation rather than as a partnership.

## ARTICLE VII
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01.    Rejection of Executory Contracts and Unexpired Leases.** The Reorganized Debtor shall assume, pursuant to Bankruptcy Code Section 1123(b)(2) and conditioned upon the occurrence of the Effective Date, all unexpired leases of non-residential real property and executory contracts not specifically assumed or rejected prior to the Confirmation Date.

Notwithstanding the above, the Reorganized Debtor shall reject the Holiday Inn franchise agreement effective as of the Effective Date.

**7.02.    Reservation of Rights.** The Reorganized Debtor shall have the right to assume or reject, pursuant to Bankruptcy Code Section 365, prior to the Confirmation Date, any executory contract or unexpired lease of real property (to the extent permitted under the Bankruptcy Code) and to the terms of this Plan. Notwithstanding the above, the Holiday Inn Franchise Agreement may not be assumed and will be rejected as of the Effective Date.

**7.03.    Bar Date for Claims Based on Rejection.** If the rejection of an executory contract or an unexpired lease by the Debtor or the Reorganized Debtor results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Reorganized Debtor or its properties or agents, successors, or assigns, unless a Proof of Claim is filed with the Bankruptcy Court and served upon the Reorganized Debtor and its counsel and the Proponent and its counsel, by the earlier of (a) the end of the month following the period in which the Effective Date occurs or (b) such other deadline as the Court may set for asserting a Claim for such damages. Any Rejection Claim arising from the rejection of an unexpired lease or executory contract shall be treated as a General Unsecured Claim in either Class 7.1 or 7.2 as consistent with the definitions and treatment applicable to such sub-Classes; *provided, however,* that any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with Section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission by the Reorganized Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Reorganized Debtor of any objections to such Claim if asserted.

## ARTICLE VIII
### RETENTION, ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS
### BELONGING TO THE DEBTOR, THE REORGANIZED DEBTOR AND THE ESTATE
### INCLUDING PREFERENCES AND CONVEYANCES

**8.01.    The Estate's Causes of Action.** Except as otherwise released pursuant to the Plan, all Claims recoverable under Section 550 of the Bankruptcy Code, all Claims against third parties on account of an indebtedness, and all other Claims of any kind or character whatsoever owed to or in favor of the Debtor, the Reorganized Debtor, or the Estate to the extent not specifically compromised and released pursuant to this Plan or any agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by the Reorganized Debtor for the benefit of implementation of the Plan subsequent to the Effective Date.

Page 16 of 22

## EXHIBIT A

---

**EXHIBIT 1**

---

**8.02.    Preservation of Causes of Action against Pre-Confirmation Insiders, Control Persons, Equity Interest Holders, or Professionals, Advisors, Consultants to Any of Them or to the Debtor.** Because of the takeover nature of this Competing Plan and the extent to which Gupreet Dhaliwal has excluded Dhillon from the management of the hotel since 2008, Proponent is not presently aware of any causes of action, whether pre-petition or post-petition in nature against any of Debtor's pre-Confirmation insiders, control persons, equity interest holders, or of any professionals (including without limitation attorneys, accountants, financial advisors and the like) engaged for any or all of them or the Debtor. No such Claims have been scheduled by the Debtor or its professionals. The Proponent and Reorganized Debtor do not represent or warrant the existence of any such claims. The Proponent and Reorganized Debtor do not intend to overstate, concoct, or needlessly pursue non-meritorious or marginal claims of such nature. Claimants should vote for or against this Plan without the expectation that the Reorganized Debtor will ever recover on account of any such claims. Nonetheless, to the full extent permitted by all applicable law, the Reorganized Debtor specifically, expressly, and unequivocally reserves to itself, preserves, and does not forfeit, waive, transfer to another, release, or otherwise intend this Plan to constitute res judicata, or judicial estoppel against or loss of standing by the Reorganized Debtor as successor to and representative of the Estate, to assert, prosecute, and collect on any such claims against any such persons, including without limitation any claims for self-dealing, misfeasance, malfeasance, negligence, professional negligence or malpractice, gross negligence, actual fraud in any form, constructive fraud, preference, concealment, conversion, diversion, wasting, theft of business opportunity, or any other action of similar nature, whether arising in or sounding in tort, fiduciary relationship or duty, professional relationship or duty, contract, or otherwise.

**8.03    Objections to Claims.** Any party authorized by the Bankruptcy Code may object to the allowance of Pre-petition Claims at any time prior to sixty (60) days after the Effective Date and, as to Rejection Claims, at any time prior to sixty (60) days after the filing of any such Rejection Claim. Any Proof of Claim filed after the Court sets Bar Dates shall be of no force and effect and shall be deemed disallowed. All Contested Claims shall be litigated to Final Order; *provided, however,* that the Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court. Notwithstanding the foregoing, a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

No distributions under this Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim. If a Claim is disputed in whole or in part because the Debtor asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of its Allowed Claim. In addition, any party authorized by the Bankruptcy Code, at anytime, may request that the Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of any prior objections.

### ARTICLE IX
### FRANCHISOR APPROVAL OF CHANGE OF CONTROL.

**9.01.    Franchisor Approval of New License.** The consent by Holiday Inn or other major hotel franchisor to a new franchise agreement in favor of the Reorganized Debtor, shall be a condition to the occurrence of the Effective Date of the Plan.

Page 17 of 22

# EXHIBIT A

---

**EXHIBIT 1**

---

### ARTICLE X
### EFFECT OF CONFIRMATION

**10.01. Discharge and Release of Debtor.** Pursuant to Bankruptcy Code Section 1141(d)(2), confirmation of this Plan discharges the Debtor and the Reorganized Debtor from all liabilities save and except those treated in accordance with the Plan and nothing shall release the Reorganized Debtor from the terms of the Plan.

**10.02. Exculpation.** None of the owners, members, directors, managers, officers, financial advisors, attorneys, or employees of the Proponent (collectively the "Released Entities") shall have any liability for actions taken or omitted to be taken in good faith under or in connection with proposing, seeking and obtaining Confirmation, implementing, preserving, protecting, or carrying out the Plan.

**10.03. Legal Binding Effect.** The provisions of this Plan, pursuant to the Bankruptcy Code Section 1141 shall bind the Debtor, Reorganized Debtor, Proponent, and all Creditors and all Interest Holders, whether or not they accept this Plan. The distributions provided for for the benefit of any Claimant Claimants shall not be subject to any Claim by another Claimant, creditor, or interest holder by reason of any assertion of a contractual right of subordination.

**10.04. Permanent Injunction.** Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against the Debtor, the Reorganized Debtor, Proponent, and any other entity against whom prosecution of the any Claims could result in a Claim being asserted against the Debtor or Reorganized Debtor that could arise directly or indirectly out of a claim against the Debtor or Reorganized Debtor.

From and after the Confirmation Date, all holders of Claims against the Debtor or Reorganized Debtor are restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor or Reorganized Debtor; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Assets or the Debtor or Reorganized Debtor; (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Assets, or the Debtor or Reorganized Debtor; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; *provided, however,* that each holder of a Contested Claim may continue to prosecute its Proof of Claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce their rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan. Such restraint shall continue until the Debtor or Reorganized Debtor has been granted a discharge by the Court or such creditor is paid in full as called for by the Plan. The setoff rights of the Texas Comptroller of Public Accounts are hereby preserved, and such rights shall therefore be unaffected by the Plan or continuation thereof.

### ARTICLE XI
### MISCELLANEOUS PROVISIONS

**11.01. Request for Relief Under Bankruptcy Code Section 1129.** In the event any Impaired Class of Claims shall fail to accept this Plan in accordance with Bankruptcy Code Section 1129(a), the Proponent reserves the right to, and does hereby request the Bankruptcy Court to confirm the Plan in accordance with Bankruptcy Code Section 1129(b). Class 8 is deemed to have rejected the Plan and, accordingly, confirmation as to such Class shall be in accordance with Section 1129(b).

Page 18 of 22

## EXHIBIT A

---

## EXHIBIT 1

**11.02.  Prepayment of Claims.**  The Reorganized Debtor shall have the right, from and after the Effective Date, in its sole discretion and option, to prepay without penalty, in the amounts and to the extent otherwise authorized in this Plan, any Allowed Claim or other fees, charges or other assessments.

**11.03.  Reorganized Debtor's Business Form.**  Proponent reserves the right to reconstitute the business form of the Reorganized Debtor, from and after the Effective Date, to the extent permitted by applicable non-Bankruptcy law and, likewise, the Reorganized Debtor reserves the right to reconstitute itself in any business form otherwise permitted by applicable non-Bankruptcy law.

**11.04.  Revocation.**  The Proponent reserves the right to revoke and withdraw this Competing Plan at any time prior to the Confirmation Date, and to seek vactur of the Confirmation Order any any time prior to the Effective Date.

**11.05.  Effect of Withdrawal or Revocation.**  If the Proponent revokes or withdraws this Competing Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

**11.06.  Due Authorization by Creditors.**  Each and every Claimant who elects to participate in the distributions provided herein warrants that it is authorized to accept in consideration of its Claim against the Debtor and Reorganized Debtor the distributions provided in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

**11.07.  Entire Agreement.**  This Plan, as described herein, the Confirmation Order, and all other documents and instruments to effectuate this Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents.

**11.08.  Section 1146 Exemption.**  Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange or any security under this Plan or the making or delivery of any instrument or transfer pursuant to, in implementation of or as contemplated by this Plan or the transfer of any property pursuant to this Plan shall not be taxed under any federal, state or local law imposing a stamp, transfer or similar tax or fee.

**11.07.  Provisions Governing Distributions.**  All payments and distributions under the Plan shall be made by the Reorganized Debtor as indicated. Any payments or distributions to be made by the Reorganized Debtor pursuant to the Plan shall be made as soon as reasonably practicable after the Effective Date, except as otherwise provided for in the Plan, or as may be ordered by the Bankruptcy Court. Any payment or distribution by the Reorganized Debtor pursuant to the Plan, to the extent delivered by the United States Mail, shall be deemed made when deposited into the United States Mail.

Payments of Cash to be made by the Reorganized Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth in a properly filed Proof of Claim, amended Proof of Claim, or supplemental Proof of Claim, as appropriate filed by such Claimant or Holder (or at the last known addresses of such claimant or holders as set forth in the Debtor's Schedules, if no Proof of Claim or Proof of Interest is filed). Each claimant

Page 19 of 22

# EXHIBIT A

---

**EXHIBIT 1**

---

and holder shall be solely responsible for stating and updating, from time to time, its own correct (or corrected or updated) name (or name of any successor in interest), address and other contact information in the form of a properly filed Proof of Claim, amended Proof of Claim, or supplemental Proof of Claim, as appropriate, and neither the Debtor, Estate, Reorganized Debtor, Proponent, or any other successor or representative of the Debtor, Estate or Reorganized Debtor shall have any duty whatsoever to determine or update contact information for any such claimant.  All Claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date.  After such date, all unclaimed property shall be escheated for the benefit of such claimant or holder to the then appropriate agency of the State of Texas for managing escheated funds, in accordance with Section 11.09.04 herein, and thereupon the Reorganized Debtor shall be forever discharged from any responsibility or liability on account of such Claim.  From and after the time that the Bankruptcy Case is closed or it otherwise becomes impossible to file a Proof of Claim, amended Proof of Claim, or supplemental Proof of Claim in the Bankruptcy Court's official Claims Registry, then and only then shall a claimant or holder restate or update, from time to time, its own correct (or corrected or updated) name (or name of any successor in interest), address and other contact information (but still using the official form for a Proof of Claim, amended Proof of Claim, or supplemental Proof of Claim, as appropriate, signed by an authorized person on behalf of such claimant or holder) by providing such information and executed form to the Reorganized Debtor, Attention, Managing Member, by United States Certified Mail, return receipt requested.

Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof. Requests for reissuance of any check shall be made directly to the Reorganized Debtor by the holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of such a voided check within ninety (90) days after the date of delivery of such check. After such date, all Claims in respect of void checks shall, as against the Reorganized Debtor, shall be discharged and forever barred.

Any and all unclaimed funds resulting from voided checks or other failed attempts to distribute same in accordance with this Plan shall be turned over by the Reorganized Debtor to the appropriate agency for the State of Texas managing escheated funds, and, thereafter, the holder of the Claim giving rise to such escheatment shall have no claim against the Reorganized Debtor, its agents, servants, employees, attorneys, accountants and other advisors, but such holder shall instead be limited, if and to the extent available, solely to the recovery, if any, obtained by such holder from the State of Texas at such holder's sole expense and initiative, on account of such holder's portion of escheated funds, and the Reorganized Debtor, its agents, servants, employees, attorneys, accountants and other advisors shall have no duty or obligation to assist with the recovery of any such escheated funds.

No interest shall be paid on any Claim unless and only to the extent that the Plan specifically and expressly provides otherwise.

**11.08. <u>Governing Law</u>.** Unless a rule of law or procedure supplied by Federal Law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

**ARTICLE XII**
**<u>MODIFICATION OF THE PLAN</u>**

**12.01** The Proponent may propose amendments to or modifications of this Plan under Bankruptcy Code Section 1127 at any time prior to Confirmation upon notice to all parties affected thereby and providing such parties an opportunity to be heard on the proposed amendment.  After Confirmation, the Proponent and/or the Reorganized Debtor may remedy any defects or omissions or

Page 20 of 22

**EXHIBIT A**

---

**EXHIBIT 1**

---

reconcile any inconsistencies in this Plan or in the Final Order in such manner as may be necessary to carry out the purpose and intent of this Plan so long as the interests of Claimants or Interest Holders are not materially and adversely affected.

**ARTICLE XIII**
**RETENTION OF JURISDICTION**

Notwithstanding confirmation of the Plan or the Effective Date having occurred, the Court will retain jurisdiction for the following purposes:

**13.01    Allowance of Claims.** To hear and determine the allowability of all Claims upon objections to such Claims.

**13.02    Executory Contracts and Unexpired Leases Proceedings.** To act with respect to proceedings regarding the assumption of any executory contract or unexpired lease of the Debtor pursuant to §§ 365 and 1123 of the Code and Article VII of the Plan.

**13.03    Plan Interpretation.** To resolve controversies and disputes regarding the interpretation of the Plan.

**13.04    Plan Implementation.** To implement and enforce the provisions of the Plan and enter orders in aid of confirmation and implementation of the Plan.

**13.05    Plan Modification.** To modify the Plan pursuant to § 1127 of the Code and applicable Bankruptcy Rules, except that no modification shall be made to the Plan that would impair, diminish or affect in any way the rights of participants of any Classes of the Plan without the consent of such Class.

**13.06    Adjudication of Controversies.** To adjudicate such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court against the Debtor or the Reorganized Debtor.

**13.07    Injunctive Relief.** To issue any injunction or other relief as appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or in the Confirmation Order.

**13.08    Interpleader Action.** To entertain interpleader actions concerning assets to be distributed or other assets of the Estate.

**13.09    Correct Minor Defects.** To correct any defect, cure any omission or reconcile any inconsistency or ambiguity in the Plan, the Confirmation Order or any document executed or to be executed in connection therewith, as may be necessary to carry out the purposes and intent of the Plan, provided that the rights of any holder or an Allowed Claim are not materially and adversely affected thereby.

**13.10    Authorization of Fees and Expenses.** To review and authorize payment of professional fees incurred prior to the Effective Date.

**13.11    Post-Confirmation Orders Regarding Confirmation.** To enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated.

Page 21 of 22

# EXHIBIT A

---

**EXHIBIT 1**

---

**13.12.   Final Decree.**   To enter a final decree closing the Case pursuant to Bankruptcy Rule 3022.

Dated: October 7, 2011

Respectfully submitted,

_/s/ Jagmohan Dhillon_
JAGMOHAN DHILLON

_/s/ Jeff Carruth_
Jeff D. Carruth
State of Texas Bar No. 24001846
Weycer, Kaplan, Pulaski & Zuber, P.C.
3030 Matlock Rd., Suite 201
Arlington, TX 76015
(817) 795-5046 – Telephone
(866) 666-5322 – Facsimile
jcarruth@wkpz.com

ATTORNEYS FOR JAGMOHAN DHILLON

Page 22 of 22