**GEORGE A. KURISKY, JR.**
**BRANCH M. SHEPPARD**
**JOHNSON DELUCA KURISKY & GOULD, P.C.**
**4 Houston Center**
**1221 Lamar, Suite 1000**
**Houston, Texas 77010**
**(713) 652-2525 Telephone**
**(713) 652-5130 Facsimile**
**gkurisky@jdkglaw.com**
**ATTORNEYS FOR DEBTOR IN POSSESSION**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| **MID WEST HOTEL LODGING, LLC,** | § | **CASE NO: 11-40629-BTR-11** |
| **Debtor in Possession** | § | **CHAPTER 11** |

**THIRD AMENDED PLAN OF REORGANIZATION**
**DATED NOVEMBER 11, 2011**

Mid West Hotel Lodging, LLC (the "Debtor"), proposes the following Third Amended

Plan of Reorganization ("Plan")  Dated November 11, 2011, pursuant to Chapter 11 of the

United States Bankruptcy Code on behalf of the Debtor.  Debtor's profitability to fund its Plan is

based on the amount of money that it will earn from the continued operation of its business.

# TABLE OF CONTENTS

ARTICLE I - DEFINITIONS AND USE OF TERMS ................................................................. 3

ARTICLE II - CONCEPT OF THE PLAN ................................................................................ 7

ARTICLE III - GENERAL TERMS AND CONDITIONS .......................................................... 7

ARTICLE IV - DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS..................... 8

ARTICLE V- PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS............. 9

ARTICLE VI - MEANS FOR IMPLEMENTATION OF PLAN .............................................. 14

ARTICLE VII - TREATMENT OF EXECUTORY CONTRACTS

AND UNEXPIRED LEASES .................................................................................................. 15

ARTICLE VIII - PROVISIONS FOR THE RETENTION, ENFORCEMENT,
SETTLEMENT OR ADJUSTMENT OF CLAIMS BELONGING TO THE DEBTOR
AND THE ESTATE INCLUDING PREFERENCES AND CONVEYANCES ....................... 16

ARTICLE IX - EFFECT OF CONFIRMATION ...................................................................... 17

ARTICLE X - MISCELLANEOUS PROVISIONS.................................................................. 18

ARTICLE XI - MODIFICATION OF THE PLAN ................................................................... 18

ARTICLE XII - RETENTION OF JURISDICTION ................................................................. 19

**ARTICLE I**

## <u>DEFINITIONS AND USE OF TERMS</u>

**1.01**        **<u>Defined Terms</u>**.  Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this section 1.01.

**1.01.01**        **<u>Administrative Claim or Expense</u>** means an administrative expense or Claim described in Section 503 of the Bankruptcy Code and entitled to administrative priority pursuant to Section 507(a)(1) of the Bankruptcy Code, including, but not limited to, Claims for compensation of professionals made pursuant to Sections 330 and 331 of the Bankruptcy Code, and all fees and charges assessed against the Debtor and Debtor's property under 28 U.S.C. Section 1930.

**1.01.02**        **<u>Administrative Tax Claim</u>** means an Unsecured Claim by any governmental unit for taxes (including interest or penalties related to such taxes) for any tax year or period, all or a portion of which occurs or falls within the period from and including the Petition Date through the Effective Date.

**1.01.03**        **<u>Allowed Claim</u>** means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that (I) a proof of Claim, proof of Interest, or request for payment was timely Filed or, with leave of the Bankruptcy Court, late Filed, and as to which no objection has been timely Filed or, if Filed, is allowed by a Final Order, unless otherwise provided in this Plan or (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and to which no objection has been timely Filed or, if Filed, is allowed by a Final Order.

**1.01.04**   **<u>Allowed Secured Claim</u>** means any Allowed Claim secured by a lien, security interest, or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof (determined in accordance with Bankruptcy Code Section 506(a)).

**1.01.05**   **<u>Bankruptcy Code or Code</u>** means the United States Bankruptcy Code, Title 11 of the United States Code Section 101 et seq., as amended.

**1.01.06**   **<u>Bankruptcy Court</u>** means the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division or such other court that may have jurisdiction with respect to the reorganization of the Debtor pursuant to Chapter 11 of the Bankruptcy Code.

**1.01.07**   **<u>Bankruptcy Rule</u>** means the Federal Rules of Bankruptcy Procedure.

**1.01.08**   **<u>Bar Date</u>** means subsequent to which a proof of pre-petition Claim may not timely be Filed or the date by which proofs of claims held by governmental agencies must be filed.

**1.01.09**   **<u>Case</u>** means this Chapter 11 Bankruptcy Case in the Bankruptcy Court.

**1.01.10**   **<u>Claim</u>** shall have the meaning set forth in Bankruptcy Code Section 101(5).

**1.01.11** **Claimant** means any person or entity having or asserting a Claim in the case.

**1.01.12** **Class** or **Classes** mean all of the holders of Claims or Interests that the Debtor has designated pursuant to Section 1123(a)(1) of the Bankruptcy Code as having substantially similar characteristics as described in Article IV of this Plan.

**1.01.13** **Confirmation** means the entry by the Bankruptcy Court of a Confirmation Order confirming this Plan.

**1.01.14** **Confirmation Date** means the date on which the Confirmation Order is entered.

**1.01.15** **Confirmation Hearing** means the hearing or hearings held before the Bankruptcy Court in which the Debtor will seek Confirmation of this Plan.

**1.01.16** **Confirmation Order** means the Order of the Court confirming this Plan under Section 1129 of the Bankruptcy Code.

**1.01.17** **Contested** when used with respect to a Claim, means a Claim against the Debtor (a) that is listed in the Debtor's Schedules of Assets and Liabilities as disputed, contingent, or unliquidated; (b) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

**1.01.18** **Creditor** shall have the meaning specified by Section 101(9) of the Code.

**1.01.19** **Debtor** means Mid West Hotel Lodging, LLC.

**1.01.20** **Disputed Claim** means any Claim that is not an Allowed Claim.

**1.01.21** **Effective Date** means thirty days after the Confirmation Date.

**1.01.22** **Estate** means the estate created pursuant to Bankruptcy Code Section 541 with respect to the Debtor.

**1.01.23** **Fee Claim** means a Claim under Bankruptcy Code Sections 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in the Debtor's Chapter 11 case.

**1.01.24** **Filed** means delivered to the Clerk of the Bankruptcy Court.

**1.01.25** **Final Order** means an Order as to which any appeal that has been taken has not

been stayed following the expiration of the time for appeal or has been resolved, or as to which the time for appeal has expired.

**1.01.26** **General Unsecured Claim** means Unsecured Claim that is not entitled to priority under Section 507(a) of the Bankruptcy Code.

**1.01.27** **Impaired** means the treatment of an Allowed Claim pursuant to the Plan <u>unless</u>, with respect to such Claim, either (I) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim, or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, the Debtor (A) cures any default that occurred before or after the commencement of the Chapter 11 Case on the Petition Date, other than default of the kind specified in Section 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim as such maturity existed before such default; ©) compensates the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim; or (iii) the Plan provides that on the Effective Date, the holder of such Claim receives, on account of such Claim, cash equal to the Allowed Amount of such Claim.

**1.01.28** **Manager** means Raj Patel, individually, or an affiliate wholly owned by Raj Patel, in his sole discretion, who will manage the operations and finances of the Reorganized Debtor.

**1.01.29** **New Equity Interests** means the membership interests in the Reorganized Debtor (as a Texas limited liability company) from and after the Effective Date of the Plan, after giving effect to the Plan.

**1.01.30** **Old Equity Interests** means the equity interests in the Debtor prior to the Effective Date, before giving effect to the Plan.

**1.01.31** **Petition Date** means February 28, 2011, the date the Debtor's voluntary petition was filed commencing this bankruptcy case.

**1.01.32** **Plan** means this Plan of Reorganization, as it may be amended or modified from time to time as permitted herein and by the Bankruptcy Court.

**1.01.33** **Pre-petition** means prior to the Petition Date.

**1.01.34** **Priority Tax Claim** means a Claim entitled to priority pursuant to Bankruptcy Code Section 507(a)(8).

**1.01.35** **Pro Rata** means proportionately, based on the percentage that the amount of an Allowed Claim within a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

**1.01.36**     **Property of the Estate** means all property in which the Debtor holds a legal or an equitable interest, including all property described in Bankruptcy Code Section 541.

**1.01.37**     **Rejection Claim** means any Claim arising pursuant to Bankruptcy Code Section 502(g) by reason of rejection by the Debtor of an executory contract or unexpired lease pursuant to Bankruptcy Code Sections 365 or 1123(b)(2).

**1.01.38**     **Reorganized Debtor** means the Debtor from and after the Effective Date, after giving effect to the Plan.

**1.01.39**   **Secured Claim** means any Claim secured by a lien, security interest, or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof (determined in accordance with Bankruptcy Code Section 506(a)).

**1.01.40**   **Secured Tax Claim** means any Tax Claim which is secured by real or personal property.

**1.01.41**   **Secured Creditor** or **Secured Claimant** means any Claimant holding an allowed Secured Claim.

**1.01.42**   **Unimpaired** means not Impaired.

**1.01.43**   **Unsecured Claim** means any Claim not collateralized (or the extent not fully collateralized) by assets of the Debtor.

**1.01.44**   **Unsecured Claimants** or **Unsecured Creditors** means any holder of an allowed Unsecured Claim.

**1.01.45**   **Voidable Transfer** means all transfers voidable under Sections 544, 545, 547, 548, 549 and/or 550 of the Code or any other state or federal transfer.

**1.02**     **Number and Gender of Words**.   Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context. Words of any gender shall include each other gender where appropriate.

**1.03**     **Terms Defined in the Bankruptcy Code**.   Capitalized terms not specifically defined in section 1.01 of the Plan shall have the definitions given those terms, if applicable, in the Bankruptcy Code.

**1.04**     **Headings**.   The headings and captions used in this Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

**1.05**     **Time Computation.**   In computing any period of time prescribed herein, the

provisions of Federal Rule of Bankruptcy Procedure Rule 9006(a) shall apply.

## ARTICLE II

## CONCEPT OF THE PLAN

**2.01   Generally**.  The Plan is a plan of reorganization.  The Debtor shall continue its business after the Confirmation Date.  The Debtor's primary business is a hotel doing business as Holiday Inn Express Gainesville located at 320 North Interstate 35, Gainesville, TX 76240.  The Debtor's plan proposes to pay the creditors pursuant to the Claim Summary and Plan Payment Schedule set forth in the exhibits.  Old Equity Interests in the Debtor shall be cancelled and New Equity Interests will be issued for new consideration.

## ARTICLE III

## GENERAL TERMS AND CONDITIONS

**3.01.    Treatment of Claims**.  This Plan is intended to resolve all Claims against the Debtor and/or property of the Debtor of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to Bankruptcy Code Section 502(a).  However, only Allowed Claims will receive treatment afforded by the Plan.  The Plan is designed to insure that Claimants shall receive at least as much pursuant to this Plan as they would receive in a liquidation pursuant to Chapter 7 of the Bankruptcy Code.

**3.02.    Time for Filing Claims**.  The holder of any Administrative Claim other than (i) a Fee Claim, (ii) a liability incurred and paid in the ordinary course of business by the Debtor, or (iii) an Allowed Administrative Claim, must file with the Bankruptcy Court and serve on the Debtor and its respective counsel, notice of such Administrative Claim within thirty (30) days after the Effective Date.  At a minimum, such notice must identify (i) the name of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim.  Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

Each Person asserting an Administrative Expense that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on the Debtor's counsel and the U. S. Trustee, a Fee Application within sixty (60) days after the Effective Date.

A person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

Liabilities incurred from the Petition Date through the Effective Date in the ordinary course of business shall be paid in the ordinary course of business by the Debtor.

**3.03.    Modification to the Plan**.  In accordance with Bankruptcy Rule 3019, to the

extent applicable, this Plan may be modified or amended upon application of the Debtor, or corrected prior to the Confirmation Date, provided that notice and an opportunity for hearing have been given to any affected party. The Plan may be modified at any time after Confirmation and before the Effective Date, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, the circumstances warrant such modification and Debtor consents thereto in writing.

## ARTICLE IV

### DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

The Debtor designates the following Classes of Claims and Interests pursuant to Bankruptcy Code Section 1123.  The Debtor shall pay all fees assessed by the Office of the United States Trustee until this Case is closed by the Court or the Debtor is otherwise released from such obligations by the Court.

4.01.   **Class 1** consists of any Allowed Administrative Claims.

4.02.   **Class 2** consists of any Allowed Secured Tax Claims.

4.03.   **Class 3** consists of any Allowed Priority Tax Claims.

4.04.   **Class 4(A)** consists of any Allowed Secured Claim of Sterling Bank.

**Class 4(B)** consists of the Allowed Claim of North Texas CDC/SBA which, on or about October 11, 2011, was acquired by Texas New Global, Inc. (sometimes "New Global").

**Class 4(C)** consists of the Allowed Claim of New Global.

4.05.   **Class 5** consists of any Allowed Secured Claims of Narinder Dhaliwal, Harminder Singh, and Balwinder Mahli.

4.06.   **Class 6** consists of the Assumed Executory Contract of Holiday Hospitality Franchising, Inc.

4.09.   **Class 7(A)** consists of the Allowed Unsecured Claims more than $15,000.00.

**Class 7(B)** consists of the Allowed Unsecured Claims less than $15,000.00.

4.10.   **Class 8** consists of the Old Equity Interests.

## ARTICLE V

## PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS

The Claims and Interests classified in Article IV hereof shall be treated in the manner set forth in this Article V.

**5.01.    Class 1 Claims**.    The Class 1 Claims will be paid once Allowed in full by the Debtor and on or before the Effective Date. These claims are priority claims pursuant to Section 507(a)(1) of the Bankruptcy Code. These claims include claims for Debtor's attorney's fees and U.S. Trustee's fees.  U.S. Trustee's fees must be paid until the case is closed.  The Debtor must file quarterly reports following confirmation and until the case is closed.  The Class 1 Claims may agree to a different treatment.

**5.02.    Class 2 Claims (Secured Tax Creditor Claims)**.    The Class 2 Claims are secured claims with liens that will follow the collateral securing such claims to the extent that such collateral is surrendered either prior to or as part of this Plan such secured liens and claims shall follow the collateral and shall not be paid by the Debtor as part of this Plan.

The Class 2 Allowed Claims that relate to collateral or property being retained by the Debtor as part of the Plan shall be paid if Allowed over five (5) years from the Petition Date with interest on such amounts at the rate of 12% per annum until paid in full. The payments shall be made to the extent of the tax escrow on hand and then monthly payments on the unpaid balance shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full.

These claims are secured claims.  These creditors shall retain their liens to secure their claims until paid in full under this Plan. The Class 2 Claims shall accrue interest from the Petition Date at the rate of 1% per month from the Petition Date through the Effective Date of the Plan and 12% per annum following the Effective Date until paid in full. These creditors shall retain their senior liens to secure their claims until paid in full under this Plan. In the event that the Debtor disputes such claim, the payments will be applied to the undisputed amount of the claim as ultimately allowed.  While resolution of any such objection is pending, payments pursuant to the Plan shall be applied to the undisputed portion of the claim as ultimately allowed. In the event of a default under the plan, counsel for holder of a claim in this class shall provide notice of the default via facsimile to counsel for the debtor.  Such default shall be cured within 15 business days of the date of transmission of such notice of default.  In the event the default is not cured, the Claimant shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court.  The Claimant shall only be required to provide two notices of default. Upon a third event of default, the Claimant shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice.  Failure to pay post-petition taxes prior to delinquency shall constitute an event of default.

The Class 2 Claims are Impaired and the holders of the Class 2 Claims are entitled to vote to accept or reject the Plan.

**5.03.    Class 3 Claim**.  The Class 3 Claims will be paid if Allowed over three (3) years

with interest on such amounts at the rate of 4.25% per annum until paid in full. The payments shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full. These claims are priority claims. A failure by the reorganized Debtor to make a payment to the priority tax creditors pursuant to the terms of the Plan shall be an Event of Default. If the reorganized Debtor fails to cure and Event of Default as to such payments within ten (10) days after receipt of written notice of default from the priority tax creditors, then the priority tax creditors may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the priority tax creditors may have under applicable state law; and/or (c) seek such relief as may be appropriate in the Court.

The occurrence of any of the following shall constitute an event of default under the Plan:

1) **Failure to Make Payments.** Failure on the part of Debtor to pay fully when due any payment required to be made in respect of the Plan Debt. However, due to the size and ongoing nature of the IRS's claim, upon a default under the plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal (or state) tax lien and the powers of levy, seizure, and as provided under the Internal Revenue Code. As to the IRS:

(A) If the Debtor or its successor in interest fails to make any plan payment, or deposits of any currently accruing employment or sales tax liability; or fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the Debtor or its successor in interest failed to file any required federal or state tax return by the due date of such return, then the United States may declare that the Debtor is in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtor is in default.

(B) If the United States declares the Debtor or the successor in interest to be in default of the Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, may become due and payable immediately upon written demand to the Debtor or the successor in interest.

(C) If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to send two notices of default, and upon the third event of Default the IRS may proceed to collect on all amounts owed without recourse to the Bankruptcy Court and without further notice to the Debtor. The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan. All payments will be sent to: IRS, 1100 Commerce Street, Mail Code **5024** DAL, Dallas, Texas 75242 attn Leo Carey.

(D) The Internal Revenue Service shall not be bound by any release provisions in the

Plan that would release any liability of the responsible persons of the Debtor to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor to the Internal Revenue Service; but the Internal Revenue Service shall not take action to actually collect from such persons unless and until there is a default under the Plan and as set forth above.

The Class 3 Claims are Impaired and the holders of the Class 3 Claims are entitled to vote to accept or reject the Plan.

**5.04.   Class 4 Claim**.

**(A) The Class 4(A) Claim will be paid as Allowed as follows:**

The Class **4(A)** Claim is an Allowed Secured Claim of Sterling Bank in the amount $3,557,463.33 and shall be paid in full over five (5) years with the Allowed Amount of the secured claim of $3,557,463.33 amortized over twenty-five (25) years with interest on such Allowed Amount at prime plus 2.00% per annum and a balloon payment of at the end of the five (5) year term.  The payments shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full.

The Class **4(A)** Claim shall retain all of its liens and security interests as originally provided in its loan documents until paid off.

The Class **4(A)** Claim is Impaired, and the holder of the Class **4(A)** Claim is entitled to vote to accept or reject the Plan.

**(B) The Class 4(B) Claim will be paid as Allowed as follows:**

The Class **4(B)** claim is an Allowed Unsecured Claim of the North Texas CDC/SBA ("SBA"), as acquired by New Global on or about October 11, 2011, in the amount of $1,810,092.80 and shall be paid five percent (5.00%) of the principal amount of such Allowed Unsecured Claim ($90,504.64) on the Effective Date, subject to the credits noted elsewhere herein.

The Class **4(B)** Claim is Impaired, and the holder of the Class **4(B)** Claim is entitled to vote to accept or reject the Plan.

**(C) The Class 4(C) Claim will be paid as Allowed as follows:**

The Class **4(C)** claim is an Allowed Unsecured Claim of New Global, Inc. in the amount of $429,569.39 and shall (a) be paid five percent (5.00%) of the principal amount of such Allowed Unsecured Claim ($21,478.47) on the Effective Date, and (b) that, conditioned upon occurrence of the Effective Date of the Debtor's Plan, and concurrently therewith, the remaining

95% of such claim shall not be discharged but shall instead be contributed by New Global to the capital of the Reorganized Debtor as additional consideration for New Global's 35% of New Equity Interests in and to the Reorganized Debtor as referenced elsewhere herein.

The Class **4(C)** Claim is Impaired, and the holder of the Class **4(C)** Claim is entitled to vote to accept or reject the Plan.

**5.05.    Class 5 Claim**.  The Class 5 Claim will be paid as Allowed as follows:

The Class 5 Claim is the Allowed Secured Claims of Narinder Dhaliwal in the amount of $4,599.54, Harminder Singh in the amount of $3,500.50, and Balwinder Mahli in the amount of $1,948.42 and shall be paid in full on the effective date.  The Class 5 Claim shall retain its lien to secure its claim until paid in full.

The Class 5 Claim is Impaired and the holder of the Class 5 Claim is entitled to vote to accept or reject the Plan.

**5.06.    Class 6 Claim.**  The Class 6 Claim will be paid as Allowed as follows:

The Class 6 Claim consists of the assumed executory contract franchise license agreement (the "License Agreement") with Holiday Hospitality Franchising, Inc. ("HHFI") which allows Debtor to operate as a Holiday Inn Express Hotel & Suites Hotel.  As a condition of assumption of the License Agreement, Debtor is obligated to promptly cure all monetary and non-monetary defaults, or to provide adequate assurance of such cure.  HHFI is owed pre-petition franchise fees in the amount of $17,133.69, which is due no later the Effective Date.  HHFI is also entitled to reimbursement of its reasonable attorney's fees and costs, which HHFI and the Debtor have agreed shall be $12,250.45 if this plan is confirmed.  Those fees shall also be paid by Debtor no later the Effective Date.  (HHFI has reserved its right to seek payment of additional fees and expenses if this plan is further amended, modified or not approved).  In addition, $60,000.00 is being escrowed for capital improvements that may be required by HHFI.  Debtor is also obligated to continue to pay franchise fees as they become due in the ordinary course.  Notwithstanding anything above, the Class 6 Claim shall only be assumed if the New Equity Interests are issued to the persons and entity referenced elsewhere herein in the same percentage and according to the terms and conditions as described in Section 5.08 below.  If that does not occur, then the License Agreement shall be rejected on the Effective Date of the Plan, and the Class 6 Claim will be treated as a Class 7 Claim.

**5.07.    Class 7 Claims.**

**(A) The Class 7(A) Claims will be paid as Allowed as follows:**

The Class **7(A)** Claims as Allowed Unsecured Claims **more than $15,000.00** each that are not otherwise included in Classes 1 through 6 that are Allowed Unsecured Claims shall be paid five percent (5.00%) of the principal amount of their Allowed Unsecured Claims no later than the effective date with no post-petition interest.

In the event of a default under the plan, counsel for holder of a claim in this class shall provide notice of the default via facsimile to counsel for the debtor and by mail to the Debtor. Such default shall be cured within fifteen (15) business days of the date of transmission of such notice of default. In the event the default is not cured, the Claimant shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court. The Claimant shall only be required to provide two (2) notices of default. Upon a third event of default, the Claimant shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. The holders of the Class **7(A)** Claims shall not be bound by any release provisions in the Plan that would release any liability of its guarantors to the holders of the Class **7(A)** Claims.

Other than Allowed Unsecured Claims **more than $15,000.00** each that are treated in Classes 1 through 6 that are Allowed Unsecured Claims, Debtor is not aware of the existence of any Class **7(A)** Claims.

The Class **7(A)** Claims are Impaired, and the holder of the Class **7(A)** Claims are entitled to vote to accept or reject the Plan.

**(B) The Class 7(B) Claims will be paid as Allowed as follows:**

The Class **7(B)** Claims as Allowed Unsecured Claims **less than $15,000.00** each shall be paid 100% of their claims no later than the effective date with no post-petition interest.

In the event of a default under the plan, counsel for holder of a claim in this class shall provide notice of the default via facsimile to counsel for the debtor and by mail to the Debtor. Such default shall be cured within fifteen (15) business days of the date of transmission of such notice of default. In the event the default is not cured, the Claimant shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court. The Claimant shall only be required to provide two (2) notices of default. Upon a third event of default, the Claimant shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. The holders of the Class **7(B)** Claims shall not be bound by any release provisions in the Plan that would release any liability of its guarantors to the holders of the Class **7(B)** Claims.

The Class **7(B)** Claims are Impaired, and the holder of the Class **7(B)** Claims are entitled to vote to accept or reject the Plan.

**5.08.** **Class 8 Old Equity Interests.** The Class 8 Old Equity Interests will be treated as follows:

On the Confirmation Date, all Old Equity Interests shall be cancelled.

The New Equity Interests shall be issued:

51.00% to Gurpreet Dhaliwal, who is contributing to the Reorganized Debtor $102,000.00,

14.00% to Gagandeep Dhaliwal, who is contributing to the Reorganized Debtor $28,000.00, and

35.00% to New Global, which is contributing to the Reorganized Debtor $70,000 (satisfied on the Effective Date by a $70,000 credit against the distribution otherwise payable on account of the 4B Claim now held by New Global.)

The total $200,000.00 (except for New Globals's portion, which is to be satisfied by the above-referenced credit on the Effective Date) shall be deposited into the Debtor's counsel's trust account no later than October 19, 2011. If the Plan is not Confirmed, the $200,000.00 will be returned (and the above-referenced credit rescinded) to and in favor of those contributing individuals or entities. Should any individual or entity named herein fail contribute his respective sum as specified herein, said New Equity Interests shall not be issued to such individual but shall instead be issued ratably to the remaining, referenced individual(s) or entity who will then instead contribute such funds.

In the event that any additional sums are required to avoid default under the terms of this Chapter 11 Plan, all members agree to provide up to an additional $150,000.00 to be paid *pro rata* by the members based upon their individual equity interests. If a member does not contribute his *pro rata* share, the remaining members will be obligated to contribute the additional sums, and any defaulting member will lose his equity interest proportionate to the amount that the member failed to contribute. Debtor believes that the Plan will not violate the absolute priority rule and will be consensual as to the unsecured creditors.

Illustrative of the foregoing, the cancellation of Old Equity Interests, issuance of New Equity Interests, required new contributions, and continuing commitment to fund further capital may be expressed as follows:

| Old Members / New Members: | Cash Contribution Required at the Effective Date: | Continuing Capital Support Obligation Per the Plan up to $150,000: | "Old Equity Interests," i.e., before giving effect to the Plan: | Undiluted "New Equity" Membership Interest: |
|---|---|---|---|---|
| Gurpreet Dhaliwal | $102,000 | $76,500 | 85% | 51% |
| Gagandeep Dhaliwal | $28,000 | $21,000 | 0% | 14% |
| Jagmohan Dhillon | $0.00 | $0.00 | 15% | 0.00%[1] |
| New Global | $70,000[2] | $52,500 | 0% | 35% |
| **Total:** | **$200,000** | **$150,000** | **100%** | **100%** |

Notwithstanding anything in the Plan or this Disclosure Statement, assumption of the License Agreement with Holiday Inn ("HHFI") shall only occur in the event that the New Equity Interests are issued as described above and subject to the cure described for the Class 6 Claim above, the payment of any realignment fee, and the execution of certain documents (the "Realignment Documents") including personal guarantees before the effective date, acceptable to HHFI in its sole and absolute discretion.  If the License Agreement is not assumed as described above, then the License Agreement shall be rejected as of the Effective Date of the Plan.  The License Agreement and any right to use HHFI's System or Marks (as defined therein) are **not** being assigned through this Plan.  Any other prospective equity interest holder will need to apply to enter into a new license agreement with HHFI or one of its affiliates.  In such application process, HHFI or its affiliates have the sole and absolute discretion to approve or deny any license agreement.

Further, if and as required by HHFI, each holder of New Equity Interests in the Reorganized Debtor shall reasonably cooperate and shall ratably share, in proportion to their resulting membership interest, in the preparation, submission and cost of any required realignment agreement supporting the franchise with and license from HHFI.

---

[1] Without limitation, Jagmohan Dhillon has failed to provide written assurances required by the Debtor of his intent and capacity to continue as a member and, for these and other reasons, will not participate as a holder of New Equity Interests from and after the Effective Date of the Plan.  See, inter alia, Debtor's Third Amended Plan, Section 5.08 which set an October 19, 2011 deadline.  Accordingly, Jagmohan Dhillon will not be participating as a holder of New Equity Interests from and after the Effective Date.

[2] The $70,000 due from New Global will be satisfied by a credit in favor of New Global in light of its acquisition, on or about October 11, 2011, of the Class 4B Claim.  This credit will also result in a corresponding credit against the required 5% payment ($90,504.64) on account of the Class 4B Claim.  The Class 4B payment due to New Global on the Effective Date, as new holder of the Class 4B Claim and taking into account the credit referenced above is $20,504.64.

## ARTICLE VI

## MEANS FOR IMPLEMENTATION OF PLAN

**6.01    Implementation of Plan**.   This Plan will be implemented, pursuant to §1123(a)(5) of the Code, by the commencement of payments as called for above.

**6.02    Retention of Assets.**  Upon the occurrence of the Effective Date, the Reorganized Debtor shall retain all assets of the Debtor and its Estate, including without limitation the Debtor's premises, cash and cash management systems, payment systems, and intellectual property, and such assets and operations of the Reorganized Debtor shall thereafter be managed by the Manager.

**6.03    Post-Confirmation Possession, Use, and Control of Assets.** Upon entry of the Confirmation Order, Class 8 holders, any managers of any of them, or the agents, servants, employees, attorneys, accountants, advisors, or persons controlled by any of the foregoing shall abstain from withdrawing, transferring, otherwise utilizing or taking any other steps affecting the possession, use of, or control over any cash, cash equivalents, accounts, receivables, or other funds belonging to the Debtor, except insofar as such other steps are to facilitate the transfer of such assets to the Manager on behalf of the Reorganized Debtor.  Also upon entry of the Confirmation Order, all banks or other financial institutions holding accounts of the Debtor shall immediately allow the Manager to take any and all steps necessary to obtain and sign replacement or new signature cards for each of the Debtor's accounts and to remove any and all prior signatories or authorized users from the Debtor's accounts.

Without limitation, on the Confirmation Date, (a) all cash, cash equivalents, accounts, receivables, contract rights, other current assets, accounting records, checking account ledgers, business records, bills, invoices, and all other operational records wherever situated and however comprised, and (b) all computers, servers, hard drives, back-up drives, hand held electronic devices, other portable electronic devices, other computer hardware, all computer software and associated documentation, all computer software licenses and associated documentation, and all other devices or computerized means used for the entry, storage, processing, restatement, presentation, or rendition of data by or for the Debtor in its operations, finances, management, franchise compliance, litigation (including this Bankruptcy Case), or otherwise beneficial to the implementation of this Plan, whether owned by the Debtor, leased to the Debtor, or used by the Debtor with permission of any third party and wherever situated, shall be retained by the Reorganized Debtor and thereafter managed by the Manager on behalf of the Reorganized Debtor.  To the extent any of the above listed data or materials are in the possession of the Class 8 holders, any managers of any of them, or the agents, servants, employees, attorneys, accountants, advisors, or persons controlled by any of the foregoing, such data or materials shall be turned over to the Manager on behalf of the Reorganized Debtor.  All parties in interest, including without limitation the Debtor, the Class 8 holders, any managers of any of them, or the agents, servants, employees, attorneys, accountants, advisors, or persons controlled by any of the foregoing shall take appropriate steps to preserve and protect the foregoing data and materials at

all times prior to the Confirmation Date, and no such party in interest shall be excused by virtue of the Plan from any inappropriate spoliation of any such data or materials.

6.04   **Insurance Coverage.**   The Manager shall be authorized, in its sole discretion, but not required to designate itself, the Reorganized Debtor, and any other persons designated to receive new equity in the Reorganized Debtor, as co-insureds or additional insureds in and under any insurance policies owned, benefitting, or obtained by the Debtor, Estate, or Reorganized Debtor, at the expense of the Debtor, Estate, and Reorganized Debtor, so as to provide coverage to such persons prior to the Effective Date and anytime thereafter.

6.05   **Post-Confirmation Date and Post-Effective Date Management**.   Upon entry of the Confirmation Order, continuing through the occurrence of the Effective Date of the Debtor's Plan, and, conditioned upon occurrence of the Effective Date, thereafter, and notwithstanding any other provisions of this Plan, Raj Patel, individually (the principal of New Global) or an affiliate wholly owned by Raj Patel, in his sole discretion, will manage the operations and finances of the Reorganized Debtor, and the basis for compensation to such new manager shall be (i) payment of three thousand dollars ($3,000) per month, plus (b) in each month thereafter, five percent (5%) of the gross of revenues in excess of the corresponding gross revenues received in each comparable month of 2010.   The governing documents of the Reorganized Debtor shall be amended to provide (a) that the aforementioned new management arrangement may be modified or terminated only upon the 100% vote of New Equity Interests and (b) to comport with the Plan, modifications, and agreements of the holders of the New Equity Interests, to be evidenced by written versions of such amended governing documents provided at the confirmation hearing.   All of the foregoing shall be set forth more fully in the Management Agreement and Company Agreement to be entered into between the Reorganized Debtor and the Manager.   In the event that any conflicts exist, the Management Agreement and Company Agreement shall control.

6.06.   **Limitation on Assumed Obligations of New Global and Its Affiliates**.   Neither New Global, Raj Patel, individually, nor any affiliate of any of them, by virtue of becoming a 35% holder of New Equity Interests on the Effective Date of the Plan, shall assume or otherwise become liable for any obligations of the Debtor or Reorganized Debtor except for the contribution and capital requirements noted above or as otherwise expressly agreed to by them in writing from time to time and, without limitation, they do not assume and are not becoming liable for any portion of the Class 1, Class 2, Class 3, Class 4A, Class 5, Class 7A, Class 7B Claims; or any other accrued or inherent but unaccrued obligations of the Debtor such as employee claims, tort claims of any nature by any invitee or guest on the Debtor's premises, any state and federal tax claims arising before or as a result of implementation of the Plan on the Effective Date, but provided, that any tax losses, gains or other attributes otherwise attributable to the  holders of Old Equity Interests prior to or as a result of implementation of the Plan shall continue to be allocated to holders of Old Equity Interests notwithstanding the cancellation of Class 8 Old Equity Interests on the Effective Date of the Plan.

## ARTICLE VII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01.    Rejection of Executory Contracts and Unexpired Leases**.    Debtor shall assume, pursuant to Bankruptcy Code Section 1123(b)(2), all unexpired leases of non-residential real property and executory contracts not specifically assumed or rejected prior to the Confirmation Date.

**7.02.    Reservation of Rights**. The Debtor shall have the right to assume or reject, pursuant to Bankruptcy Code Section 365, prior to the Confirmation Date, any executory contract or unexpired lease of real property (to the extent permitted under the Bankruptcy Code) and to the terms of this Plan.

**7.03.    Bar Date for Claims Based on Rejection**.    If the rejection of an executory contract or an unexpired lease by the Debtor results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtor or their properties or agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtor, by the earlier of (a) the end of the month following the period in which the Effective Date occurs or (b) such other deadline as the Court may set for asserting a Claim for such damages. Any Rejection Claim arising from the rejection of an unexpired lease or executory contract shall be treated as a General Unsecured Claim; *provided, however*, that any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtor of any objections to such Claim if asserted.

## ARTICLE VIII

## PROVISIONS FOR THE RETENTION, ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS BELONGING TO THE DEBTOR AND THE ESTATE INCLUDING PREFERENCES AND CONVEYANCES

**8.01.    The Debtor's Causes of Action**.    Except as otherwise released pursuant to the Plan, all Claims recoverable under Section 550 of the Bankruptcy Code, all Claims against third parties on account of an indebtedness, and all other Claims of any kind or character whatsoever owed to or in favor of the Debtor or the Estate to the extent not specifically compromised and released pursuant to this Plan or any agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by the Debtor for the benefit of the Creditors subsequent to the Effective Date.

**8.02     Preservation of Causes of Action against Holders of Old Equity Interests (Class 8).**  The Debtor is not presently aware of any causes of action, whether pre-petition or post-petition in nature against holders of Old Equity Interests (Class 8).  No such Claims have been scheduled by the Debtor or its professionals.  The Debtor does not represent or warrant the existence of any such claims.  The Debtor does not intend to overstate, concoct, or needlessly pursue non-meritorious or marginal claims of such nature.  Claimants should vote for or against this Plan without the expectation that the Reorganized Debtor will ever recover on account of any such claims.  Nonetheless, to the full extent permitted by all applicable law, the Reorganized Debtor specifically, expressly, and unequivocally reserves to itself, preserves, and does not forfeit, waive, transfer to another, release, or otherwise intend this Plan to constitute res judicata, or judicial estoppel against or loss of standing by the Reorganized Debtor as successor to and representative of the Estate, to assert, prosecute, and collect on any such claims against any such persons, including without limitation any claims for self-dealing, misfeasance, malfeasance, negligence, gross negligence, actual fraud in any form, constructive fraud, preference, concealment, conversion, diversion, wasting, theft of business opportunity, or any other action of similar nature, whether arising in or sounding in tort, fiduciary relationship or duty, contract, or otherwise.

**8.03.     Objections to Claims.**  Any party authorized by the Bankruptcy Code may object to the allowance of Pre-petition Claims at any time prior to sixty (60) days after the Effective Date and, as to Rejection Claims, at any time prior to sixty (60) days after the filing of any such Rejection Claim. Any proof of Claim filed after the Court sets bar dates shall be of no force and effect and shall be deemed disallowed.  All Contested Claims shall be litigated to Final Order; *provided, however,* that the Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court.  Notwithstanding the foregoing, a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

No distributions under this Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim.  If a Claim is disputed in whole or in part because the Debtor asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of its Allowed Claim.  In addition, any party authorized by the Bankruptcy Code, at anytime, may request that the Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of any prior objections.

# ARTICLE IX

## EFFECT OF CONFIRMATION

**9.01.** <u>**Discharge and Release of Debtor**</u>.  Pursuant to Bankruptcy Code Section 1141(d)(2), confirmation of this Plan  discharges the Debtor from all liabilities save and except those treated in accordance with the Plan and nothing shall release the Debtor from the terms of the Plan.

**9.02.** <u>**Released Entities**</u>.  None of the officers, financial advisors, attorneys, or employees of the Debtor (collectively the "Released Entities") shall have any liability for actions taken or omitted to be taken in good faith under or in connection with the Plan.

**9.03.** <u>**Legal Binding Effect**</u>.  The provisions of this Plan, pursuant to the Bankruptcy Code Section 1141 shall bind the Debtor and all Creditors, whether or not they accept this Plan. The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.

**9.04.** <u>**Permanent Injunction**</u>.  Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against the Debtor and any other entity against whom prosecution of the any Claims could result in a Claim being asserted against the Debtor that could arise directly or indirectly out of a claim against the **Debtor**.  Provided, however, that the foregoing does not enjoin any action against a guarantor on obligations of the Debtor on account of such guaranty.

From and after the Confirmation Date, all holders of Claims against the Debtor are restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Assets or the Debtor; (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Assets, or the Debtor; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; *provided, however,* that each holder of a Contested Claim may continue to prosecute its proof of Claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce their rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan.  Such restraint shall continue until the Debtor has been granted a discharge by the Court or such creditor is paid in full as called for by the Plan. The setoff rights of the Texas Comptroller of Public Accounts are hereby preserved, and such rights shall therefore be unaffected by the Plan or confirmation thereof.

# ARTICLE X

## MISCELLANEOUS PROVISIONS

**10.01.** **Request for Relief Under Bankruptcy Code Section 1129**.  In the event any Impaired Class shall fail to accept this Plan in accordance with Bankruptcy Code Section 1129(a), the Debtor reserves the right to, and does hereby request the Bankruptcy Court to confirm the Plan in accordance with Bankruptcy Code Section 1129(b).

**10.02.** **Revocation**.  The Debtor reserves the right to revoke and withdraw this Plan at any time prior to the Confirmation Date.

**10.03.** **Effect of Withdrawal or Revocation**.  If the Debtor revokes or withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

**10.04.** **Due Authorization by Creditors**.  Each and every Claimant who elects to participate in the distributions provided herein warrants that it is authorized to accept in consideration of its Claim against the Debtor the distributions provided in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

**10.05.** **Entire Agreement**.  This Plan, as described herein, the Confirmation Order, and all other documents and instruments to effectuate this Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents.

**10.06.** **Section 1146 Exemption**.  Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange or any security under this Plan or the making or delivery of any instrument or transfer pursuant to, in implementation of or as contemplated by this Plan or the transfer of any property pursuant to this Plan shall not be taxed under any federal, state or local law imposing a stamp, transfer or similar tax or fee.

**10.07.** **Provisions Governing Distributions**.  All payments and distributions under the Plan shall be made by the Debtor as indicated.  Any payments or distributions to be made by the Debtor pursuant to the Plan shall be made as soon as reasonably practicable after the Effective Date, except as otherwise provided for in the Plan, or as may be ordered by the Bankruptcy Court.  Any payment or distribution by the Debtor pursuant to the Plan, to the extent delivered by the United States Mail, shall be deemed made when deposited into the United States Mail.

Payments of Cash to be made by the Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim or proofs of interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or proof of interest is filed). All Claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date. After such date, all unclaimed property shall remain the property of the Debtor and the Claim of any other holder with respect to such unclaimed property shall be discharged and forever barred.

Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof. Requests for reissuance of any check shall be made directly to the Debtor by the holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of such a voided check within ninety (90) days after the date of delivery of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall become Unclaimed Property and returned to the Debtor.

No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

**10.08** **Prepayment of Claims.** The Reorganized Debtor shall have the right, from and after the Effective Date, in its sole discretion and option, to prepay without penalty, in the amounts and to the extent otherwise authorized in this Plan, any Allowed Claim or other fees, charges or other assessments.

**10.09** **Reorganized Debtor's Business Form.** Debtor reserves the right to reconstitute the business form of the Reorganized Debtor, from and after the Effective Date, to the extent permitted by applicable non-Bankruptcy law and, likewise, the Reorganized Debtor reserves the right to reconstitute itself in any business form otherwise permitted by applicable non-Bankruptcy law.

**10.10.** **Governing Law.** Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

# ARTICLE XI

## MODIFICATION OF THE PLAN

**11.01**      The Debtor may propose amendments to or modifications of this Plan under Bankruptcy Code Section 1127 at any time prior to Confirmation upon notice to all parties affected thereby and providing such parties an opportunity to be heard on the proposed amendment. After Confirmation, the Debtor may remedy any defects or omissions or reconcile any inconsistencies in this Plan or in the Final Order in such manner as may be necessary to carry out the purpose and intent of this Plan so long as the interests of Claimants or Interest holders are not materially and adversely affected.

# ARTICLE XII

## RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan or the Effective Date having occurred, the Court will retain jurisdiction for the following purposes:

**12.01**      **Allowance of Claims.**   To hear and determine the allowability of all Claims upon objections to such Claims.

**12.02**      **Executory Contracts and Unexpired Leases Proceedings.**   To act with respect to proceedings regarding the assumption of any executory contract or unexpired lease of the Debtor pursuant to §§ 365 and 1123 of the Code and Article VII of the Plan.

**12.03**      **Plan Interpretation.**   To resolve controversies and disputes regarding the interpretation of the Plan.

**12.04**      **Plan Implementation.**   To implement and enforce the provisions of the Plan and enter orders in aid of confirmation and implementation of the Plan.

**12.05**      **Plan Modification.**   To modify the Plan pursuant to § 1127 of the Code and applicable Bankruptcy Rules, except that no modification shall be made to the Plan that would impair, diminish or affect in any way the rights of participants of any Classes of the Plan without the consent of such Class.

**12.06**      **Adjudication of Controversies.**   To adjudicate such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court against the Debtor.

**12.07**      **Injunctive Relief.**   To issue any injunction or other relief as appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or in the Confirmation Order.

   **12.08**  <u>**Interpleader Action.**</u> To entertain interpleader actions concerning assets to be distributed or other assets of the Estate.

   **12.09**  <u>**Correct Minor Defects.**</u> To correct any defect, cure any omission or reconcile any inconsistency or ambiguity in the Plan, the Confirmation Order or any document executed or to be executed in connection therewith, as may be necessary to carry out the purposes and intent of the Plan, provided that the rights of any holder or an Allowed Claim are not materially and adversely affected thereby.

   **12.10**  <u>**Authorization of Fees and Expenses.**</u> To review and authorize payment of professional fees incurred prior to the Effective Date.

   **12.11**  <u>**Post-Confirmation Orders Regarding Confirmation.**</u> To enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated.

   **12.12**  <u>**Final Decree.**</u> To enter a final decree closing the Case pursuant to Bankruptcy Rule 3022.

Dated: November 11, 2011       **Respectfully submitted,**

            **By: _//s//  Gurpreet S. Dhaliwal, M.D._**
              **Gurpreet S. Dhaliwal, M.D.**
              **Managing Member of Debtor**
              **Mid West Hotel Lodging, LLC**

            **Respectfully submitted,**

            **By: _//s// George A. Kurisky, Jr._**
              **George A. Kurisky, Jr.**
              **Texas Bar No. 11767700**
              **Branch M. Sheppard**
              **Texas Bar No. 24033057**
              **JOHNSON DELUCA KURISKY**
              **& GOULD, P.C.**
              **4 Houston Center**
              **1221 Lamar, Suite 1000**
              **Houston, Texas 77010**
              **(713) 652-2525 Telephone**
              **(713) 652-5130 Facsimile**

            **ATTORNEYS FOR**
            **DEBTOR IN POSSESSION**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Third Amended Plan was sent to the following and those individuals and entities on the attached Service List by First Class United States mail and/or by electronic service through the Court's CM/ECF system if he has consented thereto on this the 11th day of November, 2011.

**US TRUSTEE – via electronic notice**
JOHN M. VARDEMAN
110 NORTH COLLEGE ST., SUITE 300
TYLER, TX 75702

**DEBTOR IN POSSESSION – via regular mail**
MID WEST HOTEL LODGING, LLC
2716 PALAZZO COURT
MODESTO, CA 95256

**OTHER CREDITORS – via electronic notice**
JOHN MAYER
ROSS BANKS MAY CRON & CAVIN, P.C.
2 RIVERWAY, SUITE 700
HOUSTON, TX 77056

ANDREW BAKA
4300 AMON CARTER BLVD, SUITE 114
FT. WORTH, TX 76155

LAURI HUFFMAN
LINEBARGER, ET AL.
2323 BRYAN ST., SUITE 1600
DALLAS, TX 75201

G. HAROLD LEREW
PERDUE BRANDON, ET AL.
PO BOX 8188
WICHITA FALLS, TX 76307

JOSHUA MARTIN
2200 ROSS AVE., SUITE 3601
DALLAS, TX 75201

WILLIAM FRAZELL
PO BOX 28249
AUSTIN, TX 78755

J. MICHAEL SUTHERLAND
LISA M. LUCAS
CARRINGTON COLEMAN, ET AL.
901 MAIN ST., SUITE 5500
DALLAS, TX 75202

JEFF CARRUTH
WEYSER, KAPLAN, PULASKI & ZUBER, P.C.
3030 MATLOCK ROAD, SUITE 201
ARLINGTON, TX 76015

By: _//s// George A. Kurisky, Jr._
George A. Kurisky, Jr.